IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| KEITH D. NELSON, | : | |
| Movant, | : | |
| vs. | : | 4:04-cv-8005(JFG) |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

MOTION, BROUGHT PURSUANT TO 28 U.S.C. § 2255,
TO VACATE THE CONVICTION AND SENTENCE IMPOSED[1]

COMES NOW Keith D. Nelson ("Movant"), by his undersigned counsel, and moves this Court, pursuant to 28 U.S.C. § 2255, to vacate, set aside, and/or correct his conviction and sentence of death since each was imposed in violation of the United States Constitution or the laws of the United States. Movant seeks a hearing on all disputed issues of fact. Movant reserves the right to amend this petition in accordance with law. Movant is presently confined in the United States Penitentiary, Terre Haute, Indiana. In support of this motion, Movant states the following:

1. The judgment of conviction and sentence which are the subjects of this challenge were entered in the United States District Court for the Western District of Missouri, located in Kansas City, Missouri. The case was docketed as *United States v. Keith D. Nelson*, 4:99-cr-00303-FJG-ALL.

---

[1]This motion substantially follows the format of the standard form appended to the Rules Governing Section 2255 Proceedings for the United States District Courts. *See* Rule 2(c). The standard form admonishes that a 2255 motion should be limited to a statement of the "specific facts which support [a] claim" and that a 2255 motion should "not argue or cite law."

2. On October 25, 2001, Movant entered a plea of guilty to count one of the indictment. On November 28, 2001, the jury empaneled for the purposes of assessing penalty recommended imposition of a sentence of death. Judgment was imposed in accordance with the jury's verdict on March 12, 2002, and Movant was sentenced to death together with a monetary penalty of $100. At the time of sentencing, count two of the indictment was dismissed on motion of the Government.

3. As noted in ¶ 2 above, Movant was sentenced to death.

4. Count one of the indictment charged Movant with kidnapping resulting in death, in violation of 18 U.S.C. § 1201; count two of the indictment charged Movant with aggravated sexual abuse, in violation of 18 U.S.C. § 2241.

5. Movant entered a guilty plea to count one.

6. Movant went to trial before a jury on the issue of penalty.

7. Movant did not testify at his trial or at any hearings.

8. Movant appealed his conviction and sentence to the United States Court of Appeals for the Eighth Circuit.

9. Movant's direct appeal was docketed in the Eighth Circuit as No. 02-1757. On October 22, 2003, Movant's conviction and sentence were affirmed. *United States v. Nelson*, 347 F.3d 701 (8th Cir. 2003.) Movant raised the following issues on direct appeal:[2] (1) the district court conducted an inadequate *voir dire* of the jury; (2) Movant's motion for a change of venue was erroneously denied; (3) the district court erroneously denied defense challenges for-cause as to five prospective jurors and erroneously granted prosecution for-cause challenges as to three jurors; (4) certain aspects of the penalty-phase jury instructions did not

[2]The briefing filed on Movant's behalf in the Eighth Circuit speaks for itself and the following summary is not intended to substitute for the specific contents of those briefs.

fairly and accurately state the applicable law; and (5), certain of the victim-impact evidence should not have been admitted. On November 8, 2004, the Supreme Court of the United States denied *certiorari* review under Docket No. 03-10620. *Nelson v. United States*, 125 S.Ct. 486 (2004).

10. Movant has filed no other post-judgment motions, petitions, or applications concerning this sentence and judgment of conviction.

11. Movant presents the following grounds for relief and reiterates his demand for an evidentiary hearing on all factual issues:

A. Ground one: Movant was denied the effective assistance of trial counsel, a right guaranteed by the Sixth Amendment to the United States Constitution and the laws of the United States, because in each and every instance cited below, the performance of Movant's defense counsel, individually and/or cumulatatively, fell below an objective standard of reasonableness under prevailing professional norms, and there is a reasonable probability that, but for counsels' unprofessional errors, the result of the proceeding would have been different in that at least one juror would have struck a different balance. In support of this ground, Movant states as follows:

(1) Movant's case was characterized by numerous changes of counsel. There were times when Movant had no counsel who met the qualifications required by 18 U.S.C. § 3005 as being "learned in the law applicable to capital cases . . . ." The following summarizes the history of Movant's representation by counsel in the district court:

- Immediately following Movant's arrest on October 17, 1999, he was represented by a "volunteer" retained attorney, Daniel L. Franco, who has since been disbarred. Thereafter, the Court appointed the Federal Public Defender (effective October 21, 1999), Susan Hunt, Esquire (effective November 2, 1999), and William E. Shull, Esquire (effective November 2, 1999)..

- Larry C. Pace, Esquire, of the Federal Public Defender, remained in the case for approximately 10 months. On July 28, 2000, Movant filed a motion to withdraw Mr. Pace as Movant's counsel. The motion was granted on August 21, 2000, although the actual order was apparently not entered on the docket until March 2, 2001.

- On September 6, 2000, Movant filed a notice with the Court that Mr. Franco had been discharged as Movant's counsel. An order withdrawing Mr. Franco was entered on the docket on March 2, 2001.

- With regard to Mr. Shull, an order was docketed on November 14, 2000 denying Movant's request to withdraw Mr. Shull as counsel. (There does not appear to be a docket entry for the motion itself.) Thereafter, on February 20, 2001, an order was docketed granting Mr. Shull's oral motion to withdraw as Movant's counsel.

- On the same date as Mr. Shull's withdrawal, February 20, 2001, Patrick Berrigan, Esquire was appointed as counsel to Movant

- For the purposes of this motion, Movant's trial-level attorneys will be referred to simply as "defense counsel."

(2) Defense counsel failed to conduct an adequate mitigation investigation, an investigation that should have, but did not, consist of efforts to discover all reasonably available mitigating evidence and to rebut any aggravating evidence to be introduced by the Government. A properly-conducted mitigation investigation would have yielded significant evidence in mitigation.

(3) In the Spring of 2001, a mitigation investigator appointed by the Court to assist defense counsel in preparation of the case advised defense counsel that the mitigation investigation was incomplete and that there was substantial investigation that remained to be completed. Despite this warning, defense counsel did not take the steps required to

complete the mitigation investigation. By the Fall of 2001, with the trial date imminent, defense counsel were aware that an adequate mitigation investigation had not been conducted, that the investigation was incomplete, and that a substantial amount of additional time was required in order to complete an adequate investigation. Despite this knowledge, and despite a specific request from Movant that his counsel seek to adjourn the trial because counsel were not ready to proceed, no such motion was made.

(4) Despite the availability of court-authorized funding, defense counsel failed to conduct an adequate investigation of Movant's mental health, including a failure to conduct a neuropsychological examination and/or to have Movant examined by a qualified clinical psychologist or psychiatrist. A properly-conducted mental-health investigation would have yielded significant clinical findings of mental illness. A properly-conducted neuropsychological examination would have revealed that Movant shows indications of frontal lobe disturbance/dysfunction, which is a circumstance that affects Movant's everyday thinking and reasoning capacities, and that testing Movant would have shown that his brain does not conform with what is seen in individuals with normal functioning brains, and that his overall testing performance was consistent with and indicative of brain dysfunction.

(5) The failure of defense counsel to conduct a timely and adequate mental-health investigation lead counsel to instruct Movant that he should decline to submit to mental-health testing by Government experts,

advice that was followed by Movant, resulting in a court order barring Movant from presenting any mitigating evidence relating to his mental health.

(6) Defense counsel failed to elicit a complete and accurate family story from Nancy Nelson, Movant's mother, because she was uncomfortable talking about her childhood and the manner in which Movant and his brothers were raised. Counsel knew that Dr. Mark Cunningham would later describe a family history of abuse as a risk factor affecting subsequent generations. Nevertheless, counsel "agreed" not to ask Nancy Nelson uncomfortable questions, the answers to which would have provided the foundation for the presence of significant risk factors in Movant's childhood.

(7) Defense counsel failed to file appropriate pre-trial motions challenging the capital aspects of Movant's case.

(8) Defense counsel failed to conduct an adequate *voir dire* of prospective jurors on, among other issues, the prospective jurors' views regarding capital punishment and the exposure of potential jurors to publicity regarding Movant's then recent suicide attempt.

(9) Defense counsel told the jury in opening statements that Movant was born a month premature, suffered from low birth-weight and respiratory distress, but that "he recovered just fine." Counsel's assertion was based on an inadequate investigation of Movant's life history, including consultation with appropriate experts and utilization of hospital records in possession of the defense. When Dr. Mark Cunningham testified

that these were risk factors, the jury understood them not to be present in Movant since he had "recovered just fine."

(10) Defense counsel failed to call William R. Criss, Shift Supervisor for Corrections Corporation of America, to testify. Counsel knew that Criss could have testified that, as early as January 20, 2000, Movant wanted to take responsibility for his actions in this case. After talking to his girlfriend, Movant became emotional and stated he wanted to "do something right for the first time in [his] life." Such testimony would have refuted the Government's view that Movant was emotional with his girlfriend only because he was sorry he had gotten caught.

(11) Defense counsel asked Kenneth Nelson about his intelligence but failed to make an offer of proof after the District Court told him the Court had heard enough and to move on. The omitted evidence was critical to showing that Kenneth Nelson had a protective factor that Movant simply did not have – *i.e.*,a native intelligence which opened doors for Kenneth.

(12) Defense counsel failed to object when the District Court admitted testimony about a knife taken from Movant's kitchen. This testimony had no tendency to prove or disprove any fact in issue; rather, the testimony simply diverted the jurors' attention away from the issue at hand – should Movant live or die.

(13) Defense counsel failed to object when the District Court allowed testimony that Paul Wilt had won an award from the Kansas City, Kansas Police Department, "as a testament to [his] quick thinking or

quick action in this case." This evidence had no tendency to prove or disprove any fact in issue; rather, it served only to divert the jurors' attention away from the issues surrounding the only question the jurors had to answer – to wit: should Movant live or die?

(14) Defense counsel failed to elicit from Dr. Thomas Young, Medical Examiner, that his initial findings indicated: (1) that it would be "difficult" to determine whether the victim's hymenal tear was the result of a fresh injury; and (2) that, without positive results from the rape kit, "no determination of sexual assault can be conclusively made." This evidence would have explained refuted or undercut the Government's theory that Movant sexually assaulted the victim at the time of the murder.

(15) Defense counsel failed to make appropriate objections at trial, including, but not limited to, the following:

(a) Once the jury was sworn, defense counsel failed to object to the case proceeding as a capital case since the requisite elements of capital murder were not contained in the indictment.

(b) Defense counsel failed to object to comments in the Government's opening that the Government sought the death penalty in Movant's case "without reservation" or "without hesitation" implying that the Government had undertaken a comparison of Movant's case with other potentially capital cases and that Movant's case was, in the opinion of the Government prosecutors, worse than those other case and, therefore, more deserving of a sentence of death.

(c) Defense counsel failed to object to comments in the Government's opening that Movant would present "a continuing threat to society," implying erroneously that Movant might some day be released from confinement.

(d) Defense counsel agreed pretrial not to object to certain prefatory hearsay statements about which Agent Cullen Scott would

testify. This agreement resulted in the Government presenting hearsay testimony at will, using Agent Scott as something of a narrator for its case from beginning to end. Such hearsay was not admissible under any exception to the rule and its use deprived Movant of his Sixth Amendment right to confront his accusers.

(e) Defense counsel failed to object to numerous inflammatory and improper comments in the Government's initial and rebuttal summations, and failed to request a mistrial or a new trial based on blatantly improper comments, including, but not limited to, the following:

<u>The initial summation</u>:

- Argument that the jury should vote for death because, "If this crime doesn't call for the death penalty, what crime does?"
- Argument that the jury should vote for death because, "We need to protect our children. We need to send a message to guys like the defendant . . . ."
- Argument that the death penalty should be imposed because, "The community cries out for justice."
- Argument that legally appropriate and relevant mitigating evidence was "all this excuse testimony" and a "guilt trip."
- Argument that the jury should impose a death penalty because the Government recommended it "without reservation."

<u>Rebuttal summation</u>:

- Argument that the case was about the "slaughter" of "our children."
- Argument that denigrated legally appropriate and relevant mitigating evidence as "an excuse," "the blame game," "the abuse excuse," and an effort by defense counsel to claim the crime was "somebody else's fault."
- Argument that the mitigating evidence was not worthy of jury consideration since it didn't "explain why" the crime occurred.

- Argument that described Movant as "a rotten human being."

- Argument that personally denigrated defense counsels' efforts to persuade the jury of mitigating evidence as "a smoke screen" and an attempt to "divert [the jury] from what this case is really about, the slaughter of an innocent."

- Argument that personally denigrated defense counsels' efforts to persuade the jury of mitigating evidence as masking counsels' true motive, *i.e.*, "What they want you to do is have him escape justice."

- Argument that equated mercy with weakness.

- Argument that described Movant as "evil at his core."

- Argument that invited jurors to rely on the prosecution's experience by telling the jury that, "There is no clearer call for the death penalty than there is in this case," and, later, "If not him, who? If not now, when? If killing and raping a kid isn't enough, then we don't need a death penalty. We don't need a death penalty."

- Argument that suggested that the jury should impose a sentence of death since the jury "represent[ed] the people of the United States in this case . . . ."

- Argument that instructed the jurors to close their eyes and re-live the horrors of the victim's last hours, calling upon the jury to "Think about . . . what that little girl was thinking," and to imagine,"What was she thinking?," and to, "Imagine what she experienced in that last part of her life," and to "Close your eyes, and . . . envision [the abduction and murder]."

- Argument that a verdict of death was the only just verdict and that the jury was "the dispensers of justice," and that the victim's mother "Waits for you to give her some justice. And justice in this case can only be had by imposing a sentence of death," essentially suggesting to the jury, *inter alia* that a sentence of death should be imposed because that's what the victim's survivors wished.

- Argument that, "[T]he death penalty was enacted for crimes like this."

(16) Defense counsel failed to call a highly-qualified forensic pathologist, Thomas L. Bennett, M.D., who was present in the courthouse and prepared to testify that the physical findings at autopsy did not support a conclusion that the victim had been sexually penetrated. Dr. Bennett was prepared to testify that the opening in the hymen's mid-part discovered at autopsy is a normal condition for young girls and "any statements offering that there are injuries [to the vaginal vault] are directly in conflict with the forensic evidence." The emotional center-piece of the Government's case for death was the alleged rape of the victim, and Dr. Bennett could have and would have refuted that evidence. Without Dr. Bennett's testimony, the Government was able to argue in closing, with no evidence presented to the contrary, that the hymen was unnaturally torn, as a result of the victim's sexual assault by Movant, while drawing the jury's attention to the graphic and disturbing post-mortem photographs, and pointing, "right there and right there."

(17) Defense counsel failed to object when the Government asked Penny Butler, the victim's sister, if she was scared as she testified. The child's fear had no tendency to prove or disprove any fact in issue; rather, it served only to inflame the passions and prejudices of the jury by implying that Movant had scared Penny twice – once during the kidnapping and once during the trial.

(18) Defense counsel advised and convinced Movant to plead guilty to count one of the indictment in exchange for the Government dismissing count

two of the indictment and letting the defense argue that Movant had accepted responsibility for his actions, a contention that was unanimously rejected by the jury To reach this agreement, Movant was required to waive any post-conviction challenge as to the guilty plea. This is an unenforceable condition and trial counsel were placed in a conflicted position when they advised Movant to accept the conditions of the offer while ostensibly avoiding post-conviction review of the reasonableness of that advice as it pertained to Movant's decision to enter a guilty plea.

(19) Defense counsel failed to argue in Movant's motion for a new trial that the District Court had been in error in refusing to let the defense ask a witness, Fred Lawrence, whether the Bureau of Prisons was equipped to handle the security of Movant. To bolster its theory that Movant was a future danger to society, the Government had elicited from Lawrence that Movant posed a security risk, and the defense should have been permitted to explain, deny, refute, or lessen the impact of that testimony.

(20) Defense counsel failed to argue in Movant's motion for a new trial that the District Court had erred in refusing to let the defense ask Roger Moore, Jr., why two inmates would have claimed that he had called Movant a "sissy" or a "punk." This evidence was not being offered to prove the truth of Moore's statement, but rather to show that he made them. The evidence was necessary to put the altercation with Moore into context by showing that Moore had been goading and taunting

Movant.

(21) Defense counsel failed to argue in Movant's motion for new trial that the District Court abused its discretion in letting the Government present evidence through a witness, Bruce Roberts, that an inmate had told Roberts that Movant had threatened to harm the inmate's five-year old daughter. This alleged statement of Movant was never disclosed to the defense. Further, this was precisely the class of evidence that the District Court precluded Movant from presenting through Roger Moore, Jr.

(22) There are additional instances of prejudicial ineffective assistance of defense counsel which individually, and cumulatively in combination with other instances of ineffective assistance, denied Movant the Sixth Amendment's guarantee of the effective assistance of counsel.

B. Ground two: Movant was denied the effective assistance of appellate counsel, a right guaranteed by the Fifth and Sixth Amendments to the United States Constitution and the laws of the United States. In each instance cited below, among others, the performance of Movant's appellate counsel fell below an objective standard of reasonableness under prevailing professional norms, and there is a reasonable probability that, but for counsels' unprofessional errors, individually and/or cumulatively, the result of the appellate proceeding would have been different. In support of this ground, Movant states as follows:

(1) At the time Movant's brief was prepared and filed by appellate counsel, neither of his appellate counsel had conducted an adequate review of the record or the applicable law in order to determine which issues should be presented on Movant's behalf. Despite this lack of

preparedness, appellate counsel knowingly filed an inadequate brief instead of seeking additional time from the Court of Appeals in which to prepare an adequate brief on Appellant's behalf.

(2) Appellate counsel failed to brief and argue the following issues, which individually or in combination, undercut confidence in the reliability of the outcome:

(a) Appellate counsel failed to argue on appeal that the indictment was inadequate as not alleging the requisite elements of capital murder, including Movant's age, his state-of-mind at the time of the offense, and the existence of aggravating factors.

(b) Appellate counsel failed to argue on appeal that the District Court abused its discretion in admitting numerous disturbing, gruesome, and inflammatory photographs. While such photographs may have had some tendency to prove issues of fact relevant to a guilt-phase trial, this was simply a penalty phase case where the defense did not contest the manner or nature of death.

(c) Appellate counsel failed to argue on appeal numerous instances of improper closing argument by the Government, including, but not limited to, the following:

The initial summation:

- Argument that the jury should vote for death because, "If this crime doesn't call for the death penalty, what crime does?"
- Argument that the jury should vote for death because, "We need to protect our children. We need to send a message to guys like the defendant . . . ."
- Argument that the death penalty should be imposed because, "The community cries out for justice."
- Argument that legally appropriate and relevant mitigating evidence was "all this excuse testimony" and a "guilt trip."
- Argument that the jury's verdict was simply a recommendation and, "You're not killing anybody . . . ."

This improper argument diminished the jurors' sense of responsibility and the Government's final notation that "If you recommend the death penalty it will happen" did not purge the taint of the improper argument. There was a contemporaneous objection below and a mistrial motion premised on this remark.

- Argument that the jury should impose a death penalty because the Government recommended it "without reservation."

Rebuttal summation:

- Argument that the case was about the "slaughter" of "our children."
- Argument that denigrated legally appropriate and relevant mitigating evidence as "an excuse," "the blame game," "the abuse excuse," and an attempt to claim the crime was "somebody else's fault."
- Argument that the mitigating evidence was not worthy of jury consideration since it didn't "explain why" the crime occurred.
- Argument that described Movant as "a rotten human being."
- Argument that personally denigrated defense counsels' efforts to persuade the jury of mitigating evidence as "a smoke screen" and an attempt to "divert [the jury] from what this case is really about, the slaughter of an innocent."
- Argument that personally denigrated defense counsels' efforts to persuade the jury of mitigating evidence as masking counsels' true motive, *i.e.*, "What they want you to do is have him escape justice."
- Argument that equated mercy with weakness.
- Argument that described Movant as "evil at his core."
- Argument that invited jurors to rely on the prosecution's experience by telling the jury that, "There is no clearer call for the death penalty than there is in this case," and, later, "If not him, who? If not now, when? If killing and

raping a kid isn't enough, then we don't need a death penalty. We don't need a death penalty."

- Argument that suggested that the jury should impose a sentence of death since the jury "represented] the people of the United States in this case . . . .."

- Argument that instructed the jurors to close their eyes and re-live the horrors of the victim's last hours, calling upon the jury to "Think about . . . what that little girl was thinking," and to imagine,"What was she thinking?," and to "Imagine what she experienced in that last part of her life," and to "close your eyes, and . . . envision [the abduction and murder]."

- Argument that instructed the jury that a verdict of death was the only just verdict and that the jury was "the dispensers of justice" and that the victim's mother "waits for you to give her some justice. And justice in this case can only be had by imposing a sentence of death," essentially suggesting to the jury, *inter alia* that a sentence of death should be imposed because that's what the victim's survivors wished.

- Argument that, "[T]he death penalty was enacted for crimes like this."

(d) Appellate counsel failed to argue on appeal that the District Court abused its discretion in overruling defense counsel's objections that Agent Scott's hearsay testimony was merely cumulative to the anticipated testimonies of Penny Butler, Casey Butler, Paul Wilt, David Cunningham, Steven Underwood, Patti Griffith, Robert Howell and Lauri Torrez, and that the testimony violated the Confrontation Clause of the Sixth Amendment.

(e) Appellate counsel failed to argue on appeal that the District Court abused its discretion in not declaring a mistrial during Dr. Mark Cunningham's testimony when the Government alleged that mitigation didn't really matter in the context of the murder of a ten year old girl.

(f) Appellate counsel failed to argue on appeal that the District Court erred in finding that Officer Keith did not interrogate Movant when he looked Movant "dead in the eye," when a bystander asked, "What about the girl?" This "look" was designed to elicit an incriminating response; indeed, Officer Keith agreed that he hoped to get an answer from Movant.

(g) Appellate counsel failed to argue on appeal that the District Court erred in letting the Government ask Penny Butler if she was scared as she testified. Penny's fear had no tendency to prove or disprove any fact in issue; rather, it served only to inflame the passions and prejudices of the jury by implying that Movant had scared Penny twice – once during the kidnapping and once during the trial.

(h) Appellate counsel failed to argue on appeal that the District Court abused its discretion and erred in refusing to let the defense ask Fred Lawrence whether the Bureau of Prisons was equipped to handle the security of Movant. To bolster its theory that Movant was a future danger to society, the Government elicited from Lawrence that Movant poses a security risk, and the defense should have been allowed to explain, deny or refute that testimony.

(i) Appellate counsel failed to argue on appeal that the District Court abused its discretion and erred in refusing to let the defense ask Roger Moore, Jr., why two inmates would have claimed that he had called Movant a "sissy" or a "punk." This evidence was not being offered to prove the truth of Moore's statement, but rather to show that he made them. Such evidence was necessary to put the altercation with Moore into context by showing that Moore had been goading Movant.

(j) Appellate counsel failed to argue on appeal that the District Court abused its discretion and erred in letting the Government present evidence through Bruce Roberts that an inmate had told him that Movant had threatened to harm the inmate's five year old daughter. This alleged statement of Movant was never disclosed to the defense. Further, this was precisely the class of evidence that the District Court precluded Movant from presenting through Roger Moore, Jr.

(k) Appellate counsel failed to argue on appeal that the District Court abused its discretion and erred in admitting testimony about an unrelated knife taken from Movant's kitchen. This testimony had no tendency to prove or disprove any fact in issue; rather, it simply diverted the jurors' attention away from the issue at hand – should Movant live or die.

(l) Appellate counsel failed to argue on appeal that the District Court abused its discretion and erred when it admitted testimony that Paul Wilt had won an award from the Kansas City, Kansas Police Department, "as a testament to [his] quick thinking or quick action in this case." This evidence had no tendency to prove or disprove any fact in issue; rather, it served only to

divert the jurors' attention away from the issues surrounding the only question the jurors had to answer – to wit: should Movant live or die.

(m) Appellate counsel failed to argue on appeal other meritorious issues that individually, or cumulatively, denied Movant the effective assistance of appellate counsel.

WHEREFORE, Movant seeks from this Court: (1) an order pursuant to 28 U.S.C. § 2255 requiring the Government to answer this petition; (2) an order setting a status conference at which time a briefing, discovery and hearing schedule can be established; and (3), an order vacating the present judgment since it was imposed in violation of the United States Constitution and the laws of the United States.

Respectfully submitted,

/s/ Gary E. Brotherton
1390 Boone Industrial Drive, Suite 120
Columbia, MO 65202-3381
(573)875-1571
(573)875-1572 (fax)
gebrotherton@legalwritesllc.com
Co-counsel to Movant, Keith Nelson

/s/ David A. Ruhnke
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
(973)744-1000
(973)746-1490
davidruhnke@ruhnkeandbarrett.com
Co-counsel to Movant, Keith Nelson

Dated: Columbia, Missouri
Montclair, New Jersey
November 6, 2005

VERIFICATION

Movant, Keith D. Nelson, states, pursuant to penalties of perjury, 28 U.S.C. § 1746, that the foregoing is true and correct.

/s/ Keith D. Nelson
KEITH D. NELSON

CERTIFICATE OF SERVICE

Although service of a motion brought pursuant to 28 U.S.C. § 2255 is not required until the Court has made a preliminary ruling that the files and records of the case do not conclusively bar relief, Movant's counsel, in anticipation of such a ruling, has served this motion on today's date upon the United States by filing via ECF.

/s/ David A. Ruhnke
DAVID A. RUHNKE

Dated: Columbia, Missouri
Montclair, New Jersey
November 6, 2005