IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| KEITH D. NELSON, | : | |
| Movant, | : | |
| vs. | : | 4:04-CV-8005(JFG) |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO VACATE THE CONVICTION AND SENTENCE IMPOSED

COMES NOW Keith D. Nelson ("Movant"), by his undersigned counsel, and files this memorandum of law, outlining the general propositions of law which control his pending motion, brought pursuant to 28 U.S.C. § 2255, to vacate his conviction and sentence of death. Movant's counsel propose an initial round of briefing, prior to an evidentiary hearing, in order to establish the legal framework for the hearing, and a final round of briefing that incorporates evidence presented at the hearing. This memorandum discusses the legal standards this Court must apply in assessing the effectiveness of Movant's representation by his trial and appellate counsel.

## STATEMENT OF THE CASE

### A. Procedural history

1. Trial level proceedings

On October 14, 1999, a complaint was filed in this Court charging Keith Nelson ("Movant" or "Mr. Nelson") with various federal offenses arising from his alleged involvement in the October 12, 1999 kidnap and murder of 10-year old Pamela Butler. (A copy of the district court docket sheet in this matter is appended at A1.)[1] Thereafter a two-count indictment was returned charging Mr. Nelson with the following violations of the federal criminal code: count one, 18 U.S.C. § 1201(a)(1) and (g) (interstate kidnapping resulting in death); and, count two, 18 U.S.C. § 2241(c) (interstate travel with intent to engage in a sexual act with a child under age 12). (Indictment reproduced at A32.) Count one of the indictment provided for a potential maximum sentence of death.

On October 25, 2001, shortly before his trial was scheduled to begin, Mr. Nelson entered a plea of guilty to count one of the indictment and proceeded to trial solely on the issue of penalty. As part of the agreement allowing him to plead guilty to count one, the Government agreed to dismiss count two at the time of sentencing. (Plea agreement reproduced at A34.) On November 13, 2001, a jury was selected; trial commenced the following day. On November 28, 2001 the jury, after deliberations that lasted approximately two hours, recommended imposition of a sentence of death. The special verdict form completed by Movant's jurors reflects that the jury unanimously found every one of the six aggravating factor submitted for its consideration and that a single juror found that one of the 10 mitigating factors submitted on Movant's behalf had been established. (Verdict sheet at A41.)

[1]"A" to designate the appendix to this memorandum.

On February 28, 2002, this Court denied Mr. Nelson's motion for a new trial. On March 11, 2002, this Court imposed a sentence of death. Judgment was entered on March 12, 2002. A timely notice of appeal was filed.

2. Appellate proceedings

A timely appeal of the judgment of conviction and sentence of death was taken to the United States Court of Appeals for the Eighth Circuit. The matter was argued before the Eighth Circuit on January 16, 2003. On October 22, 2003, the Court of Appeals affirmed the conviction and sentence. (Copy of opinion reproduced at A52.) Rehearing was denied in the Eighth Circuit on December 24, 2003. The United States Supreme Court, on November 8, 2004, denied Movant's petition for *certiorari* review. *Nelson v. United States*, 125 S.Ct. 486 (2004).

3. Post-conviction proceedings

On November 10, 2004, Mr. Nelson, through counsel, filed a motion seeking the appointment of new counsel to represent him in connection with a post-conviction challenge to his conviction and sentence. (A copy of the district court docket sheet on post-conviction is reproduced at A60.) On December 14, 2004, Movant's present counsel were appointed by the Court. On November 6, 2005, Movant filed a motion pursuant to 28 U.S.C. § 2255 to set aside his conviction and sentence of death. (A of the 2255 motion is appended at A63.) That motion is presently pending before the Court.

## LEGAL DISCUSSION

AN INDIVIDUAL CHARGED WITH A CAPITAL CRIME IS ENTITLED, AS A MATTER OF CONSTITUTIONAL GUARANTEE AND THE LAWS OF THE UNITED STATES, TO THE EFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL.

### A. The history of representation in this case

Movant's case was characterized by numerous changes of counsel. Indeed, there were times when Movant had no counsel who met the statutory requirement of 18 U.S.C. § 3005 that at least one attorney for a capital defendant must be "learned in the law applicable to capital cases . . . ." The following summarizes the history of Movant's representation by counsel before this Court:

- Immediately following Movant's arrest on October 17, 1999, he was represented by a "volunteer" retained attorney, Daniel L. Franco, who has since been disbarred. Thereafter, the Court appointed the Federal Public Defender (effective October 21, 1999), Susan Hunt, Esquire (effective November 2, 1999), and William E. Shull, Esquire (effective November 2, 1999). (A3, 4.)

- Larry C. Pace, Esquire, of the Office of the Federal Public Defender, remained in the case for approximately 10 months. On July 28, 2000, Movant filed a motion to withdraw Mr. Pace as Movant's counsel. The motion was granted on August 21, 2000, although the actual order was apparently not entered on the docket until March 2, 2001. (A10; 15.)

- On September 6, 2000, Movant filed a notice with the Court that Mr. Franco had been discharged as Movant's counsel. An order withdrawing Mr. Franco was entered on the docket on March 2, 2001. (A11; 15.)

- With regard to Mr. Shull, an order was docketed on November 14, 2000 denying Movant's request to withdraw Mr. Shull as counsel. (A12.) (There does not appear to be a docket entry for the motion itself.) Thereafter, on February 20, 2001, an order was docketed granting Mr. Shull's oral motion to withdraw as Movant's counsel. (A14.)

- On the same date as Mr. Shull's withdrawal, February 20, 2001, Patrick Berrigan, Esquire was appointed as counsel to Movant. (A14.)

It thus appears that only Ms. Hunt served as counsel to Mr. Nelson throughout the

trial-level proceedings. Mr. Berrigan first entered the almost exactly nine months prior to the actual commencement of Movant's trial.

**B. The responsibilities of trial counsel in a capital case**

It is an aspect of Movant's challenge to his conviction and sentence of death that his defense counsel failed to conduct an adequate mitigation investigation. A properly-conducted investigation should have consisted of efforts to discover all reasonably available mitigating evidence and to rebut any aggravating evidence to be introduced by the Government. That was not done. Movant further asserts that trial counsel provided less than effective representation in other aspects of the case as well. This challenge to Movant's conviction and sentence of death asserts that, but for the failings of his counsel: (1) there is a reasonable probability that the results of these proceedings would have been different, (2) confidence in the reliability of the outcome has been undermined; and (3), one or more jurors would have struck a different balance.

The prejudice prong of the test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984) requires a defendant in Mr. Nelson's position to show that "there is a *reasonable* probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (emphasis added). In *Wiggins v. Smith*, 539 U.S. 510 (2003), the Court noted that in a death penalty scheme where a non-unanimous jury spares the defendant's life, such as the federal system, confidence in the outcome is undermined where there is "a reasonable probability that at least one juror would have struck a different balance." *Id.* at 536. The United States Supreme Court has stressed that "the adjective ["reasonable"] is important." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). I*n *Kyles*, the Court observed as follows:

> The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but

> whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*Id.*; *see also Strickland*, 466 U.S. at 693 ("a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case"); *Nix v. Whiteside*, 475 U.S. 157, 175 (1986) ("a defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice"). As explained in *Strickland* itself:

> "[R]easonable probability of a different result" is thus *less than a preponderance of the evidence*. It is present when an evaluation of all of the evidence that should have been before the jury is "sufficient to undermine confidence in the outcome."

*Strickland*, 466 U.S. at 693 (emphasis added). In a capital case, a "reasonable probability" of a different result occurs when the full "body of mitigation evidence" that could have been presented case "might well have influenced the jury's appraisal of [the defendant's] moral culpability." *Williams*, 529 U.S. at 398.

The task of defending a capital case, and preparing a case in mitigation, is unfamiliar to most courts and most attorneys, no matter how experienced in the area of criminal law. In 1983, Professor Gary Goodpaster published an article entitled, "The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases," 58 N.Y.U.L.REV. 299 (1983). In the article, Professor Goodpaster discussed the role of the advocate in a death-penalty case in the following terms:

> As an advocate, . . . defense counsel has the related but distinct function of attempting to persuade the jury to exercise mercy. Defense counsel therefore has both the opportunity and the duty to present potentially beneficial mitigating evidence and to attempt to convince the sentencer that, notwithstanding the defendant's guilt, he or she is a person who should not die. Once the defendant has been found guilty of a capital crime, a life sentence is counsel's only remaining advocacy goal. As an advocate for life, counsel must attempt to demonstrate that mitigating factors outweigh aggravating factors and must present

> the sentencer with the most persuasive possible case for mercy.

58 N.Y.U.L.REV. at 318. In his article, the author also outlined the steps an attorney handling a capital case should follow, including the absolute duty of trial counsel "to investigate the client's life history, and emotional and psychological make-up, as well as the substantive case and defenses" noting further that, "The importance of this investigation, and the thoroughness and care with which it is conducted, cannot be overemphasized." *Id.* at 324. In describing the nature of such an investigation, Professor Goodpaster emphasized both its difficulty and time-consuming nature:

> Such investigations present more obstacles than those conducted in furtherance of an ordinary criminal defense, primarily because of the difficulty in locating relevant witnesses. Over the years, the witnesses who are acquainted with the defendant are likely to have become geographically dispersed and more difficult to trace than guilt-phase witnesses. Indeed, constructing a mitigating case on the basis of the life-history investigation is perhaps best viewed as a successive winnowing process: the attorney's investigator tracks down all mitigating leads; the attorney next interviews the most promising contacts and then chooses to call some of them at the penalty phase of the trial in accordance with a coherently developed strategy.

*Id.*

In *Strickland*, the Supreme Court established the now familiar two-prong test for evaluating claims that defense attorneys in criminal cases did not provide the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution. First, counsel's performance must fall "below an objective standard of reasonableness," *Strickland*, 466 U.S. at 680, and second, there must be a "reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different." *Id.* at 693-94. The first prong of *Strickland* is met where, in light of all the circumstances of the case, counsel's "acts or omissions were outside the range of professionally competent

assistance." *Id.* at 690. *See also, Burger v. Kemp*, 483 U.S. 776, 795 (1987); *United States v. Kauffman*, 109 F.3d 186, 190 (3d Cir. 1997). The second prong of *Strickland* is met where, but for counsel's unprofessional performance, there is a reasonable probability that the "result" of the proceeding would have been different.[2] *Kauffman*, 109 F.3d at 190 (quoting *United States v. Nino,* 878 F.2d 702, 711 (3d Cir. 1989).

There is, of course, no specific set of rules for judging reasonable performance. *Strickland*, 466 U.S. at 688-89. Instead, "[i]n any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. However, "[p]revailing norms of practice as reflected in American Bar Association standards and the like . . . are guides." *Strickland*, 466 U.S. at 688. In *Wiggins*, and quite recently in *Rompilla v. Beard*, 125 S.Ct. 2456 (2005), the Court specifically cited the American Bar Association's 1989 "Standards for the Appointment and Performance of Counsel in Death Penalty Cases" as a guide to "'determining what is reasonable.'" *Wiggins*, 123 S.Ct. at 2537, quoting *Strickland*, 466 U.S. at 688. In interpreting *Wiggins*, at least one court has concluded that the 2003 revision of those guidelines should control the analysis of cases tried prior to 2003 since the 2003 Guidelines "simply explain in greater detail the 1989 Guidelines," especially in the area of "the obligations of counsel to investigate mitigating evidence." *Hamblin v. Mitchell*, 354 F.3d 482 (6th Cir. 2003).

It is the heart of this application that Petitioner's trial counsel could not have made a reasonable tactical judgment not to offer the results of a neuropsychological evaluation, or

[2]As noted earlier, in the context of a capital case where a non-unanimous jury spares a defendant's life, which is the situation in the federal system, the prejudice prong of *Strickland* requires proof only of "a reasonable probability that at least one juror would have struck a different balance." *Wiggins v. Smith,* 123 S.Ct. at 2543.

other mental-health evaluations, without having conducted such evaluations in a timely fashion or, indeed, at all. Similarly, in the absence of a complete mitigation investigation, Petitioner's trial counsel could not have made reasonable tactical judgments about the scope and nature of the case in mitigation that would be presented.

Courts have found counsel's performance unreasonable in cases challenging a failure to present evidence favorable to a defendant, where counsel failed to make "reasonable investigations or to make a reasonable decision that makes a particular investigation unnecessary," *Strickland*, 466 U.S. at 691; *see also, Rompilla v. Beard*, 125 S.Ct. at 2463; *Williams v. Taylor*, 529 U.S. at 396; *Marshall v. Cathel*, __ F.3d __, 2005 U.S. App. LEXIS 23650 (3rd Cir. 11/02/05); *Mayfield v. Woodford*, 270 F.3d 915 (9th Cir. 2001) (en banc); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Ainsworth v. Woodford*, 268 F.3d 868 (9th Cir. 2001); *Jermyn v. Horn*, 266 F.3d 257, 312 (3d Cir. 2001); *Carter v. Bell*, 218 F.3d 581, 596 (6th Cir. 2000); *Smith v. Stewart*, 189 F.3d 1004, 1008 (9th Cir. 1999); *Berryman v. Morton*, 100 F.3d 1089, 1101 (3d Cir. 1996); *Hendricks v. Calderon*, 70 F.3d 1032, 1043 (9th Cir. 1995); *Workman v. Tate*, 957 F.2d 1339, 1345 (6th Cir. 1992); *Kenley v. Armontrout,* 937 F.2d 1298, 1309 (8th Cir. 1991).

The American Bar Association's guidelines for counsel in death penalty cases have come to play an increasingly important role in assessing the performance of counsel in a capital case. The 2003 guidelines set forth the following about investigation and preparation:[3]

GUIDELINE 10.7 – INVESTIGATION

[3]Movant urges this Court to follow the lead of *Hamblin v. Mitchell*, 354 F.3d 482 (6th Cir. 2003) which, as noted earlier, concluded that the 2003 revision of those guidelines should control the analysis of cases tried prior to 2003 since the 2003 Guidelines "simply explain in greater detail the 1989 Guidelines," especially in the area of "the obligations of counsel to investigate mitigating evidence."

A. Counsel at every stage have an obligation to conduct thorough and independent investigations relating to the issues of both guilt and penalty.

<u>GUIDELINE 10.10.1– TRIAL PREPARATION OVERALL</u>

A. As the investigations mandated by Guideline 10.7 produce information, trial counsel should formulate a defense theory. Counsel should seek a theory that will be effective in connection with both guilt and penalty, and should seek to minimize any inconsistencies.

In disusing the scope of the investigation to be undertaken pursuant to Guideline 10.7, the ABA Commentary states the following:

> Because the sentencer in a capital case must consider in mitigation, "anything in the life of the defendant which might militate against the appropriateness of the death penalty for the defendant," "Penalty Phase preparation requires extensive and generally unparalleled investigation into personal and family history." In the case of the client, this begins with the moment of conception. Counsel needs to explore:
>
> (1) Medical history (including hospitalizations, mental and physical illness or injury, alcohol and drug use, pre-natal and birth trauma, malnutrition, developmental delays, and neurological damage);
>
> (2) Family and social history (including physical, sexual or emotional abuse; family history of mental illness, cognitive impairments, substance abuse, or domestic violence; poverty, familial instability, neighborhood environment and peer influence); other traumatic events such as exposure to criminal violence, the loss of a loved one or a natural disaster, experiences of racism or other social or ethnic bias; cultural or religious influences; failures of government or social intervention (*e.g.*, failure to intervene or provide necessary services, placement in poor quality foster care or juvenile detention facilities);
>
> (3) Educational history (including achievement, performance, behavior and activities), special educational needs (including cognitive limitations and learning disabilities) and opportunity or lack thereof and activities;
>
> (4) Military service, (including length and type of service,

conduct, special training, combat exposure, health and mental health services);

(5) Employment and training history (including skills and performance, and barriers to employability);

(6) Prior juvenile and adult correctional experience (including conduct while under supervision, in institutions of education or training, and regarding clinical services).

ABA GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF DEFENSE COUNSEL IN DEATH PENALTY CASES (Rev. Ed. 2003).

The importance of the ABA Guidelines is illustrated by *Wiggins* where the Court specifically cited the ABA's 1989 Standards as the benchmark for "'determining what is reasonable'" to expect of counsel in a capital case. *Wiggins*, 123 S.Ct. at 2537, quoting *Strickland*, 466 U.S. at 688. *Wiggins* thus stands squarely for the proposition that the "prevailing professional norms" by which the performance of counsel in a capital case is measured are those set forth in the ABA Guidelines. *Wiggins* also stated the following with regard to defense counsel's obligations to prepare and, more importantly, *investigate*, a case in mitigation:

> Investigations into mitigating evidence "should comprise efforts to discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor." ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 11.4.1(C), p. 93 (1989) . . . . Despite these well-defined norms, however, counsel abandoned their investigation of petitioner's background after having acquired only rudimentary knowledge of his history from a narrow set of sources.

*Wiggins*, 123 S.Ct. at 2537 (emphasis in original).[4] Earlier this year, in *Rompilla v. Beard*,

---

[4]The Summer 2003 edition of the Hofstra Law Review contains a complete rendition of the 2003 ABA Guidelines, together with the official commentary and accompanying scholarly articles regarding the Guidelines themselves and issues concerning the defense of death penalty cases. *See*, "The Guiding Hand of Counsel: ABA Guidelines for the

*supra*, the Court found that the Petitioner had not received effective assistance of counsel at the penalty-phase of his Pennsylvania capital case, reversing the United States Court of Appeals for the Third Circuit. In the course of the opinion, the Supreme Court re-emphasized the importance of defense counsel conducting a full penalty-phase investigation. In describing the case before it, the majority observed that, "This case, like some others recently, looks to norms of adequate investigation in preparing for the sentencing phase of a capital trial . . . ." The Court also, once again, emphasized and reiterated the importance of the American Bar Association's Guidelines on criminal cases in general and capital cases in particular in resolving a claim of ineffective assistance of counsel. *See* discussion, *id*., at nn. 6, 7.

The importance of mitigating evidence in capital sentencing proceedings is a fundamental tenet of the Supreme Court's capital jurisprudence. *Perry v. Lynaugh*, 492 U.S. 302, 307 (1989); *Eddings v. Oklahoma*, 455 U.S. 104, 110-12 (1982); *Lockett v. Ohio*, 438 U.S. 586, 605 (1978). It is critical to the reliability of the capital sentencing proceeding that the jury render an individualized decision. *Gregg v. Georgia*, 428 U.S. 153, 206 (1976). A jury cannot make that decision in a reliable, individualized, and constitutional way without mitigating evidence about the defendant. Reasonable investigation of the mitigation in a capital case is therefore an absolute prerequisite to constitutional representation. The core Eighth Amendment principle that "respect for humanity" requires consideration of information about the offender, *Lockett*, 438 U.S. at 602 (quoting *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976)), allows for no less. "It is critical to the reliability of a capital sentencing proceeding that the jury render an individualized determination." *Harris*

---

Appointment and Performance of Defense Counsel in Death Penalty Cases," 31 HOFSTRA L.REV. 903-1211 (2003).

*v. Dugger*, 874 F.2d 756, 763 (11th Cir. 1989) (citing *Gregg v. Georgia*, *supra*, 428 U.S. at 206; *Armstrong v. Dugger*, 833 F.2d 1430, 1433 (11th Cir. 1987).

Under clearly established United States Supreme Court precedent, a defendant's Sixth Amendment right to the effective assistance of counsel is violated whenever counsel provides professionally deficient representation that results in prejudice. *Strickland v. Washington*, *supra*; *Williams v. Taylor*, *supra*; *Wiggins v. Smith*, *supra*. Counsel's performance at capital sentencing must be evaluated in light of the fundamental principle that a capital defendant has "a right – indeed, a constitutionally protected right – to provide the jury with [all reasonably available] mitigating evidence" in his case. *Williams v. Taylor*, 529 U.S. at 363. Accordingly, capital counsel have an "obligation to conduct a thorough investigation of the defendant's background" for mitigating evidence, *Williams*, 529 U.S. at 396 (citing 1 ABA STANDARDS FOR CRIMINAL JUSTICE 4-4.1, commentary, p. 4-55 (2d ed. 1980)),[5] quoted in *Wiggins v. Smith*, 123 S. Ct. at 2535, and anything less than a "thorough investigation" constitutes deficient performance under *Strickland*. *Wiggins*, 123 S. Ct. at 2536; *Williams*, 529 U.S. at 396; *Jacobs v. Horn*, 129 F. Supp. 2d 390, 406 (M.D. Pa. 2001) ("the duty to investigate encompasses an investigation into mitigating circumstances including family

---

[5] *Williamson v. Ward*, 110 F. 3d 1508, 1514 (10th Cir. 1997) ("in a capital case, counsel's duty to investigate all reasonable lines of defense is strictly observed"); *Antwine v. Delo*, 54 F.3d 1357, 1367 (8th Cir. 1995) (counsel has a heightened "duty . . . to collect as much information as possible about [the defendant] for use at the penalty phase"); *Hill v. Lockhart*, 28 F.3d 832, 845 (8th Cir. 1994) ("Given the severity of the potential sentence and the reality that the life of [the defendant] [is] at stake," it is capital counsel's "duty . . . to collect as much information as possible about [the defendant] for use at the penalty phase."). The *American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases* make clear that capital counsel must "make efforts to discover all reasonably available mitigating evidence." ABA GUIDELINES § 11.4.1; *id.* § 11.8.6 ("Counsel should present to the sentencing entity or entities all reasonably available evidence in mitigation"). As the United States Supreme Court explained as early as *Strickland* in 1984, and more recently in both *Wiggins* and *Rompilla*, decided, respectively in 2003 and 2005, the ABA standards serve as important guides for determining the reasonableness of counsel's performance.

background and mental health mitigating evidence").

The Supreme Court has made clear, the Sixth Amendment requires that "investigations into mitigating evidence 'should comprise efforts to discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor," *Wiggins v. Smith*, *supra*, 123 S.Ct. at 2537 (quoting ABA Guideline 11.4.1(C) (emphasis in *Wiggins*), and "among the topics counsel should consider presenting are medical history, educational history, employment and training history, family and social history . . . . " *Id.* (citing ABA Guideline 11.8.6; emphasis omitted).

This duty to investigate and present mitigating evidence has several distinct components. Counsel has an obligation to collect all reasonably available institutional records that may contain relevant mitigating evidence. AMERICAN BAR ASSOCIATION GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF COUNSEL IN DEATH PENALTY CASES, Guideline 11.4.1, Investigation, §§ 2C & 2D (capital counsel should secure releases and obtain hospital, treatment, school and mental health records). Consequently, counsel's performance is deficient when his efforts to obtain available institutional records containing mitigating evidence are inadequate. *See Williams v. Taylor*, 529 U.S. at 396 (failure to obtain juvenile and social services records "graphically describing Williams' nightmarish childhood.")[6]

[6]*See*, *e.g., Glenn v. Tate*, 71 F.3d 1204 (6th Cir. 1995) (failure to obtain school records evidencing mental retardation); *Clabourne v. Lewis*, 64 F.3d 1373, 1385 (9th Cir. 1995) (failure to obtain institutional records from mental hospital and prison treatment facility for mitigating evidence); *Hill v. Lockhart*, 28 F.3d at 845 (failure to obtain records from mental hospital for mitigating evidence); *Martinez-Macias v. Collins*, 810 F. Supp. 782, 787 (W.D. Tex 1991) (failure to utilize records from state rehabilitation center to demonstrate good conduct and efforts to rehabilitate while in custody), *aff'd*, 979 F.2d 1067 (5th Cir. 1992); *cf. Williams v. Washington*, 59 F.3d 673, 680 (7th Cir. 1995) (failure to become familiar with documentary evidence in discovery materials); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992) (failure to examine physical evidence).

Counsel has an obligation to interview all witnesses who may be able to provide information in mitigation. ABA GUIDELINES, Guideline 11.4.1, Investigation, §§ D.2.C, D.3.B & D.3.C (directing counsel to seek out information regarding "family and social history (including physical, sexual or emotional abuse)" by, inter alia, interviewing family members and others familiar with the defendant's life history); *id*., Guideline 11.8.3, Preparation for the Sentencing Phase, § F ( same). Counsel's failure to interview a witness who has relevant mitigating information constitutes deficient performance. *Williams*, 529 U.S. at 415 (O'Connor, J., concurring) (counsel ineffective where he presented testimony from defendant's mother and two friends but failed to fully interview and present evidence from other "friends, neighbors and family"); *Jermyn v. Horn*, 266 F.3d at 310 (3d Cir. 2001) (counsel ineffective for failing to interview and present evidence of child abuse from relatives and for failing to present mental health testimony on psychological implications of the abuse); *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989) (counsel's failure to interview potential witnesses violates the duty to investigate and constitutes deficient performance).[7]

Counsel also has an obligation to properly prepare all mitigation witnesses so they are ready to testify to all relevant mitigating evidence within their knowledge, and to bring out, during the course of each witness's mitigating testimony all relevant mitigating evidence that the witness is able to present. *See, e.g., Williams*, 529 U.S. at 398 (counsel must make an evidentiary presentation that "explain[s to the jury] the significance of all the available

[7]*See, E.g., Hill v. Lockhart*, 28 F.3d at 845 (8th Cir. 1994); *Kubat v. Thieret*, 867 F.2d 351, 367 (7th Cir. 1989) (failure to interview and present mitigating testimony from, *inter alia*, neighbors and coworkers); *United States ex rel. Emerson v. Gramley*, 883 F. Supp. 225, 244 (M.D. Ill. 1995) (failure to interview "at least seven" potential mitigation witnesses), *aff'd*, 91 F.3d 898 (7th Cir. 1996); *Martinez-Macias v. Collins*, 810 F. Supp. at 787(failure to interview family members about defendant's good character traits), *aff'd*, 979 F.2d 1067 (5th Cir. 1992).

evidence"); *Collier v. Turpin*, 177 F.3d 1184, 1199-1204 (11th Cir. 1999) (in case in which counsel traveled out of state to interview more than fourteen family members and others who knew defendant, subpoenaed fourteen of those persons interviewed, and called ten to testify at capital sentencing, counsel ineffective for failing to elicit all of the mitigating evidence from the ten witnesses that were called).[8] *Jacobs v. Horn*, 129 F. Supp. 2d 390, 408 (M.D. Pa. 2001) ("petitioner's background history of abuse and/or the reality that he was mentally retarded and suffered from other cognitive and psychological problems might well have influenced the jury's appraisal of his moral culpability").

When it comes to describing the scope of mitigation evidence that may properly be presented to a jury in a capital case – especially in a weighing jurisdiction – the sky is virtually the limit. Starting with the Federal Death Penalty Act of 1994 itself ("FDPA"), the Act sets out seven specific mitigating factors and one "catch-all" factor. 18 U.S.C. § 3592(a)(1)-(8). Moreover the FDPA itself notes that the finder of fact in such cases, "Shall consider any mitigating factor, including the following . . ." suggesting that the range of permissible evidence a defendant may present in mitigation is broader even than the "catch-all" set forth at 18 U.S.C. § 3592(a)(8). This is entirely consistent with established Supreme Court precedent.

The United States Constitution requires that, in a death-penalty prosecution, no

---

[8] *See also Martinez-Macias v. Collins*, 810 F. Supp. at 787 (deficient performance for failure to "investigate[ ] and present[ ] evidence from family members concerning Petitioner's good character traits" and failing to prepare petitioner's wife for sentencing stage testimony), *aff'd*, 979 F.2d 1067 (5th Cir. 1992). This obligation applies to expert witnesses as well as lay witnesses. *E.g., Bloom v. Calderon*, 132 F.3d 1267 (9th Cir. 1997) (failure to provide mental health records, including evidence of black-outs or transient psychotic episodes); *Clabourne v. Lewis*, 64 F.3d 1373, 1384-85 (9th Cir. 1995) (failure to provide mental health experts with background materials for accurate mental health profile is ineffective); *Hendricks v. Calderon*, 864 F. Supp. 929 (N.D. Cal. 1994) (failure to provide life history information about client to mental health experts deficient), *aff'd*, 70 F.3d 1032, 1044 (9th Cir. 1995).

limitation may be placed on the right of the accused to present, for the sentencer's consideration, any relevant mitigating evidence. This firmly-established tenet of capital jurisprudence is rooted in *Lockett v. Ohio*, 438 U.S. 586 (1978), where a plurality of the Court held that "in all but the rarest kind of capital cases," a sentencing authority may not "be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record . . . as a basis for a sentence less than death." *Id*. at 113-14 (emphasis omitted); see also, *Skipper v. North Carolina*, 476 U.S. 1 (1986); *Eddings v. Oklahoma*, 455 U.S. at 112. In *McCleskey v. Kemp*, 481 U.S. 279 (1987), the Court held that a constitutional death-penalty scheme

> cannot limit the sentencer's consideration of *any relevant circumstance* that could cause it to decline to impose the penalty. In this respect, the State cannot channel the sentencer's discretion, but must allow it to consider *any relevant information* offered by the defendant.

*Id*. at 305-06 (emphasis added); *see also*, *Green v. Georgia*, 442 U.S. 95 (1979) (State's evidence rules may not be invoked to bar otherwise relevant mitigating evidence.)

In *Buchanan v. Angelone*, 522 U.S. 269 (1998), Chief Justice Rehnquist, writing for a majority of the Court, stated:

> [I]n the [penalty] phase, we have emphasized the need for a broad inquiry into all relevant mitigating evidence to allow an individualized determination.
>
> * * *
>
> In the [penalty] phase, our cases have established that the sentencer may not be precluded from considering any constitutionally relevant mitigating evidence.

*Id*. at 276 (citations omitted). In *Williams v. Taylor*, *supra*, the Court noted that mitigating evidence can serve to lessen a defendant's "moral culpability" even where such evidence "does not undermine or rebut the prosecution's death-eligibility case." *Williams*, 529 U.S.

at 398.

In fact, the line of cases supporting the liberal admission of mitigating evidence is unbroken, and was most recently lengthened by *Tennard v. Dretke*, 125 S.Ct. 2562 (2004). There, a six-member majority of the Court reversed the Fifth Circuit and bluntly criticized the Circuit's longstanding practice of imposing an erroneously restrictive standard of relevance for mitigating evidence at the penalty phase of capital cases. *Tennard* reiterated that the threshold of relevance for mitigating evidence is minimal, stating:

> When we addressed directly the relevance standard applicable to mitigating evidence in capital cases in *McKoy v. North Carolina,* 494 U.S. 433, 440-441, 108 L. Ed. 2d 369, 110 S. Ct. 1227 (1990), we spoke in the most expansive terms. We established that the "meaning of relevance is no different in the context of mitigating evidence introduced in a capital sentencing proceeding" than in any other context, and thus the general evidentiary standard – "'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence'"– applies. *Id*., at 440, 108 L. Ed. 2d 369, 110 S. Ct. 1227 (*quoting New Jersey v. T. L. O*., 469 U.S. 325, 345, 83 L. Ed. 2d 720, 105 S. Ct. 733 (1985)). We quoted approvingly from a dissenting opinion in the state court: "'Relevant mitigating evidence is evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value.'" 494 U.S., at 440, 108 L. Ed. 2d 369, 110 S. Ct. 1227 (*quoting State v. McKoy*, 323 N. C. 1, 55-56, 372 S.E.2d, 12, 45 (1988) (opinion of Exum, C. J.)). Thus, a State cannot bar "the consideration of . . . evidence if the sentencer could reasonably find that it warrants a sentence less than death." 494 U.S., at 441, 108 L. Ed. 2d 369, 110 S. Ct. 1227.
>
> Once this low threshold for relevance is met, the "Eighth Amendment requires that the jury be able to consider and give effect to" a capital defendant's mitigating evidence. *Boyde v. California,* 494 U.S. 370, 377-378, 108 L. Ed. 2d 316, 110 S. Ct. 1190 (1990) (*citing Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954 (1978); *Eddings v. Oklahoma*, 455 U.S. 104, 71 L. Ed. 2d 1, 102 S. Ct. 869 (1982); *Penry I*, 492 U.S. 302, 106 L. Ed. 2d 256, 109 S. Ct. 2934 (1989)); *see also Payne v. Tennessee,* 501 U.S. 808, 822, 115 L. Ed. 2d 720, 111 S. Ct. 2597 (1991) ("We have held that a State cannot preclude the

> sentencer from considering 'any relevant mitigating evidence' that the defendant proffers in support of a sentence less than death. . . . [V]irtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances." (*quoting Eddings, supra*, at 114, 71 L. Ed. 2d 1, 102 S. Ct. 869)).

*Id.* at 2570. In *Smith v. Texas*, 125 S.Ct. 400 (2004), decided five months after *Tennard*, the Court firmly emphasized its rejection of the "nexus" requirement that the Texas Court of Criminal Appeals, as endorsed by the Fifth Circuit, had erected as a barrier to the admission of mitigating evidence, stating, "We rejected the Fifth Circuit's 'nexus' requirement in *Tennard* . . . ." *Smith v. Texas*, 125 S.Ct. at 405.

Thus, counsel's constitutional duty in this case was to investigate, discover, and present, in the language of *McCleskey*, *supra*, evidence of "any relevant circumstance that could cause [a jury] to decline to impose the penalty [of death]." Trial counsel were also required to protect Movant's legal rights at trial, and to advocate zealously on his behalf. The Eighth Circuit has not hesitated to apply the principles discussed above and to grant relief in similar cases. *See, e.g.*, *Antwine v. Delo*, 54 F.3d 1357, 1365 (8th Cir 1995) ("The issue is whether the failure to discover and present evidence of Antwine's mental condition undermines our confidence in the outcome of either the guilt or sentencing phase of the trial. We are concerned, then, with whether the jury – not the motion court – would have found the evidence of Antwine's mental condition credible."); *Simmons v. Luebbers,* 299 F.3d 929, 939 (8th Cir 2002) ("[T]he state portrayed Simmons as an individual who responded violently when his advances were not accepted by women. During the penalty phase, Simmons's attorneys could have presented evidence of Simmons's background to demonstrate that his compulsive, violent reactions were the result of an abusive and traumatic childhood. Further, a vivid description of Simmons's poverty stricken childhood, particularly the physical abuse, and the assault in Chicago, may have influenced the jury's assessment of his moral

culpability."); *Parkus v. Delo,* 33 F.3d 933, 940 (8th Cir 1994) (Counsel must conduct an adequate investigation of facts, consider viable theories, and develop evidence to support those theories. The failure of counsel to adequately investigate a petitioner's mental health history and background necessitated an evidentiary hearing.); *Steinkuehler v. Meschner,* 176 F.3d 441 (8th Cir 1999) (The habeas relief granted related solely to petitioner's intoxication defense. Trial counsel failed to present evidence that a crucial police witness on the issue of petitioner's state of intoxication had pressured another witness to "forget" that petitioner was intoxicated and that the police witness had a habit of "forgetting" exculpatory evidence. The deficient performance prejudiced petitioner and a reasonable probability existed that the result would have been different if counsel had presented the evidence. Petitioner was denied his right to effective assistance of counsel.); *Driscoll v. Delo*, 71 F.3d 701 (8th Cir 1995) (The court agreed that a writ of habeas corpus should issue on three independent bases: Appellant was denied effective counsel because his lawyer allowed the jury to retire with the factually inaccurate impression that the victim's blood was on appellant's knife; second, appellant's trial counsel was also ineffective for failing to impeach a state eyewitness using his prior inconsistent statements; finally, appellant's sentence violated U.S. Const. amend. VIII because the prosecutor made repeated statements to the jury that diminished the jury's sense of responsibility for its sentence of death.); *Copeland v. Washington*, 232 F.3d 969, 975 (8th Cir 2000) ("The improper argument would have had a significant prejudicial effect on the jurors, and it was unreasonable, in light of Supreme Court precedent, to conclude that the argument did not result in a deprivation of due process. The district court correctly determined that the argument was improper and the failure to object to the argument constituted ineffective assistance of counsel. Accordingly, the petitioner's death sentence is vacated.);

Movant respectfully suggests that applying the above principles to the facts as found by this Court after an evidentiary hearing will require this Court to grant relief on the issue of ineffective assistance of trial counsel.

**C. Ineffective assistance of appellate counsel**

Movant was represented on the direct appeal of his conviction and sentence of death by Susan M. Hunt, Esquire, who had served as one of Movant's trial counsel, and by Jennifer Herndon, Esquire.

There is no constitutional right to an appeal; that right is statutorily created. *McKane v. Durston*, 153 U.S. 684, 687 (1894). Where an appeal is granted by statute, equal protection and due process converge to require the assistance of an effective attorney. *Smith v. Robbins,* 528 U.S. 259, 276 (2000). In the non-capital context, appellate counsel need not raise every non-frivolous claim of error. *Evitts v. Lucey,* 469 U.S. 387, 394 (1985), *citing Jones v. Barnes,* 463 U.S. 745 (1983). However,

> the penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.

*Strickland v. Washington*, 466 U.S. at 715, *quoting Woodson v. North Carolina,* 428 U.S. 280, 305 (1976) (plurality). The ABA GUIDELINES take into account this need for heightened reliability in capital cases in identifying what a reasonably competent appellate attorney must do in a capital case.

> <u>GUIDELINE 10.15.1 – DUTIES OF POST-CONVICTION COUNSEL</u>
>
> C. Post-conviction counsel should seek to litigate all issues, whether or not previously presented, that are arguably meritorious under the standards applicable to high quality

capital defense representation, including challenges to any overly restrictive procedural rules. Counsel should make every professionally appropriate effort to present issues in a manner that will preserve them for subsequent review.

* * *

E. Post-conviction counsel should fully discharge the ongoing obligations imposed by these Guidelines, including the obligations to:

1. maintain close contact with the client regarding litigation developments;

2. continually monitor the client's mental, physical and emotional condition for effects on the client's legal position;

3. keep under continuing review the desirability of modifying prior counsel's theory of the case in light of subsequent developments; and

4. continue an aggressive investigation of all aspects of the case.

In discussing the precise duties of appellate counsel in the post-conviction setting, the ABA commentary notes the paramount importance of appellate counsel's duty to "proceed, like all post-conviction counsel, in a manner that maximizes the client's ultimate chance of success." ABA Guidelines, *supra*; 31 Hofstra L.Rev. 913, 1083 (2003):

> Practice varies among jurisdictions as to the limits of the appellate process and the relationship between direct appeals and collateral post-conviction challenges to a conviction or sentence. (footnote omitted). Issues that are only partially or minimally reflected by the record, or that are outside the record, should be exploited by appellate counsel as a predicate for informed decision making about legal strategy.
>
> As Subsection C emphasizes, it is of critical importance that counsel on direct appeal proceed, like all post-conviction counsel, in a manner that maximizes the client's ultimate chances of success. *"Winnowing" issues in a capital appeal can have fatal consequences.* Issues abandoned by counsel in one case, pursued by different counsel in another case and ultimately successful, cannot necessarily be reclaimed later.

> *When a client will be killed if the case is lost, counsel should not let any possible ground for relief go unexplored or unexploited.*

*Id.* (footnote omitted) (emphasis added).

Appellate counsel in capital cases must raise all arguable legal issues for the client; nothing less will facilitate the court's review of the death sentence. *See Ellis v. United States*, 356 U.S. 674, 674-675 (1958) (appellate counsel acted more like *amici curiae*; much more is required); *accord Thompson v. State* 492 N.E.2d 264, 278 (Ind. 1986) (appeal counsel simply listed possible errors for the court to independently review). Counsel must "research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *United States v. Reinhart*, 357 F.3d 521, 525 (5th Cir. 2004) (counsel rendered ineffective assistance in failing to brief and argue Reinhart's accountability as it related to his sentence); *Roe v. Delo,* 160 F.3d 416 (8th Cir. 1998) (appellate counsel failed to argue that the trial court erroneously blurred the distinction between first and second degree murder); *Bell v. Lockhart,* 795 F.2d 655 (8th Cir. 1986) (appellate counsel rendered ineffective assistance in failing to properly advise client of the risks of waiving a direct appeal because post-conviction appeal was not an adequate substitute); *Matire v. Wainwright*, 811 F.2d 1430, 1438 (11th Cir. 1987) (ineffective assistance when appellate counsel failed to raise issue of prosecutor's improper use of defendant's post-arrest silence in state's case-in-chief); *Ballard v. United States*, 400 F.3d 404 (6th Cir. 2005) (appellate counsel rendered ineffective assistance in failing to raise *Apprendi*[9] error); *Mapes v. Tate*, 388 F.3d 187 (6th Cir. 2004) (appellate counsel rendered ineffective assistance in failing to argue that the trial court erred in refusing to let the jury consider mitigating factors related to an out-of-state conviction)

In determining whether counsel performed effectively on appeal, the *Strickland* test

---

[9] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

applies. *Smith v. Robbins*, 528 U.S. 259, 287 (2000); *accord Bell v. Lockhart*, 795 F.2d 655, 657 (8th Cir. 1986). Movant must show both that counsel's representation fell below an objective standard of reasonableness and that the deficiencies prejudiced him. *See Strickland*, 466 U.S. at 687-88. As fully discussed, *supra*, the ABA GUIDELINES provide the best glimpse at what level of performance is required to meet the objective standard of reasonableness. One court has identified the following questions as relevant to the reasonableness inquiry:

> (1) Were the omitted issues "significant and obvious"?
>
> (2) Was there agreeably contrary authority on the omitted issues?
>
> (3) Were the omitted issues clearly stronger than those presented?
>
> (4) Were the omitted issues objected to at trial?
>
> (5) Were the trial court's rulings subject to deference on appeal?
>
> 6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
>
> (7) What was appellate counsel's level of experience and expertise?
>
> (8) Did the petitioner and appellate counsel meet and go over possible issues?
>
> (9) Is there evidence that counsel reviewed all the facts?
>
> (10) Were the omitted issues dealt with in other assignments of error?
>
> (11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Whiting v. Burt,* 395 F.3d 602, 616 (6th Cir. 2005), *citing Mapes v. Coyle,* 171 F.3d 408, 427-28 (6th Cir. 1999).

But, what about prejudice?

> Although [analyzing for prejudice] necessarily involves an evaluation of the underlying claims, it does *not* require a decision on or a determination of these issues. All that is required is a determination that, based on the nature of the underlying claims, there is "a reasonable probability that, but for his counsel's [failings] . . ., [the defendant] would have prevailed on his appeal."

*Mapes v. Tate*, 388 F.3d 187, 194 (6th Cir. 2004), *citing Strickland, supra*; *accord Roe v. Delo*, 160 F.3d 416, 420 (8th Cir. 1998).

Thus, "[Mr. Nelson] must show that there is 'a reasonable probability' – 'a probability sufficient to undermine confidence in the outcome,' but less than a preponderance of the evidence – that his appeal would have prevailed had counsel's performance satisfied constitutional requirements." *United States v. Cross*, 308, F.3d 308, 315 (3rd Cir. 2002), *citing Strickland,* 466 U.S. at 694-695 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.").

> The assessment of prejudice should proceed on the assumption that the decision maker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncracies (sic) of the particular decision maker, such as unusual propensities toward harshness or leniency. Although these factors may actually have entered into counsel's selection of strategies and, to that limited extent, may thus affect the performance inquiry, they are irrelevant to the prejudice inquiry.

*Strickland*, at 695; *accord Roe v. Delo,* 160 F.3d at 420 ("Our review of these cases leaves us uncertain whether the Missouri Court of Appeals would have found plain error had this issue been raised in Roe's direct appeal. But the question before us is limited to whether there is a reasonable probability that the outcome would have been different, the test for determining whether Roe received constitutionally ineffective assistance of counsel.").

Upon a finding that appellate counsel rendered ineffective assistance, courts seek to

neutralize the effect of the constitutional deprivation. *Mapes v. Tate, supra* at 195. Thus, the courts must grant the Movant a new direct appeal where the omitted issues may be properly presented for review. *Roe v. Delo, supra; Bell v. Lockhart, supra*.

## CONCLUSION

Movant suggests, respectfully, that application of the above principles to the facts found after an evidentiary hearing, will require this Court to grant relief on the basis of the level of assistance Movant received from his trial and appellate counsel.

Respectfully submitted,

/s/ Gary E. Brotherton
1390 Boone Industrial Drive, Suite 120
Columbia, MO 65202-3381
(573)875-1571
(573)875-1572 (fax)
gebrotherton@legalwritesllc.com
Co-counsel to Movant, Keith Nelson

/s/ David A. Ruhnke
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
(973)744-1000
(973)746-1490
davidruhnke@ruhnkeandbarrett.com
Co-counsel to Movant, Keith Nelson

Dated: Columbia, Missouri
Montclair, New Jersey
November 14, 2005

## CERTIFICATE OF SERVICE

This will certify, pursuant to 28 U.S.C. § 1746, that on today's date Movant's counsel served this memorandum, with appendix, upon the United States, by filing via the documents via ECF.

/s/ David A. Ruhnke
DAVID A. RUHNKE

Dated: Columbia, Missouri
Montclair, New Jersey
November 14, 2005