IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| KEITH D. NELSON, | : | |
| Movant, | : | |
| vs. | : | 4:04-CV-8005(FJG) |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

MOTION, WITH INCORPORATED MEMORANDUM OF LAW,
TO DISQUALIFY AND RECUSE HON. FERNANDO J. GAITAN, JR., U.S.D.J.,
FROM FURTHER PARTICIPATION IN THIS MATER

COMES NOW Keith D. Nelson, by his attorneys David A. Ruhnke and Gary E. Brotherton, and moves for an order pursuant to 28 U.S.C. § 144, 28 U.S.C. § 455, and the Due Process Clause of the Fifth Amendment, disqualifying and recusing Hon. Fernando J. Gaitan, Jr., U.S.D.J., from further participation in this matter. The grounds for this motion, and relevant legal authority, are set forth in the following memorandum of law.

**A. Background and introduction**

On November 6, 2005, Movant filed a motion pursuant to 28 U.S.C. § 2255 to set aside his judgment of conviction and sentence of death. Among the grounds alleged in the motion are that his trial counsel failed to provide the constitutionally-required level of

effective representation. The United States, in answering the motion, has taken the position that trial counsel were effective in representing Movant. Ths issue is thus joined, and Movant has requested a hearing regarding the facts and circumstances of trial counsels' representation of Movant.

In an effort to establish the harmful nature of the alleged ineffective assistance of trial counsel, Movant's present counsel have from time to time requested that this Court approve funding for expert, investigative, and other assistance, as previously permitted by 21 U.S.C. § 848(q)(9).[1] In a series of such motions filed in the fall of 2005, Movant's counsel requested, *inter alia*, the following funding of expert and investigative assistance: (1) on October 30, 2005, funding of additional hours for the services of mitigation specialist Jill Miller, MSSW; (2) on November 23, 2005, funding for the services of a clinical forensic psychologist; and (3), on December 5, 2005, funding for an attorney to evaluate trial counsels' representation and potentially to testify as an expert in the trial and preparation of capital cases.[2] On February 28, 2006, Judge Gaitan issued an order denying all three funding requests. In that order, Judge Gaitan also revealed that, without hearing any evidence or argument, he had pre-determined the merits of this litigation so far as it challenges the level of assistance Movant received from his trial counsel. Judge Gaitan explained his reasons for

---

[1]Effective March 9, 2006, the procedural aspects of the Title 21 federal death penalty, including the above-cited provision, were repealed and reenacted at 18 U.S.C. § 3599. *See*, *United States v. Taveras*, 2006 U.S. Dist. LEXIS 45551 (E.D.N.Y. 2006) at *2-*21.

[2]Although those applications were initially sealed, Movant's counsel filed a motion, subsequently granted by the Court, to unseal the applications and orders.

denying the funding requests as follows:

> The above-referenced motions [for investigative and expert assistance] have been denied because the Court does not agree with the assertions therein. Appellate[3] counsel, with the benefit of hindsight, is attempting to vilify trial counsel's judgment on trial strategy. In reality, trial counsel's conduct and strategy far exceed those standards of *Strickland v. Washington,* 466 U.S. 669 (1984). Further, the resources requested by counsel in these motions are not likely to lead to a different result. Mr. Nelson received a fair trial. Appellate counsel is reminded that excessive expenditures of judicial resources have their limits.

A clearer case of judicial bias can hardly be imagined. So far as Judge Gaitan is concerned, the issue of *Strickland* effectiveness is a foregone conclusion, Movant received "a fair trial," and is therefore entitled to no relief. Moreover, the order gratuitously denigrates the efforts of present counsel, characterizing counsel's decision to raise the issue of ineffective assistance as an exercise guided by the "benefit of hindsight" and, worse, motivated by a desire to "vilify" trial counsel. The tone of the order reflects a level of hostility to the efforts of present counsel on Movant's behalf, and to the merits of this litigation, that is the antithesis of impartiality. As a matter of law, Judge Gaitan must recuse himself from further involvement in this case.

### B. The Due Process Clause and disqualification pursuant to 28 U.S.C. §§ 144 and 455(b)(1)

The fair trial guarantees of the Due Process Clause of the Fifth Amendment

---

[3]In context, Judge Gaitan's comments make it clear that by "appellate counsel" he is referring to Movant's present counsel, not to counsel who represented Movant on his direct appeal.

encompass a litigant's right to have "a neutral and detached judge" preside over judicial proceedings. *Ward v. Village of Monroe*, 409 U.S. 57, 62 (1972). In *In re Murchison*, 349 U.S. 133 (1959) the Supreme Court observed:

> A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias. But our system of law has always endeavored to prevent even the probability of unfairness. . . . Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice."

*Id* at 136 (citations omitted). So important is this constitutional guarantee that its denial is not subject to the harmless error rule. *See, e.g.*, *Tumey v. Ohio*, 273 U.S. 510 (1927).

In addition to the guarantees of due process, two acts of congress aim to protect a federal litigant's entitlement to impartial justice. Section 144 of Title 28 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten[4] days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a

[4]"The 10 day rule has been an anachronism since 1963, when Congress abolished formal terms of court for United States district courts. See 28 U.S.C. §138." *Liteky v. United States*, 510 U.S. 540, 560 (1994) (Kennedy, J. concurring).

> certificate of counsel of record stating that it is made in good faith.

Similarly, § 455(b)(1) of Title 28 provides:

> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding….

Sections 144 and §455(b)(1) thus set out identical grounds for recusal except that §455 makes those grounds applicable to all justices, judges and magistrates and places the obligation to identify the existence of those grounds upon the judge, rather than requiring recusal only in response to a party affidavit. *Liteky v. United States*, 510 U.S. 540, 548 (1994). It is also true that neither statute sets up an automatic right to judicial disqualification:

> [i]n assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are, in fact, seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a *reasonable* basis. Nothing in [the legislative history of §455] should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not to have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice. S.Rep. No. 93-419, 93d Cong., 1st Sess. 1973, p.5.

*Ouachita National Bank v. Tosco Corp.,* 686 F.2d 1291, 1300 (8th Cir. 1982) (emphasis in original) (quoting H.R. Rep. No. 1453, *reprinted in* 1974 U.S. Code Cong. & Ad. News

6351, 6355).

Once a motion to disqualify is filed under §144, however, the judge must pass on the sufficiency of the affidavit, but not the truth of the matters asserted. *See e.g., Henderson v. Dept. of Public Safety and Corrections*, 901 F.2d 1288, 1296 (5th Cir. 1990). A legally sufficient affidavit must be material and must be stated with particularity. The facts must be such that, if true, they would convince a reasonable person that a bias exists. *Id.* The previous requirement that the affidavit establish facts that show the bias is personal and not judicial appears to have been abolished by the Supreme Court in *Liteky*.[5] The Court, in *Liteky*, found that, while an "extrajudicial source" is the common basis for establishing a disqualifying bias, it is not the exclusive reason a predisposition can be wrongful or inappropriate:

> A favorable or unfavorable predisposition can also deserve to be characterized as "bias" or "prejudice" because, even though it springs from the facts adduced or the events occurring at trial, it is *so extreme as to display clear inability to render fair judgment.*

*Liteky*, 510 U.S. at 551 (emphasis added). Indeed, "the extrajudicial source doctrine is not a *per se* rule and, thus, is neither a necessary nor a sufficient condition for recusal. Instead, the source of bias is one factor a judge should consider in recusal." T. Citera, "Supreme Court Review: A Look at the Extrajudicial Source Doctrine under 28 U.S.C. 455, *Liteky v.*

---

[5]In *Liteky,* the Court had to consider whether the so-called "extrajudicial source doctrine" applied as well to § 455(a). Recasting it as an "extrajudicial factor" rather than a dogmatic doctrine, the Court applied it to § 455(a).

*United States*, 114 S. Ct. 1147 (1994)," 85 J. CRIM. L. & CRIMINOLOGY 1114 (1995) (footnotes and citations omitted).

In *United States v. Sciuto*, 531 F.2d 842 (7th Cir. 1976), the motion to disqualify was supported by two affidavits – one by Sciuto and one by his attorney. *Id.* at 844. The attorney's affidavit averred that in the telephone conversation the district court judge had stated as follows:

> . . . that he would not agree to a continuance because all that would be necessary would be to go in and make a record . . . that although Affiant, as an Attorney could give his client the benefit of the doubt and believe him, [the court] had talked with . . . the Probation Officer, and that he was convinced that the Defendant had been dishonest and deceitful with the Probation Officer and in all probability with Affiant. . . . also. . . . that his [the court's] mind had been made up that the Defendant had violated the terms of his probation.

*Id.* at 844-845. The government assumed that this motion was one made pursuant to §144, but Sciuto denied such in his reply. *Id.* at 845. Then at oral argument, Sciuto's attorney asked to rely on § 144 alternatively. The Seventh Circuit observed,

> We believe 28 U.S.C. § 144 would have been applicable if petitioner had invoked it, since the affidavit must be taken as true for purposes of the motion, *Berger v. United States*, 255 U.S. 22, 32-33, 35-36 (1921), and stated facts sufficient to show bias or prejudice if true.

*Sciuto*, 531 F.2d at 845. The Seventh Circuit did not decide whether Sciuto had properly invoked § 144 because "[t]he right to a tribunal free from bias or prejudice is based, not on § 144, but on the Due Process Clause." *Id.* Since the trial court's decision to revoke probation had been prejudged, that order was reversed and the case remanded to a new and

impartial judge. *Id.* at 846.

In *United States v. Zarowitz*, 326 F.Supp. 90 (C.D. CA 1971), the parties alleged bias and prejudice stemming from two facts: First, the court had issued two decisions, compelling testimony of recalcitrant but immunized witnesses in the Grand Jury investigation of the defendants, *id.* at 91; and, second, the judge had authorized wiretapping in the case and had necessarily received and reviewed periodic reports of the Title III interceptions and, in authorizing the interceptions in the first place, had reviewed, *ex parte*, evidentiary facts by way of affidavits submitted in support of the wiretap orders. *Id.* at 92. The district court judge concluded that, while the allegations did not establish an actual bias or prejudice, taken together, without evidentiary contradiction, they did establish the *appearance* of *possible* personal bias or prejudice. *Id.* As the judge put it:

> Finally, a circumspect and punctilious devotion to the ideal of justice in the abstract as it appears to the public at large, as well as the ideal of fairness as it is applied concretely in the case before us, affirms our determination to disqualify and recuse ourself. Like Caesar who parted from his wife Pompeia because she was not above suspicion, so here to avoid even the appearance of the possibility of personal bias or prejudice, wise discretion and sound judgment compel us to leave this case, however reluctant we are to thrust its burden upon another Judge of our Court or to cause any delay or inconvenience to the parties.

*Id.* at (footnote and citation omitted).

Finally, in *United States v. Zerillie*, 328 F.Supp. 706 (C.D. CA 1971), the parties' affidavit alleged three bases for disqualification:

1) a judgment of conviction for contempt rendered against

Mr. Polizzi in a recent case involving Polizzi's failure to obey a Grand Jury subpoena;

2) a prosecution of Mr. Giardano conducted by the judge some thirty years earlier when the judge was an Assistant United States Attorney; and

3) two decisions by the Judge that compelled testimony of recalcitrant but immunized witnesses in the Grand Jury investigation

*Id.* at 707. The judge flatly denied an actual bias or prejudice against any defendant in the case. *Id.*

> However, the allegations of the affidavits which the Court and Judge must accept as true, are, in the absence of any contradictory evidence which as we have noted is absolutely impermissible under 28 U.S.C. § 144, *legally* sufficient to show that there is perhaps the *appearance* of a *possibility* of personal bias or prejudice of the Judge against at least two of the Defendants, Messrs. Michael Santo Polizzi and Anthony Giardano.

*Id.* (emphasis in original); *accord Id.* at 708. The judge then recused himself from hearing the case. *Id.*

Similarly, in this case, Judge Gaitan's ultimate decision as to whether trial counsel rendered ineffective assistance of counsel has been prejudged. (Indeed every issue raised seems to have been pre-judged since the Court has found that Movant received "a fair trial.") Here, Movant's affidavit – filed contemporaneously with this motion – alleges that Judge Gaitan's decision is based, not on a disputed *ex parte* communication, but on a now public order prematurely finding that trial counsels' performance in this case satisfied *Strickland's* standards. This allegation taken, as it must be, as true for purposes of ruling on this motion,

shows a predisposition that can certainly be characterized as a bias and prejudice even though it may have resulted from his involvement in the underlying criminal case.

### C. The even broader standards of § 455(a)

In this case, in addition to the constitutional guarantee, 28 U.S.C. § 144, and 28 U.S.C. § 455(b), Movant also invokes 28 U.S.C. § 455, a statute which traces its antecedents to 1792. 13A Wright, Miller & Cooper, *Federal Practice and Procedure* (2nd Ed. 1984), § 3541 at 550. ("Federal Practice and Procedure".) See also, *Liteky*, *supra*, 510 U.S. at 543-48 where the Court traced the history of federal recusal statutes. Specifically, Movant relies on § 455(a) which, as amended in 1974, provides as follows:

> Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

The 1974 amendments to § 455 – particularly the amendment which became § 455(a) – worked what the Wright treatise describes as "a drastic change in the practice in the federal courts." Federal Practice and Procedure (2006 Supp.) § 3549 at p. 920. In *Liteky*, the Supreme Court described the 1974 revision as making "massive changes" in the law governing recusal. *Liteky*, 540 U.S. at 546. Prior to 1974, language in the predecessor to § 455(a) had been interpreted as imposing on a trial judge an affirmative duty to sit on all cases unless a compelling reason to recuse was presented. By enacting § 455(a), Congress explicitly intended to overrule the so-called "duty-to-sit" cases in favor of a less stringent standard that would, in turn, promote greater public confidence in the impartiality of the judiciary. *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988); Federal

Practice and Procedure, *supra*, *id*. at p. 962; see also, Comment, "Questioning the Impartiality of Judges: Disqualifying Federal District Court Judges Under 28 U.S.C. § 455(a)," 60 TEMPLE L.Q. 697, 701 n.30 (1987). The purpose of the 1974 re-working of § 455 was to "'broaden and clarify the grounds for judicial disqualification.'" *Liljeberg v. Health Services Acquisition Corp*., 486 U.S. 847, 849 (1988), in order "to promote public confidence in the integrity of the judicial process." *Liljeberg*. 486 U.S. at 860.

The standard to be applied to § 455(a) motions is an objective one. The inquiry is not whether a litigant honestly and truthfully believes that a judge lacks impartiality. Neither is the standard whether the judge is in fact impartial or even whether the judge in question honestly and truthfully so believes. *Hall v. Small Business Administration*, 695 F.2d 175, 178-79 (5th Cir.1983). Instead, the situation is viewed from the perspective of an objective observer. As summarized by the Supreme Court in *Liteky*,

> [W]hat matters is not the reality of bias or prejudice but its appearance. Quite simply and quite universally, recusal was required [pursuant to § 455(a)] whenever "impartiality might reasonably be questioned."

*Liteky*, 510 U.S. at 548. This approach serves the legislative purpose since the simple existence of reasonable questions regarding a judge's impartiality undermines public confidence in both the judiciary and the judicial process – including the outcome of trials such as this one – whether or not the judge's impartiality is truly compromised. As stated in *Liljeberg*:

> [P]eople who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity

> of judges. The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible.

*Liljeberg*, 486 U.S. at 864-65 (footnote omitted).

In *Apple v. Jewish Hosp. and Medical Center*, 829 F.2d 326 (2d Cir. 1987), the court ruled that "the substantive standard for recusal is whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned." *Id*. at 333; see also, *United States v. Pitera*, 5 F.3d 624, 626 (2d Cir. 1993); *United States v. Lovaglia*, 954 F.2d 811, 814-15 (2d Cir. 1992), *United States v. Pepper & Potter, Inc.*, 677 F.Supp. 123, 125-26 (E.D.N.Y. 1988). In *In re IBM Corp.*, 45 F.3d 641, 643 (2d Cir. 1995), the Court quoted with approval from *In re Drexel Burnham Lambert, Inc.*, supra, that, "the test to be applied is an objective one which assumes that a reasonable person knows and understands all the relevant facts." At a second point in its IBM opinion, the Second Circuit reiterated that the key to applying an objective standard is that the mythical objective observer must be "fully informed as to the circumstances . . . " that give rise to the recusal issue. 45 F.3d at 644. Moreover, the standard is broadest – that is most tending to favor recusal – when, as in this case, the challenge is brought under 455(a) as distinct from other statutes and/or sub-sections of 455(a). Liljeberg, 486 U.S. at 860 n.8 (Making reference to "the broader coverage of 455(a) . . . ."); *United States v. Sibia*, 624 F. 2d 864, 867 (9th Cir., 1980); *United States v. Wolfson;* 558 F.2d 59, 63 (2d Cir. 1977); *Lamborn v. Dittmer*, 726 F.Supp. 510 (S.D.N.Y. 1989).

A judge is required to maintain actual impartiality and, as important, the appearance

of impartiality. Disqualification may be required even when there is no actual bias or prejudice. *In re Kansas Public Employees Retirement System*, 85 F.3d 1353 (8th Cir. 1996). "[The] appearance of impartiality is virtually as important as the fact of impartiality." *United States v. Singer*, 575 F.Supp. 63, 67 (D. Minn. 1983). Accordingly,

> "[A] judge … ought to consider how his participation in a given case looks to the average person on the street. Use of the word 'might' in the statute was intended to indicate that disqualification should follow if the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality."

*United States v. Poludniak*, 657 F.2d 948, 954 (8th Cir. 1981), *quoting Potashnick v. Port City Construction Co.,* 609 F.2d 1101, 1111 (5th Cir.), *cert. denied*, 449 U.S. 820 (1980); *accord United States v. Honken,* 381 F.Supp.2d 936, 970 (N.D. IA 2005) (the question is whether an objective, disinterested observer fully informed of the underlying facts, would entertain significant doubt that justice would be done absent recusal).

Cases under § 455 are driven by their facts and circumstances. *Honken, supra.* This is not to say, however, that analogous cases are irrelevant to the equation. In *Alexander v. Primerica Holdings,* 10 F.3d 155 (3rd Cir. 1993), for example, the petitioners claimed that the trial judge, Judge Lechner, had prejudged their case because of "his pique at having been reversed" by the court of appeals on numerous occasions during the litigation of a hotly-contested class action lawsuit and because of his alleged animus towards petitioners' counsel. *Id.* at 158. Petitioners sought to have Judge Lechner disqualified, as Movant does here, pursuant to § 455(a). *Id.* at 161. In granting the motion the Third Circuit stated:

> For purposes of § 455(a) disqualification, it does not matter whether the district court judge actually harbors any bias against a party or the party's counsel. This is so because § 455(a) concerns not only fairness to individual litigants, but, equally important, it concerns *the public's confidence in the judiciary*, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted.

*Id*. at 162 (emphasis added) (citation and quotation omitted). After independently reviewing the record, the Third Circuit felt impelled to conclude that the outcome of this case "would be shrouded [in] suspicion" if Judge Lechner were to continue to preside as trier of the fact. *Id*. at 163.

> This is not to say that the record discloses actual bias on Judge Lechner's part. Quite to the contrary, we have made, and make, no such determination. What we do decide, however, is that *the record suffices to establish that Judge Lechner's impartiality may reasonably be questioned*.

*Id*. (emphasis added).

**D. Applying the law to the facts**

In this case, had Judge Gaitan simply denied Movant's requests for additional investigative and expert assistance, Movant would have no good-faith basis for a challenge to the Court's impartiality. But this is not a case where Movant is simply a disgruntled litigant. *See, e.g., Little Rock School District v. Pulaski County Special School,* 839 F.2d 1296, 1302 (8th Cir 1988) ("Not surprisingly, the parties have generally discovered grounds for disqualification at approximately the same time that the district court ruled for their adversaries on the merits."). The basis for the motion is that, in denying the requests for funding, Judge Gaitan revealed that he had pre-judged the merits of the case. has not heard

any evidence regarding trial counsels' strategies or effectiveness. One would be hard-pressed indeed to posit a clearer example of a judge displaying, at the very least, the appearance of a lack of impartiality. Nor is there any factual dispute as to the Court's position, since the lack of impartiality is established in an order issued by th Court itself. Those observations plainly establishes the appearance of bias. Judge Gaitan's impartiality may be reasonably questioned, and therefore, he must recuse himself from further participation in this case.

WHEREFORE, Movant seeks an order disqualifying and recusing Hon. Fernando J. Gaitan, Jr., U.S.D.J., from any further participation in this matter, and for such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ David A. Ruhnke
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
(973)744-1000
(973)746-1490
davidruhnke@ruhnkeandbarrett.com
Co-counsel to Movant, Keith Nelson

/s/ Gary E. Brotherton
Legal Writes, LLC
2101 Chapel Plaza Court, Suite 13
Columbia, MO 65203
(573)875-1571
(573)875-1572 (fax)
gebrotherton@legalwritesllc.com
Co-counsel to Movant, Keith Nelson

Dated: Columbia, Missouri
Montclair, New Jersey
August 21, 2006

CERTIFICATE OF SERVICE

This will certify that, on today's date, this motion was served upon the United States by filing via ECF.

/s/ David A. Ruhnke
DAVID A. RUHNKE

Dated: Columbia, Missouri
Montclair, New Jersey
August 21, 2006