IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| KEITH D. NELSON, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | Case No. 04-8005-CV-W-FJG-P |
| v. | ) | Crim. No. 99-00303-01-CR-W-FJG |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

GOVERNMENT'S RESPONSE IN OPPOSITION TO NELSON'S MOTION TO DISQUALIFY JUDGE GAITAN

The respondent, the United States of America, appears by and through Bradley J. Schlozman, United States Attorney, and Matt J. Whitworth, First Assistant United States Attorney, and provides the following response in opposition to Keith D. Nelson's motion to disqualify and recuse the Honorable Fernando J. Gaitan, Jr., United States District Judge, from further participation in this case:

## I. Introduction

Nelson has requested an order under 28 U.S.C. §§ 144 and 455, and the Due Process Clause of the Fifth Amendment, disqualifying and recusing this Court from further participation in this case. Specifically, Nelson contends that this Court's order of February 28, 2006, denying his requests for funding of expert and investigative assistance constitutes a basis for his disqualification and recusal.

However, this Court's order of February 28, 2006, does not constitute a valid basis for this Court to recuse and disqualify itself. Rather, the Court's order was an entirely

appropriate and fiscally responsible decision refusing to authorize the expenditure of funds for needless additional investigation and testimony. No one is more qualified to reach a determination of whether Nelson received constitutionally effective representation at trial and on appeal than this Court. As the trial judge, this Court was able to observe the performance of Patrick Berrigan and Susan Hunt during a lengthy trial. In addition, this Court also was in the position to observe the pretrial performance of Nelson's trial counsel during the two years leading up to Nelson's jury trial. Further, even assuming, solely for the sake of argument, that the Court's order of February 28 demonstrated that this Court had already determined that Nelson had received effective representation and a fair trial, there is nothing inappropriate with the Court arriving at that preliminary decision based upon the present record, including Nelson's motion under 28 U.S.C. § 2255 that he filed on November 6, 2005. The Court has the absolute right to reach a decision in a § 2255 proceeding solely upon the record and the pleadings and without the benefit of additional testimony. Consequently, Nelson's motion to disqualify this Court is without merit and should be denied.

## II. Court's Order of February 28, 2006

In an apparent effort to establish his alleged ineffective assistance of trial counsel claim, Nelson's present counsel have previously requested this Court to approve funding for expert, investigative, and other assistance pursuant to 21 U.S.C. § 848(q)(9). Nelson's counsel have requested the following expenditures for expert and investigative assistance:

1. On October 30, 2005, Nelson requested funding for additional hours of services from a mitigation specialist;

2. On November 23, 2005, Nelson requested funding for the services of a clinical forensic psychologist; and

3. On December 5, 2005, Nelson requested funding for an attorney to evaluate the representation of Nelson's trial counsel.[1]

On February 28, 2006, this Court issued an order denying all three funding requests. The orders stated as follows:

> The above-referenced motions [for investigative and expert assistance] have been denied because the court does not agree with the assertions therein. Appellate counsel, with the benefit of hindsight, is attempting to vilify trial counsel's judgment on trial strategy. In reality, trial counsel's conduct and strategy far exceed those standards of *Strickland v. Washington*, 466 U.S. 669 (1984). Further, the resources requested by counsel in these motions are not likely to lead to a different result. Mr. Nelson received a fair trial. Appellate counsel is reminded that the excessive expenditures of judicial resources have their limits.

Nelson's present counsel contend in their motion at p. 3 as follows:

> A clearer case of judicial bias can hardly be imagined. So far as Judge Gaitan is concerned, the issue of *Strickland* effectiveness is a foregone conclusion, movant received "a fair trial," and is therefore entitled to no relief. Moreover, the order gratuitously denigrates the efforts of present counsel, characterizing counsel's decision to raise the issue of ineffective assistance as an exercise guided by the "benefit of hindsight" and, worse, motivated by a desire to

---

[1] Each motion was filed under seal. Although present counsel indicate that they have filed motions to unseal the above motions in question, counsel for the United States has not yet received copies of these motions and the motions do not appear to be accessible on the District Court's Electronic Case Filing system.

> "vilify" trial counsel. The tone of the order reflects a level of hostility to the efforts of present counsel on movant's behalf, and to the merits of this litigation, that is the antithesis of impartiality. As a matter of law, Judge Gaitan must recuse himself from further involvement in this case.

Contrary to Nelson's assertions, no one is more qualified than this Court to render judgment on whether Nelson received constitutionally effective assistance of counsel at trial. This Court heard the evidence and observed the performance of trial counsel. In addition, this Court has vast experience in presiding over criminal trials and, in particular, capital prosecutions. This Court simply denied Nelson's motions for needless funding of expert witnesses. The proffered expert testimony is totally unnecessary to enable this Court to reach a decision on the merits of the claims contained in Nelson's § 2255 motion. There is no need to try this case a second time, which is apparently the desired objective of Nelson's attorneys. Further, no personal bias or prejudice has been demonstrated by Nelson. This Court presided over Nelson's jury trial and observed the outstanding representation rendered to Nelson by his trial counsel, Patrick Berrigan and Susan Hunt. Merely restating the obvious does not make this Court biased or prejudiced.

Nelson alleges that this Court has, by its comments, "prejudged" his claim of ineffective assistance. It is true the Court noted in its order of February 28 that it believed Nelson had received a fair trial. However, the simple fact that this Court now believes Nelson received a fair trial does not by any stretch of the imagination constitute proof that the Court is "biased" or "prejudiced" against Nelson. Nelson remains free to attempt to convince this Court that its preliminary view of trial counsel's competency is inaccurate.

Nelson, however, will have to do so without government funds for a mitigation specialist, a clinical forensic psychologist or an attorney/expert witness.

Nelson is understandably disappointed by the Court's denial of his request for expert witness funding. It is, however, wholly unnecessary for this Court to hear additional expert testimony in order to reach a determination of Nelson's claims on the merits. Indeed, the proffered expert testimony would essentially add nothing to this Court's ability to ultimately decide the issue of whether Nelson received constitutionally effective representation.

Contrary to Nelson's assertions, the Court's order of February 28 demonstrates an exercise of fiscal responsibility. For example, it is completely pointless and unnecessary for this Court to hear testimony from a criminal defense attorney regarding what additional steps trial counsel could have taken in Nelson's defense when this Court has had vast experience in criminal law and capital litigation.

Similarly, calling a mitigation specialist to inform the Court what additional mitigation evidence could have been presented in addition to the vast amount of mitigation evidence that was actually presented at trial, is unnecessary and would add nothing to this Court's ability to reach a decision on the merits. Present counsel already have described in their pleadings what additional mitigation evidence might have affected the jury's verdict.

The same holds true for the proffered testimony of the forensic psychologist. It is unnecessary for this Court to approve the needless expenditure of funds for the employment of Nelson's proffered expert witnesses in order to reach a determination of whether this

Court would have arrived at a different decision on whether Nelson's trial counsel provided constitutionally effective representation and used sound trial strategy. The proffered experts, then, would have added nothing of value to the record in this case.

Finally, realizing the Court is likely not receptive to the claims set forth in his § 2255 filing, and certainly not receptive to his desire to put on additional expert testimony, Nelson has chosen to attack this Court's integrity and ability to render a fair and reasoned decision on the merits of his claims. It would appear that Nelson is simply engaging in the prohibited practice of forum shopping. The United States suggests that this Court should examine the performance of trial and appellate counsel, the defense evidence that was actually presented by counsel, the performance of counsel on appeal, the claims of present counsel as to what additional evidence they suggest should have been presented and then reach a decision on the merits of Nelson's § 2255 claims. Upon completion of this review Nelson's motion should be denied.

## III. <u>Legal Authority</u>

As Nelson has pointed out, 28 U.S.C. § 455 provides for disqualification of a justice, judge, or magistrate judge, and states in pertinent part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:

> (1) where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . .

28 U.S.C. § 455(a) and (b)(1).

"The goal of Section 455(a) is to avoid even the appearance of partiality." *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995). Thus, the Tenth Circuit has read the statute to impose on the trial judge "'a continuing duty to ask himself what a reasonable person, knowing all the relevant facts, would think about his impartiality.'" *United States v. Greenspan*, 26 F.3d 1001, 1005 (10th Cir. 1994) (quoting *United States v. Hines*, 696 F.2d 722, 728 (10th Cir. 1982)). On the other hand, "'the statute must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice.'" *Nichols*, 71 F.3d at 351 (quoting *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993), with internal citations and quotations omitted). "Neither is the statute intended to bestow veto power over judges or to be used as a judge shopping device." *Id*. This is so, because "a judge has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse himself when the law and facts require." *Id*.; *Greenspan*, 26 F.3d at 1005. Thus, decisions of the Eighth Circuit "reveal a reluctance to require a judge to recuse himself or herself *sua sponte*." *United States v. Sypolt*, 346 F.3d 838, 839 (8th Cir. 2003) ("Despite the sweeping language of 28 U.S.C. § 455(a), which calls for recusal whenever a judge's impartiality might be questioned, the statute does not extend literally to any kind of doubtful behavior.")

Whether recusal is required is determined by an objective test that considers what a reasonable person might believe, not a subjective test considering what the judge in question felt about his or her ability to rule without bias under the circumstances. *United States v. Tucker*, 78 F.3d 1313, 1325 (8th Cir. 1996) ("Section 455 (a) 'was designed to promote public confidence in the integrity of the judicial process by replacing the subjective "in his opinion" standard with an objective task.'") (quoting *Liljeberg v. Health Services Acquisition*, 486 U.S. 847, 858, n.7, (1989); *Nichols*, 71 F.3d at 350 (§ 455 "was broadened in 1974 by replacing the subjective standard with an objective task, "pursuant to which" 'what matters is not the reality of the bias or prejudice, but its appearance'") (quoting *Litekey v. United States*, 510 U.S. 540 (1994)).

Thus, the Eighth Circuit has formulated the test to be whether "a reasonable person who knew the circumstances would question the judge's impartiality, even though no actual bias or prejudice has been shown." *Tucker*, 78 F.3d at 1324 (quoting *Gray v. University of Arkansas*, 883 F.2d 1394, 1398 (8th Cir. 1989)). Nevertheless, the Eighth Circuit has pointed out that, "where a judge's opinions are based on 'facts introduced or events occurring in the course of the current proceedings,' those opinions warrant recusal under Section 455(a) only if they 'display a deep-seeded favoritism or antagonism that would make fair judgment impossible.'" *Sypolt*, 346 F.3d at 839 (quoting *Litekey v. United States*, 510 U.S. 540, 555 (1994)).

Because a judge is presumed to be impartial, a party seeking recusal bears the substantial burden of proving otherwise. *United States v. Martinez*, 446 F.3d 878, 883 (8th Cir. 2006). Clearly, Nelson has failed to shoulder that burden.

In this case, this Court's preliminary conclusion that Nelson received the effective assistance of counsel – a conclusion that was based solely upon the record and this Court's review of Nelson's § 2255 motion – did not illustrate anything even remotely approaching "deep-seeded favoritism or antagonism that would make fair judgment impossible." *Sypolt*, *id.*

The Tenth Circuit has identified a "non-exhaustive list of various matters not ordinarily sufficient to require a Section 455(a) recusal," consisting of the following:

> (1) rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters;
>
> (2) the mere fact that a judge has previously expressed an opinion on a point of law or has expressed a dedication to upholding the law or determination to impose severe punishment within the limits of the law upon those found guilty of a particular offense;
>
> (3) prior rulings in the proceeding, or another proceeding, solely because they were adverse;
>
> (4) mere familiarity with the defendant(s), or the type of charge, or kind of defense presented;
>
> (5) baseless personal attacks on or suits against the judge by a party;
>
> (6) reporters' personal opinions or characterizations appearing in the media, media notoriety, and reports in the media purporting to be factual, such as quotes attributed to the judge or others, but which are in fact false or materially inaccurate or misleading; and

(7) threats or other attempts to intimidate the judge.

*Nichols*, 71 F.3d at 351 (quoting *Cooley*, 1 F.3d at 993-94).

Recusal is not a tool that parties and judges can arbitrarily invoke to rid themselves of unpleasant or difficult cases. Rather, recusal is mandated only in certain clearly delineated instances. Indeed, judges have an obligation not to recuse themselves in certain circumstances. *See Laird v. Tatum*, 409 U.S. 824, 837 (1972). This obligation is to prevent parties from using recusal as an excuse to judge or forum shop, as well as to preserve the integrity of the judicial process. *See Martin-Trigona v. Lavien*, 573 F.Supp. 1237, 1242 (D. Conn. 1983).

Here, this Court's adverse ruling concerning his request for funding to hire expert witnesses forms the sole basis for Nelson's motion to disqualify this Court. However, adverse rulings against a litigant are not in themselves grounds for recusal. *Glass v. Pfeffer*, 849 F.2d 1261 (10th Cir. 1988). S*ee also Dossett v. First State Bank*, 399 F.3d 940 (8th Cir. 2005). That is especially true where, as here, the adverse rulings are based solely upon the record and pleadings before the court.

As previously emphasized, the Court's ruling obviously was a tentative one that Nelson is not precluded from challenging with further evidence or legal arguments. But he is not entitled to this Court's self-disqualification merely because of this Court's adverse rulings regarding Nelson's request for government funds to hire additional experts.

## IV. Conclusion

Nelson has failed to demonstrate that this Court has expressed any personal bias or prejudice against him, or that this supposed bias has an extrajudicial source.. This Court presided over Nelson's lengthy jury trial and observed the excellent representation given to Nelson at trial by Patrick Berrigan and Susan Hunt. No one is in a better position to reach a determination of whether Nelson received constitutionally effective representation than is this Court. This Court has substantial experience presiding over capital prosecutions and can easily reach a determination of whether trial counsel effectively represented Nelson based upon this Court's observations and substantial experience.

This Court has simply denied Nelson's motions for the needless funding of expert witnesses. The proffered expert testimony is unnecessary for this Court to reach a determination on the merits. There is no need to try this case a second time, which is apparently Nelson's desired objective.

Nelson's allegation that this Court has prejudged his claim is demonstrated by the language in the February 28 order and is consequently biased and prejudiced against him rings hollow. The simple fact that this Court currently believes Nelson received a fair trial does not by any stretch of the imagination constitute proof that the Court is biased or prejudiced against Nelson.

Further, this Court has the right to reach a determination on the merits of Nelson's § 2255 allegations based solely upon the pleadings filed by Nelson in his initial § 2255 filing.

As mentioned previously in this response, the proffered expert testimony from the forensic psychologist, criminal defense attorney, and mitigation specialist would add nothing to the ability of this Court to reach a decision on the merits. What is important to this Court's decision is whether the defense that was presented by Patrick Berrigan and Susan Hunt was constitutionally effective representation. Clearly, the answer to that question is in the affirmative. This Court's denial of the request for the expenditure of funds for additional expert witnesses demonstrates this Court's exercise of fiscal responsibility. It does not constitute a legitimate basis for disqualification of this Court.

The United States suggests that the possibility that inappropriate forum shopping must be considered. The United States respectfully requests this Court to enter an order denying Nelson's motion to disqualify or recuse this Court from additional involvement in this case.

Respectfully submitted,

BRADLEY J. SCHLOZMAN
United States Attorney

By *`/s/` Matt J. Whitworth*

MATT J. WHITWORTH
First Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 East 9th Street, 5th Floor
Kansas City, Missouri 64106
Telephone: (816) 426-3122

*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on September 18, 2006, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

*/s/ Matt J. Whitworth*

Matt J. Whitworth
First Assistant United States Attorney