IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| KEITH D. NELSON, | : | |
| Movant, | : | |
| vs. | : | 4:04-CV-8005(FJG) |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

REPLY BY MOVANT TO GOVERNMENT'S OPPOSITION TO THE
MOTION TO DISQUALIFY AND RECUSE JUDGE GAITAN

COMES NOW Keith D. Nelson, by his attorneys David A. Ruhnke and Gary E. Brotherton, and files this reply to the government's suggestions in opposition to the pending motion to disqualify Hon. Fernando J. Gatian, Jr., U.S.D.J., from further participation in this matter.

## LEGAL ARGUMENT

BECAUSE THE COURT HAS ANNOUNCED ITS PREMATURE DETERMINATION OF THE MERITS OF THIS CASE, REASONABLE QUESTIONS ARE PRESENTED REGARDING THE COURT'S IMPARTIALITY, AND RECUSAL IS REQUIRED.

**A. The order entered by the Court on February 28, 2006 may not be accurately characterized as either "preliminary" or "tentative."**

In answering the motion, the government gamely suggests that the order entered on February 28 can be described as expressing a view that is "preliminary" or "tentative." (US opposition at p. 2, 10.) The unequivocal language of the order, however, lends no support to that suggestion. In fact, the order reflects anything but a preliminary or tentative expression of opinion. In pertinent part, the order states the following:

> The above-referenced motions [for investigative and expert assistance] have been denied because the Court does not agree with the assertions therein. Appellate[1] counsel, with the benefit of hindsight, is attempting to vilify trial counsel's judgment on trial strategy. In reality, trial counsel's conduct and strategy far exceed those standards of *Strickland v. Washington,* 466 U.S. 669 (1984). Further, the resources requested by counsel in these motions are not likely to lead to a different result. Mr. Nelson received a fair trial. Appellate counsel is reminded that excessive expenditures of judicial resources have their limits.

The simple truth is there is nothing even remotely "tentative" or "preliminary" about the Court's clearly expressed views that "trial counsel's conduct and strategy far exceeded

---

[1]As noted in Movant's original papers, Judge Gaitan's reference to "appellate counsel" is to Movant's present counsel, not to counsel who represented Movant on his direct appeal.

[*Strickland*'s] standards" or that Movant received "a fair trial." Moreover, the Court's observation that the resources requested by counsel in the motions for expert and investigative assistance "are not likely to lead to a different result" bespeaks a closed judicial mind. What the Court is saying, in essence, is that there is no level of undiscovered evidence in mitigation that could have any possible impact on the Court's view of this case. That extreme view encompasses undiscovered evidence that Movant was sexually abused as a child, suffered severe beatings, is brain damaged, is schizophrenic or otherwise seriously mentally ill, suffers from Fetal Alcohol Effect, and the entire range of potentially undiscovered evidence in mitigation.

All Movant's present counsel seeks is a fair opportunity to present Movant's claims to a tribunal that is open to the possibility that he did not receive a fair opportunity to make a complete, and constitutionally adequate, case for life. The tone of the Court's order suggests a certain degree of respect and even affection for local trial counsel. After all, trial counsel did the Court-as-institution a great service by taking on a difficult case, and now find their conduct scrutinized by outside counsel, who, in the Court's view, are acting "with the benefit of hindsight" in order to "vilify" local counsel. The Court's order may be read as an effort to insulate and protect local counsel from scrutiny. Movant's counsel respectfully remind the Court that, as made plain by the moving papers previously filed in this action, Movant's trial counsel are themselves prepared to testify that they were not ready to try this case and that the mitigation case and related investigation was far from completion.

**B. This case cannot be resolved without a hearing.**

The level of certainty expressed by the Court is especially troubling since the Court – while it may have witnessed the performance of trial counsel in the sense of what was presented in court – has no information about what counsel failed to do, *i.e.*, whether counsel considered themselves ready to try the case when it was tried (the evidence will be they did not), and what could have been undertaken and presented by counsel who met the *Strickland* and American Bar Association standards of performance in a capital case. The story of this case is not what was presented in court; the story of this case is what was *not* done to prepare this case, and of reasonable steps and reasonable avenues of investigation that should have been pursued but which were not. By way of simple illustration, despite long having funds approved for mental-health examinations, Movant's trial counsel never conducted a comprehensive or complete mental-health examination. Indeed, none has been conducted to date.

In his reply to the government's opposition to the 2255 motion, Movant set out the names of witnesses and areas of evidence he expects to present at an evidentiary hearing. That outline, as reiterated here, makes the point that it is what was not done that informs this litigation:

1. Patrick Berrigan, Esquire: Mr. Berrigan served as Movant's trial counsel and would be expected to provide testimony on the broad range of issues set out in the 2255 motion. He did not enter the case until February 2001. Of particular relevance, Mr. Berrigan is expected to testify that, as of the fall of 2001, Movant's case was not ready to go to trial and that Mr. Berrigan should have moved to adjourn the trial, but did not do so. Mr. Berrigan is also expected to testify that Movant's decision not to cooperate with the

government's mental health experts was on the advice of his counsel and not an independent decision reached by Movant. Mr. Berrigan would also be expected to testify that despite having funding for mental-health experts, no mental-health evaluation of Movant was undertaken until October 2001, shortly before the commencement of the trial.

2. Susan M. Hunt, Esquire: Ms. Hunt served as Movant's trial counsel and would be expected to provide testimony on the broad range of issues set out in the 2255 motion. She served as Movant's counsel from early in the case. In addition to confirming certain statements by Mr. Berrigan, Ms. Hunt is expected to testify about the efforts she made to gather evidence in mitigation and to supervise the activities of mitigation specialist Tena Francis. By the time the case came to trial in the fall of 2001, it was Ms. Hunt's belief that an adjournment should have been requested. She is expected to confirm the fact that Movant's refusal to be evaluated by government mental-health experts was on the advice of counsel. Ms. Hunt also served as one of Movant's appellate counsel and will provide testimony regarding appellate representation and the process through which issues were selected for appellate briefing.

3. Jennifer Herndon, Esquire: Ms. Herndon served as one of two of Movant's appellate counsel. She is expected to testify that, because of time constraints and other pressures, she was unable to conduct an adequate review of the record of Movant's case and, as a result, did not file a complete and adequate appellate brief.

4. Daniel V. Foster, Psy.D.: Dr. Foster was a psychologist who evaluated Movant during the week-end of October 5 and 6, 2001. Dr. Foster would describe his evaluation as, in essence, only a beginning and as "too little, too late." Dr. Foster never completed his evaluation and was not asked to do so. In his report, he described his time spent with Movant as "primarily spent in trust building and history taking."

5. Tena Francis: Ms. Francis served as the mitigation specialist in Movant's case. The application to have her serve in that capacity was filed on December 12, 2000. Ms. Francis would be expected to testify regarding the incomplete status of the mitigation investigation when she entered the case and the difficulties she encountered in conducting her investigation. She is expected to testify that in June 2001 she advised trial counsel, in a detailed memorandum and telephone conference, of many areas of the ongoing mitigation investigation that needed to be completed prior to trial. Ms. Francis

would be expected to testify that she had very little involvement in the case following the June memo and conference and. to the best of her knowledge and ability, very few of the necessary investigative steps were accomplished.

6. Donna Haddid: Ms. Haddid was an investigator who worked for Ms. Francis. She would be expected to testify about the investigative steps that she took in attempting to prepare a case-in-mitigation. As importantly, Ms. Haddid would be expected to testify regarding investigative steps that were not taken.

7. Jill Miller, MSSW: Ms. Miller is a highly-experienced and respected mitigation investigator. She was appointed by this Court, on the application of Movant's counsel, to assess the status of the mitigation investigation at the time Movant's case came to trial and to develop a plan for completing an adequate mitigation investigation so that this Court would be in a position to make an accurate judgment regarding the failure of trial counsel to conduct an adequate investigation and to present an adequate penalty-phase. When additional funding was sought from this Court to have Ms. Miller continue her work, the application was denied.

8. Michael M. Gelbort, Ph.D.: In early 2001, Movant's trial counsel secured funds to conduct a neuropsychological examination of Movant. That examination, however, was never done. This Court subsequently approved a motion brought by Movant's present counsel to conduct such an examination. Dr. Gelbort thereafter examined Movant for evidence of organic brain dysfunction and reached the conclusion that there was such evidence.

This is not a matter, as the government suggests, of attempting "to try this case a second time . . . ." (US reply at p. 11.) Instead, Movant's counsel seek a fair opportunity to place before this Court matters to which the Court was not privy and of steps that reasonably competent counsel would have taken in attempting to save Movant's life. It is not enough that counsel appeared to be sincere and dedicated to their client's cause. The issue is whether, sincerity and dedication aside, counsel performed their function consistent with requisite legal standards. If the Supreme Court has made anything abundantly clear in this area it is that "doing something" is not the equivalent of meeting constitutional standards

of performance. *See, e.g.*, *Rompilla v. Beard,* 125 S.Ct. 2456 (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Williams v. Taylor*, 529 U.S. 362 (2000).

Nothing about the Court's conclusion that Movant's trial counsel's "conduct and strategy far exceed those standards of *Strickland v. Washington,* 466 U.S. 669 (1984)" reflects anything that is tentative or preliminary.

**C. This motion is not prompted by a simple decision to deny expert and investigative funding.**

The government suggests, without any basis, that this motion was prompted by "this Court's order of February 28, 2006, denying his requests for funding and expert investigative assistance . . . ." (US reply at p.1.) The argument implies that the true basis for the motion is the substance of the court's ruling, *i.e.* the decision to deny finding. Having erected that strawman, the government continues by arguing that "the Court's order was an entirely appropriate and fiscally responsible decision refusing to authorize the expenditure of funds for needless investigation and testimony." (US reply at pp. 1,2.) While it is literally true that it is the order of February 28 which prompted this motion, it was not the merits of the order but the Court's expressed reasons for the denial that give the motion merit. With slight exaggeration, that order could be paraphrased as the Court stating, "The Court is denying the application because the Court has its mind made up and nothing counsel could present could possibly make a difference."

By denying the request for funding, the Court severely hampered the ability of Movant's counsel to establish the prejudice prong of *Strickland*. However, in and of itself,

such an order would simply have become grist for later potential appellate review. The fact of an adverse ruling of this nature would never have prompted a recusal motion without more. But, in the case, "more" is present in abundance. As set forth above, the Court denied the motion because the Court has determined that trial counsel were effective and that nothing by way of further investigation could possibly alter that conclusion or the Court's companion (and broader) conclusion that, in an overall sense, Movant received a fair trial. The Court denied the motion because the Court has already decided to deny the motion for 2255 relief. It was this aspect of the order that prompted the motion for recusal.

### D. There is nothing speculative or unsubstantiated about the basis of this motion.

The government's discussion of controlling legal standards has little applicability to this case. This is not a case of "the merest unsubstantiated suggestion of personal bias or prejudice" or of "doubtful behavior," as discussed in the cases cited by the government at p. 7 of its reply. In this case the basis of the recusal motion is an order authored and entered by the judge whose impartiality is questioned.

With regard to the government's adaption from *Nichols v. Alley*, 71 F.3d 347, 351 (10th cir. 1995) of a "non-exhaustive list of matters not ordinarily sufficient to require a Section 455(a) recusal," it is noteworthy that none of the seven factors listed have any bearing on this case. (*See* US reply at pp. 9,10.) No one has threatened or tried to intimidate Judge Gaitan. The motion is premised upon a published court order as distinct from "rumor, speculation, beliefs, conclusions, innuendo . . . ." (US reply at p. 9.) This is not a situation

where a trial judge has expressed an opinion on a rule of law or a determination to punish severely those found guilty of a particular offense. The motion is not brought on the basis of adverse rulings " because they were adverse." There have been no personal attacks or lawsuits against the judge by a party. The motion is not premised on inaccurate or misleading media reports. Nor is this a case where there has been a ruling "based solely upon the record and pleadings before the court." (US reply at p. 10.) There is much evidence the Court has not heard. It is for that reason that 2255 motions are the favored vehicle for challenges to the conduct of counsel. *See, e.g., Massaro v. United States*, 538 U.S. 500 (2003).

**E. Forum-shopping**

Without any evidence to support such a charge, the government concludes its suggestions in opposition by stating, "The United States suggests that the possibility that inappropriate forum shopping must be considered." As officers of the court, Movant's counsel deny that this motion is motivated by anything beyond a professional obligation to pursue, on Movant's behalf, a fair trial in a fair tribunal before a judge whose impartiality is not open to reasonable questions.

CONCLUSION

WHEREFORE, for the reasons set forth above and in Movant's original motion on this issue, Movant seeks an order disqualifying and recusing Hon. Fernando J. Gaitan, Jr., U.S.D.J., from any further participation in this matter, and for such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ David A. Ruhnke
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
(973)744-1000
(973)746-1490
davidruhnke@ruhnkeandbarrett.com
Co-counsel to Movant, Keith Nelson

/s/ Gary E. Brotherton
Legal Writes, LLC
2101 Chapel Plaza Court, Suite 13
Columbia, MO 65203
(573)875-1571
(573)875-1572 (fax)
gebrotherton@legalwritesllc.com
Co-counsel to Movant, Keith Nelson

Dated: Columbia, Missouri
Montclair, New Jersey
October 24, 2006

## CERTIFICATE OF SERVICE

This will certify that, on today's date, this motion was served upon the United States by filing via ECF.

/s/ David A. Ruhnke
DAVID A. RUHNKE

Dated: Columbia, Missouri
Montclair, New Jersey
October 24, 2006