**AFFIDAVIT OF NATALIE NOVICK BROWN, Ph.D.**

I, Natalie Novick Brown, declare under penalty of perjury as follows:

1. I practice as a psychologist and am licensed in Washington State and Florida. I also am a Certified Evaluator for the Department of Corrections and Division of Developmental Disabilities in Washington State. I completed a year of postdoctoral training in the University of Washington's Fetal Alcohol and Drug Unit in 1995 and currently hold a faculty position at the University of Washington as Clinical Assistant Professor, Department of Psychiatry and Behavioral Medicine, where I consult with research staff in the Fetal Alcohol and Drug Unit. In this position, I am currently participating in a grant project where I screen individuals for fetal alcohol impairment who are referred by the Drug and Mental Health Courts in King County (Seattle), Washington. I also evaluate, diagnose, and treat individuals referred by the Division of Developmental Disabilities who are diagnosed with Fetal Alcohol Spectrum Disorders (FASD), which includes Fetal Alcohol Syndrome (FAS) and Fetal Alcohol Effects (FAE). In 1994/95, I received post-doctoral training in FASD at the University of Washington's Fetal Alcohol and Drug Unit in Seattle, Washington. Since then, I have published articles and lectured on the behavioral and developmental effects of prenatal alcohol exposure and have evaluated many individuals suffering from FASD. I also have treated a number of youth with FASD in an effort to prevent adverse life outcomes ("secondary disabilities"). In the course of this work, I have attended diagnostic trainings and reviewed many medical evaluations involving FASD diagnoses, and I am quite familiar with the diagnostic criteria and process of evaluation. Thus, I have developed expertise in FAS/FAE through a combination of study, practice, and research.

2. I have been retained by Keith Nelson's court-appointed counsel David A. Ruhnke to complete an evaluation and provide an opinion concerning whether or not Keith Nelson suffers from a Fetal Alcohol Spectrum Disorder (FASD) due to prenatal alcohol exposure. The current affidavit summarizes my preliminary review of records provided to me by Mr. Nelson's counsel.

3. FASD is an umbrella term that includes Fetal Alcohol Syndrome, Fetal Alcohol Effects, Alcohol-related Neurodevelopmental Disorder, and Alcohol-related Birth Defects. FASD is a permanent birth defect caused by maternal consumption of alcohol during pregnancy. Alcohol is a teratogen that inhibits and disrupts fetal development by causing structural and functional damage to developing organs and systems, including the brain and central nervous system. The damage starts at the cellular level, where ethanol may induce excessive cell death and disrupt cell responses to molecules that regulate neuron proliferation, migration, and differentiation. Because alcohol causes widespread damage throughout the fetus, there is a broad array of physical anomalies and neurobehavioral defects. Hence, the condition is often referred to as a "syndrome." The most serious and pervasive damage occurs in the central nervous system (CNS). Brain imaging studies over the last decade have shown that prenatal alcohol exposure causes significant malformation in structures within the brain (e.g., corpus collosum, basal ganglia, cerebellum) that are necessary for normal development and functioning (e.g., Bookstein et al., 2001, 2002a, 2002b).

4. Research has shown that prenatal alcohol exposure causes structural brain damage that affects functioning in the frontal lobe of the brain, particularly the prefrontal cortex, an area that is especially sensitive to the teratogenic effects of ethanol (e.g., Bookstein et al., 2002). Brain imaging research has found that prenatal alcohol exposure seems to target the corpus collosum in particular and is associated with a pattern of deficits in executive functioning in individuals diagnosed with FASD (Bookstein et al., 2001). Executive functions, which control impulses and channel them into pro-social rather than antisocial behavior, involve cognitive skills such as perception, social awareness, organization, planning, internal ordering, working memory, self-monitoring, inhibition, motor control, regulation of emotion, and motivation. Appropriate socialization depends on intact basic cognitive functioning (Connor et al., 2000). When executive functions are compromised by prenatal alcohol exposure or other sources of brain damage, an individual will:

- have difficulty perceiving, prioritizing, and storing information,
- have difficulty processing and retrieving that information,
- be unable to generalize and apply consequences from past actions to potential future actions,
- lack motivation and initiative,
- need external motivators such as frequent cues or guidance from others,
- be unable to perceive the effect of his/her actions on others or the social inappropriateness of those actions,
- display exaggerated emotions,
- be unable to control behaviors that stem from emotion-evoked urges, and, consequently, and
- engage in a wide range of socially (and often legally) inappropriate behaviors.

5. As noted in my previous affidavit, FASD evaluation and diagnosis involve a three-step process. The first step is analysis of original source documents (i.e., birth and early medical records, early school records, childhood photographs) and results of any neurological and/or neuropsychological testing on the subject that document his physical size and growth (Criterion 1 for an FASD diagnosis), facial characteristics (Criterion 2), and neuro-behavioral functioning (Criterion 3). Based on the initial review of original source documents sent to me by Mr. Ruhnke as well as an interview with birth mother Nancy Nelson, I believe there is a substantial possibility that Keith Nelson may suffer from a Fetal Alcohol Spectrum Disorder. When I interviewed her, Ms. Nelson denied the use of alcohol or drugs during her pregnancy with Keith Nelson. However, such denial is quite common among mothers of children diagnosed with FASD who are unable to acknowledge that their own behavior may have harmed their children. Despite her denial, she nonetheless reported multiple developmental and behavioral problems in her son Keith that are consistent with FASD and inconsistent with any explanation other than brain damage.

6. Analysis of Keith Nelson's birth and early childhood records provides evidence in support of FASD Criterion 1 (growth deficiency), Criterion 2 (facial dysmorphology), and Criterion 3, neurodevelopmental problems. These three criteria are required for a full diagnosis of Fetal Alcohol Syndrome. With respect to growth deficiency, medical records indicate that Mr. Nelson was born at least a month premature, which is sufficient to satisfy the requirement under Criterion 1. With respect to facial features, review of early childhood photographs reveals small palpebral fissures, epicantahl folds, smooth philtrum, and small upper lip. These features are sufficient to fully satisfy diagnostic requirements for Criterion 2. Regarding neurodevelopmental deficits, records indicate significant problems across multiple domains including emotion modulation, activity level, developmental progress, learning, and executive functioning (e.g., planning, initiating, organizing, and sequencing behavior; attention; inhibition; socialization; judgment; and abstract thinking).

7. The next step in the sequential diagnosis of FASD is analysis of expert information pertaining to actual brain damage (e.g., MRI or SPECT scan reports, neuropsychological evaluation reports). I estimate that this phase of my analysis could be accomplished for no more than 15 hours, which would include a full diagnostic report. My hourly rate for conducting such an analysis is $250. Thus, my fee for analyzing the data to determine whether evidence from a brain scan and/or neuropsychological testing support an FASD diagnosis would not exceed $3750.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed in King County, Washington, on December 4, 2006.

Natalie Novick Brown, Ph.D.

References

Bookstein, F.L., Sampson, P.D., Streissguth, A.P., & Connor, P.D. (2001). Geometric morphometrics of corpus callosum and sub-cortical structures in the fetal-alcohol-affected brain. *Teratology, 64,* 4-32.

Bookstein, F.L., Streissguth, A.P., Sampson, P.D., Connor, P.D., & Barr, H.M. (2002a). Corpus callosum shape and neuropsychological deficits in adult males with heavy fetal alcohol exposure. *NeuroImage, 15,* 233-251.

Bookstein, F.L., Sampson, P.D., Connor, P.D., & Streissguth, A.P. (2002b). Midline corpus callosum is a neuroanatomical focus of fetal alcohol damage. *The Anatomical Record, 269,* 162-174.

Connor, P.D., Sampson, P.D., Bookstein, F.L., Barr, H.M., & Streissguth, A.P. (2000). Direct and indirect effects of prenatal alcohol damage on executive function. *Developmental Neuropsychology, 18,* 331-354.