IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| KEITH D. NELSON, | : | |
| Movant, | : | |
| vs. | : | 4:04-CV-8005(JFG) |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

MOVANT'S REPLY TO THE GOVERNMENT'S RESPONSE OPPOSING
MOVANT'S MOTION FOR RELIEF PURSUANT TO F.R.CIV.P. 59

COMES NOW Keith D. Nelson ("Movant"), by his undersigned counsel, and files this reply to the government's opposition to Movant's motion, pursuant to F.R.CIV.P 59, for a new trial and/or amendment of the judgment, re-opening of the judgment, the taking of testimony, the entry of amended findings of fact and conclusions of law, and for a new judgment granting relief in Movant's favor on the underlying action, together with any additional relief the Court may deem just or proper.

**A. Supplemental procedural history**

On December 5, 2006, Movant, through counsel, filed a motion pursuant to F.R.Civ.P. 59, seeking a new trial and/or amendment of the judgment, re-opening of the judgment, the taking of testimony, the entry of amended findings of fact and conclusions of law, and for a new judgment granting relief in Movant's favor on the underlying action,

together with any additional relief the Court may deem just or proper (Rule 59 motion). The United States filed its suggestions in opposition on January 3, 2007.

**B. Scope of this reply**

Many of the arguments presented in the government's reply continue simply to reflect the government's disagreement with the factual and/or legal basis of certain aspects of the 2255 motion. It is not counsels' intention to repeat each and every claim presented in the original Rule 59 motion. Instead, counsel will focus on particular areas of legal and/or factual dispute that, in counsels' judgment, require specific attention by way of a reply.

**C. This is not a case of "second-guessing"**

The contention that Movant's 2255 motion is an exercise in "second-guessing" or "nitpicking" trial and appellate counsel's performance is one the government has consistently made, and it is a theme adopted in this Court's one and a half page judgment. Despite this characterization, it remains the case that a 2255 motion is the proper forum for raising legitimate challenges to the conduct of trial and appellate. In this case, Movant has raised many serious issues regarding the effectiveness, in a constitutional sense, of trial and appellate counsel. *Strickland v. Washington*, 466 U.S. 668 (1984).

**D. Additional evidence must be developed**

The government notes that "Nelson describes in detail the additional evidence he would have presented at a hearing . . . ." (Opposition to Rule 59 motion at 3). This observation seems to imply that all the evidence necessary for this Court to rule was set out on paper. The government stops, however, at taking the next step, which is to

concede the truth of what is alleged. (The government also ignores the fact that the proffer set out in the pleadings is but a broad outline of testimony.) If it were otherwise, relief would necessarily be granted since, to rule on the pleadings alone, this Court must accept all factual allegations as true. Paper can never replace live testimony. Indeed, this Court cannot determine whether to believe a witness without seeing that witness testify. *See, e.g., Wilkes v. State*, 82 S.W.3d 925, 930 (Mo. banc 2002) ("The mere assertion that conduct of trial counsel was 'trial strategy' is not sufficient to preclude a movant from obtaining post-conviction relief based on a claim of ineffective assistance of trial counsel."); *see also*, *Harvard v. Florida*, 459 U.S. 1128 (1983) ("[T]he hearing on remand was inadequate because the judge had heard all the other pertinent evidence five years earlier. Even if he went back and read the transcript, a cold record cannot recreate testimony"). This is why all factual allegations must be accepted as true when deciding whether to grant or deny a hearing. The government's position also wholly ignores the (now) inconvenient fact that in its reply to the 2255 motion the government had conceded the necessity for further factual development.

Movant has consistently asserted facts which are not refuted by the record and which, if true, warrant relief. Movant has consistently maintained that, at a hearing, he will be able to prove that by the time this case came to trial, the case was not prepared or adequately investigated and that decisions were made out of expediency, desperation, panic or for no good reasons whatsoever having nothing to do with strategy. As set out in his earlier pleadings, Movant sought (and seeks) to place evidence before the Court,

subject to cross-examination and rebuttal, from the following witnesses on the following topics:

1. **Patrick Berrigan, Esquire**: Mr. Berrigan served as Movant's trial counsel and would be expected to provide testimony on the broad range of issues set out in the 2255 motion. He did not enter the case until February 2001. Of particular relevance, Mr. Berrigan is expected to testify that, as of the fall of 2001, Movant's case was not ready to go to trial and that Mr. Berrigan should have moved to adjourn the trial, but did not do so. Mr. Berrigan is also expected to testify that Movant's decision not to cooperate with the government's mental health experts was on the advice of his counsel and not an independent decision reached by Movant. Mr. Berrigan would also be expected to testify that despite having funding for mental-health experts, no mental-health evaluation of Movant was undertaken until October 2001, shortly before the commencement of the trial.

2. **Susan M. Hunt, Esquire**: Ms. Hunt served as Movant's trial counsel and would be expected to provide testimony on the broad range of issues set out in the 2255 motion. She served as Movant's counsel from early in the case. In addition to confirming certain statements by Mr. Berrigan, Ms. Hunt is expected to testify about the efforts she made to gather evidence in mitigation and to supervise the activities of mitigation specialist Tena Francis. By the time the case came to trial in the fall of 2001, it was Ms. Hunt's belief that an adjournment should have been requested. She is expected to confirm the fact that Movant's refusal to be evaluated by government mental-health experts was on the advice of counsel. Ms. Hunt also served as one of Movant's appellate counsel and will provide testimony regarding appellate representation and the process through which issues were selected for appellate briefing.

3. **Jennifer Herndon, Esquire**: Ms. Herndon served as one of two of Movant's appellate counsel. She is expected to testify that, because of time constraints and other pressures, she was unable to conduct an adequate review of the record of Movant's case and, as a result, did not file a complete and adequate appellate brief.

4. **Daniel V. Foster, Psy.D.**: Dr. Foster was a psychologist who evaluated Movant during the week-end of October 5 and 6, 2001. Dr. Foster would describe his evaluation as, in essence, only a beginning and as "too little, too late." Dr. Foster never completed his evaluation and was not asked to do so. In his report, he described his time spent with Movant as "primarily spent in trust building and history taking."

5. **Tena Francis**: Ms. Francis served as the mitigation specialist in Movant's case. The application to have her serve in that capacity was filed on December 12, 2000. Ms. Francis would be expected to testify regarding the incomplete status of the mitigation investigation when she entered the case and the difficulties she encountered in conducting her investigation. She was expected to testify that in June 2001 she advised trial counsel, in a detailed memorandum and telephone conference, of many areas of the ongoing mitigation investigation that needed to be completed prior to trial. Ms. Francis would be expected to testify that she had very little involvement in the case following the June memo and conference and. to the best of her knowledge and ability, very few of the necessary investigative steps were accomplished.

6. **Deborah Haddid**: Ms. Haddid was an investigator who worked for Ms. Francis. She would be expected to testify about the investigative steps that she took in attempting to prepare a case-in-mitigation. As importantly, Ms. Haddid would be expected to testify regarding investigative steps that were not taken.

7. **Jill Miller, MSSW**: Ms. Miller is a highly-experienced and respected mitigation investigator. She was appointed by this Court, on the application of Movant's counsel, to assess the status of the mitigation investigation at the time Movant's case came to trial and to develop a plan for completing an adequate mitigation investigation so that this Court would be in a position to make an accurate judgment regarding the failure of trial counsel to conduct an adequate investigation and to present an adequate penalty-phase. When additional funding was sought from this Court to have Ms. Miller continue her work, the application was denied.

8. **Michael M. Gelbort, Ph.D.**: In early 2001, Movant's trial counsel secured funds to conduct a neuropsychological examination of Movant. That examination, however, was never done.[1] This Court subsequently approved a motion brought by Movant's present counsel to conduct such an examination. In 2005, Dr. Gelbort examined Movant for evidence of organic brain dysfunction and reached the conclusion that there was such evidence.

---

[1] *Compare Wiggins*, 539 U.S. at 524 (despite the fact that the Public Defender's office in that case had made funds available for the retention of a forensic social worker, counsel chose not to commission such a report.).

9. **<u>Natalie Novick Brown, Ph.D.</u>**: In connection with the 2255 proceedings, Dr. Brown reviewed Movant's medical and educational records, including Dr. Gelbort's findings, and interviewed Movant's mother, Nancy Nelson. As a result of her analysis, Dr. Brown reached a tentative initial conclusion that Movant meets the diagnostic criteria for Fetal Alcohol Spectrum Disorder (FASD). "Based upon the initial review of source documents sent to me by [Movant's counsel] as well as an interview with birth mother Nancy Nelson, I believe there is a substantial possibility that Keith Nelson may suffer from [FASD]." Dr. Brown's analysis is not complete and Movant's counsel sought additional funding to complete the analysis. This Court, however, has refused to fund additional analysis – leaving the door only half open. One wonders why the Court funded this area of investigation in the first place if the final result makes no difference.

This proffered evidence establishes that the mitigation case was incomplete and inadequately investigated by trial counsel. The evidence establishes that many of the choices made by trial counsel were born of necessity and ill-preparedness as distinct from anything resembling sound trial strategy. The evidence establishes as well the inadequacy of appellate counsel. It is black letter law that in evaluating a claim of ineffective assistance of counsel in a capital case, this Court must look both at the case that was presented and the case that could have been developed and presented had trial counsel performed adequately. *Williams v. Taylor,* 529 U.S. 362 (2000). Capital counsel have an "obligation to conduct a thorough investigation of the defendant's background" for mitigating evidence. *Williams*, 529 U.S. at 396. It is now clear that presenting *some* evidence, or *some* case in mitigation is not adequate where a full investigation has not been conducted. *Williams v. Taylor*, *supra*; *Rompilla v. Beard*, 125 S.Ct. 2456 (2005)

The Supreme Court has made clear, the Sixth Amendment requires that "investigations into mitigating evidence 'should comprise efforts to discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence

that may be introduced by the prosecutor," *Wiggins v. Smith*, *supra*, 123 S.Ct. at 2537 (quoting ABA Guideline 11.4.1(C) (emphasis in *Wiggins*), and "among the topics counsel should consider presenting are medical history, educational history, employment and training history, family and social history . . . . " *Id.* (citing ABA Guideline 11.8.6; emphasis omitted).

This duty to investigate and present mitigating evidence has several distinct components. Counsel has an obligation to collect all reasonably available institutional records that may contain relevant mitigating evidence. AMERICAN BAR ASSOCIATION GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF COUNSEL IN DEATH PENALTY CASES, Guideline 11.4.1, Investigation, §§ 2C & 2D (capital counsel should secure releases and obtain hospital, treatment, school and mental health records). Consequently, counsel's performance is deficient when efforts to obtain available institutional records containing mitigating evidence are inadequate. *See Williams v. Taylor*, 529 U.S. at 396 (counsel ineffective for failure to obtain juvenile and social services records "graphically describing Williams' nightmarish childhood").[2]

[2] *See*, *e.g., Glenn v. Tate*, 71 F.3d 1204 (6th Cir. 1995) (failure to obtain school records evidencing mental retardation); *Clabourne v. Lewis*, 64 F.3d 1373, 1385 (9th Cir. 1995) (failure to obtain institutional records from mental hospital and prison treatment facility for mitigating evidence); *Hill v. Lockhart*, 28 F.3d at 845 (failure to obtain records from mental hospital for mitigating evidence); *Martinez-Macias v. Collins*, 810 F. Supp. 782, 787 (W.D. Tex 1991) (failure to utilize records from state rehabilitation center to demonstrate good conduct and efforts to rehabilitate while in custody), *aff'd*, 979 F.2d 1067 (5th Cir. 1992); *cf. Williams v. Washington*, 59 F.3d 673, 680 (7th Cir. 1995) (failure to become familiar with documentary evidence in discovery materials); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992) (failure to examine physical evidence).

Counsel has an obligation to interview all witnesses who may be able to provide information in mitigation. ABA GUIDELINES, Guideline 11.4.1, Investigation, §§ D.2.C, D.3.B & D.3.C (directing counsel to seek out information regarding "family and social history (including physical, sexual or emotional abuse)" by, inter alia, interviewing family members and others familiar with the defendant's life history); *id*., Guideline 11.8.3, Preparation for the Sentencing Phase, § F ( same). Counsel's failure to interview a witness who has relevant mitigating information constitutes deficient performance. *Williams*, 529 U.S. at 415 (O'Connor, J., concurring) (counsel ineffective where he presented testimony from defendant's mother and two friends but failed to fully interview and present evidence from other "friends, neighbors and family"); *Jermyn v. Horn*, 266 F.3d at 310 (3d Cir. 2001) (counsel ineffective for failing to interview and present evidence of child abuse from relatives and for failing to present mental health testimony on psychological implications of the abuse); *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989) (counsel's failure to interview potential witnesses violates the duty to investigate and constitutes deficient performance).[3]

Counsel also has an obligation to properly prepare all mitigation witnesses so they are ready to testify to all relevant mitigating evidence within their knowledge, and to

[3] *See, E.g., Hill v. Lockhart*, 28 F.3d at 845 (8th Cir. 1994); *Kubat v. Thieret*, 867 F.2d 351, 367 (7th Cir. 1989) (failure to interview and present mitigating testimony from, *inter alia*, neighbors and coworkers); *United States ex rel. Emerson v. Gramley*, 883 F. Supp. 225, 244 (M.D. Ill. 1995) (failure to interview "at least seven" potential mitigation witnesses), *aff'd*, 91 F.3d 898 (7th Cir. 1996); *Martinez-Macias v. Collins*, 810 F. Supp. at 787(failure to interview family members about defendant's good character traits), *aff'd*, 979 F.2d 1067 (5th Cir. 1992).



Case 4:04-cv-08005-FJG Document 74 Filed 03/22/07 Page 8 of 16

bring out, during the course of each witness's mitigating testimony all relevant mitigating evidence that the witness is able to present. *See, e.g., Williams*, 529 U.S. at 398 (counsel must make an evidentiary presentation that "explain[s to the jury] the significance of all the available evidence"); *Collier v. Turpin*, 177 F.3d 1184, 1199-1204 (11th Cir. 1999) (in case in which counsel traveled out of state to interview more than fourteen family members and others who knew defendant, subpoenaed fourteen of those persons interviewed, and called ten to testify at capital sentencing, counsel ineffective for failing to elicit all of the mitigating evidence from the ten witnesses that were called).[4] *Jacobs v. Horn*, 129 F. Supp. 2d 390, 408 (M.D. Pa. 2001) ("petitioner's background history of abuse and/or the reality that he was mentally retarded and suffered from other cognitive and psychological problems might well have influenced the jury's appraisal of his moral culpability").

In *Buchanan v. Angelone*, 522 U.S. 269 (1998), Chief Justice Rehnquist, writing for a majority of the Court, stated:

> [I]n the [penalty] phase, we have emphasized the need for a broad inquiry into all relevant mitigating evidence to allow an individualized determination.

---

[4] *See also Martinez-Macias v. Collins*, 8 810 F. Supp. at 787 (deficient performance for failure to "investigate[ ] and present[ ] evidence from family members concerning Petitioner's good character traits" and failing to prepare petitioner's wife for sentencing stage testimony), *aff'd*, 979 F.2d 1067 (5th Cir. 1992). This obligation applies to expert witnesses as well as lay witnesses. *E.g., Bloom v. Calderon*, 132 F.3d 1267 (9th Cir. 1997) (failure to provide mental health records, including evidence of black-outs or transient psychotic episodes); *Clabourne v. Lewis*, 64 F.3d 1373, 1384-85 (9th Cir. 1995) (failure to provide mental health experts with background materials for accurate mental health profile is ineffective); *Hendricks v. Calderon*, 864 F. Supp. 929 (N.D. Cal. 1994) (failure to provide life history information about client to mental health experts deficient), *aff'd*, 70 F.3d 1032, 1044 (9th Cir. 1995).

* * *

> In the [penalty] phase, our cases have established that the sentencer may not be precluded from considering any constitutionally relevant mitigating evidence.

*Id*. at 276 (citations omitted). In *Williams v. Taylor*, *supra*, the Court noted that mitigating evidence can serve to lessen a defendant's "moral culpability" even where such evidence "does not undermine or rebut the prosecution's death-eligibility case." *Williams*, 529 U.S. at 398. In fact, the line of cases supporting the liberal admission of mitigating evidence is unbroken, and was most recently lengthened by *Tennard v. Dretke*, 125 S.Ct. 2562 (2004). There, a six-member majority of the Court reversed the Fifth Circuit and bluntly criticized the Circuit's longstanding practice of imposing an erroneously restrictive standard of relevance for mitigating evidence at the penalty phase of capital cases. *Tennard* reiterated that the threshold of relevance for mitigating evidence is minimal, stating:

> When we addressed directly the relevance standard applicable to mitigating evidence in capital cases in *McKoy v. North Carolina,* 494 U.S. 433, 440-441, 108 L. Ed. 2d 369, 110 S. Ct. 1227 (1990), we spoke in the most expansive terms. We established that the "meaning of relevance is no different in the context of mitigating evidence introduced in a capital sentencing proceeding" than in any other context, and thus the general evidentiary standard – "'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence'"– applies. *Id*., at 440, 108 L. Ed. 2d 369, 110 S. Ct. 1227 (*quoting New Jersey v. T. L. O*., 469 U.S. 325, 345, 83 L.Ed. 2d 720, 105 S. Ct. 733 (1985)). We quoted approvingly from a dissenting opinion in the state court: "'Relevant mitigating evidence is evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value.'" 494 U.S., at 440, 108 L. Ed. 2d 369, 110 S. Ct. 1227 (*quoting State v. McKoy*, 323 N. C. 1, 55-56, 372 S.E.2d, 12, 45 (1988) (opinion of Exum, C. J.)). Thus, a State cannot bar "the consideration of ... evidence if the sentencer could reasonably find that it warrants a sentence less than death." 494 U.S., at 441, 108 L. Ed. 2d 369, 110 S. Ct. 1227.

> Once this low threshold for relevance is met, the "Eighth Amendment requires that the jury be able to consider and give effect to" a capital defendant's mitigating evidence. *Boyde v. California,* 494 U.S. 370, 377-378, 108 L. Ed. 2d 316, 110 S.Ct. 1190 (1990) (*citing Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954 (1978); *Eddings v. Oklahoma*, 455 U.S. 104, 71 L. Ed. 2d 1, 102 S. Ct. 869 (1982); *Penry I*, 492 U.S. 302, 106 L. Ed. 2d 256, 109 S. Ct. 2934 (1989)); *see also Payne v. Tennessee,* 501 U.S. 808, 822, 115 L. Ed. 2d 720, 111 S. Ct. 2597 (1991) ("We have held that a State cannot preclude the sentencer from considering 'any relevant mitigating evidence' that the defendant proffers in support of a sentence less than death. . . . [V]irtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances." (*quoting Eddings, supra*, at 114, 71 L. Ed. 2d 1, 102 S. Ct. 869)).

*Id.* at 2570. In *Smith v. Texas*, 125 S.Ct. 400 (2004), decided five months after *Tennard*, the Court firmly emphasized its rejection of the "nexus" requirement that the Texas Court of Criminal Appeals, as endorsed by the Fifth Circuit, had erected as a barrier to the admission of mitigating evidence, stating, "We rejected the Fifth Circuit's 'nexus' requirement in *Tennard* . . . ." *Smith v. Texas*, 125 S.Ct. at 405.

Thus, trial counsel's constitutional duty in this case was to investigate, discover, and present, in the language of *McCleskey*, *supra*, evidence of "any relevant circumstance that could cause [a jury] to decline to impose the penalty [of death]." Trial counsel were also required to protect Movant's legal rights at trial, and to advocate zealously on his behalf. The Eighth Circuit has not hesitated to apply the principles discussed above and to grant relief in similar cases. *See, e.g.*, *Antwine v. Delo*, 54 F.3d 1357, 1365 (8th Cir 1995) ("The issue is whether the failure to discover and present evidence of Antwine's mental condition undermines our confidence in the outcome of either the guilt or sentencing phase of the trial. We are concerned, then, with whether the jury – not the motion court – would have found the evidence of Antwine's mental condition credible."); *Simmons v.*

*Luebbers,* 299 F.3d 929, 939 (8th Cir 2002) ("[T]he state portrayed Simmons as an individual who responded violently when his advances were not accepted by women. During the penalty phase, Simmons's attorneys could have presented evidence of Simmons's background to demonstrate that his compulsive, violent reactions were the result of an abusive and traumatic childhood. Further, a vivid description of Simmons's poverty stricken childhood, particularly the physical abuse, and the assault in Chicago, may have influenced the jury's assessment of his moral culpability."); *Parkus v. Delo,* 33 F.3d 933, 940 (8th Cir 1994) (Counsel must conduct an adequate investigation of facts, consider viable theories, and develop evidence to support those theories. The failure of counsel to adequately investigate a petitioner's mental health history and background necessitated an evidentiary hearing.); *Steinkuehler v. Meschner,* 176 F.3d 441 (8th Cir 1999) (The habeas relief granted related solely to petitioner's intoxication defense. Trial counsel failed to present evidence that a crucial police witness on the issue of petitioner's state of intoxication had pressured another witness to "forget" that petitioner was intoxicated and that the police witness had a habit of "forgetting" exculpatory evidence. The deficient performance prejudiced petitioner and a reasonable probability existed that the result would have been different if counsel had presented the evidence. Petitioner was denied his right to effective assistance of counsel.); *Driscoll v. Delo*, 71 F.3d 701 (8th Cir 1995) (The court agreed that a writ of habeas corpus should issue on three independent bases: Appellant was denied effective counsel because his lawyer allowed the jury to retire with the factually inaccurate impression that the victim's blood was on appellant's knife; second, appellant's trial counsel was also ineffective for failing to impeach a state

eyewitness using his prior inconsistent statements; finally, appellant's sentence violated U.S. Const. amend. VIII because the prosecutor made repeated statements to the jury that diminished the jury's sense of responsibility for its sentence of death.); *Copeland v. Washington*, 232 F.3d 969, 975 (8th Cir 2000) ("The improper argument would have had a significant prejudicial effect on the jurors, and it was unreasonable, in light of Supreme Court precedent, to conclude that the argument did not result in a deprivation of due process. The district court correctly determined that the argument was improper and the failure to object to the argument constituted ineffective assistance of counsel. Accordingly, the petitioner's death sentence is vacated.).

**E. A hearing is obviously required to inquire into the strategy of trial counsel and whether any such strategy was reasonable under *Strickland***

The government embraces this Court's finding that "[t]he claims of ineffective assistance of trial and appellate counsel fall within the broad perimeters of trial strategy." (Opposition to Rule 59 motion at 5). In fact, no evidence supports that conclusion since no evidence has been taken regarding trial strategy. Were such evidence taken, this Court would quickly learn that, when this trial commenced, the defense was far from ready and that the mitigation investigation was far from complete. Movant has established overwhelmingly the need for an evidentiary hearing on this point. Section 2255 provides for a hearing: "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255;

*accord*, *Koskela v. United States*, 235 F.3d 1148 , 1149 (8th Cir. 2001) (Cause remanded for an evidentiary claim that counsel rendered ineffective assistance in failing to call certain witnesses); *Donahue v. United States*, 2000 U.S. App. LEXIS 18 (8th Cir. 2000) (Evidentiary hearing was required to resolve a post-conviction claim of ineffective assistance of counsel where the government presented only the affidavit of defendant's trial counsel as evidence to rebut the claim.); *Smith v. United States*, 182 F.3d 1023 (8th Cir. 1999) (Judgment dismissing prisoner's motion to set aside a criminal conviction was overturned, where the district court failed to hold an evidentiary hearing regarding prisoner's ineffective assistance of counsel claim.); *Rose v. United States*, 513 F.2d 1251 (8th Cir. 1975) (A defendant was entitled to a hearing on his post-conviction motion to set aside his sentence based on his alleged incompetence at the time of his guilty plea, when there had never been a federal hearing on the issue.).

At a hearing, trial counsel would testify that no "strategy" was involved that caused the defense to stop their mitigation investigation short of completion or to forego a complete psychiatric/psychological evaluation or to overlook the clear signs that Movant suffers from FASD. It is for this reason that many of the claims presented in Movant's 2255 motion focus on matters counsel *failed* to pursue without tactical considerations in play:

> "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and *strategic choices made after less than complete investigation* are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly

> assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."

*Wiggins v. Smith,* 539 U.S. 510, 521 (2003) (emphasis added), *quoting Strickland,* 466 U.S. at 690-691.

For example, the government (and this Court) insist that *Movant* made the decision not to present mental health evidence. As a hearing would demonstrate, this is just plain wrong. First, and most importantly, trial counsel would testify that they made a decision not to offer any mental health evidence as a means of preserving an appellate issue, not as a result of sound strategic thinking, but because of a failure to conduct an adequate mental health investigation. Nothing in the record refutes this. All that appears from the surface is the truism that trial counsel did not present mental health evidence. The real question, which this Court's order denying relief does not and cannot intelligently address, is why. At a hearing, this Court would have learned that trial counsel made their "decision" not to present mental health evidence without having the benefit of *any* reasonably competent mental health evaluation. Despite having the funding to do so and despite having no reason not to do so, trial counsel failed to pursue a mental health strategy. Making a decision not to present certain evidence without investigating what that evidence might be is quintessentially unreasonable.

## CONCLUSION

For the reasons set forth above, the relief requested pursuant to F.R.Civ.P. 59 should be granted, *i.e.*, this Court should enter an order for a new trial and/or amendment of the judgment, re-opening of the judgment, the taking of testimony, the entry of

amended findings of fact and conclusions of law, and for a new judgment granting relief in Movant's favor on the underlying action, together with any additional relief the Court may deem just or proper.

Respectfully submitted,

/s/ Gary E. Brotherton
Legal Writes, LLC
2101 Chapel Plaza Court, Suite 13
Columbia, MO 65202-3381
(573)875-1571
(573)875-1572 (fax)
gebrotherton@legalwritesllc.com
Co-counsel to Movant, Keith Nelson

/s/ David A. Ruhnke
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
(973)744-1000
(973)746-1490
davidruhnke@ruhnkeandbarrett.com
Co-counsel to Movant, Keith Nelson

Electronically filed: Kansas City, Missouri
March 22, 2007

CERTIFICATE OF SERVICE

This will certify that, on today's date, March 22, 2007, Movant's counsel served this reply upon the United States by filing the document via ECF.

/s/ David A. Ruhnke
DAVID A. RUHNKE