# Statement on Third Party Observers in Psychological Testing and Assessment: A Framework for Decision Making

Committee on Psychological Tests and Assessment
American Psychological Association

This Statement does not constitute an official policy of the American Psychological Association (APA), does not purport to dispense legal advice, and is not intended to establish standards or guidelines for conduct by practitioners. The statement may prove useful in analyzing and responding to situations in which third parties request to be present, either in person or by electronic proxy, at the time that psychological evaluations are conducted.

## Introduction

Psychologists occasionally receive requests that observers be allowed to witness or record the administration of a psychological evaluation. An evaluation is broadly defined as a standardized or non-standardized observation, interview, or test. An evaluation may occur in any number of clinical, educational, employment, and forensic contexts. For example, attorneys may desire to obtain additional information about the processes contributing to the formation of an expert psychological opinion. Examinees may attempt to condition their participation in an evaluation upon the presence of a trusted friend or relative. Professors and supervisors may seek to provide qualified students or trainees with an in vivo demonstration of advanced evaluation techniques. Hence, the observer may be a psychologist or trainee and, in such cases, all the same issues and concerns apply. The styling of and motivation behind requests to observe psychological assessment and testing are as varied and multifaceted as the purposes, settings, and conduct of the assessments themselves.

The primary purpose of this Statement is to provide psychologists with information to assist them in (a) reaching a conclusion concerning the appropriateness of observation of psychological evaluations, (b) conveying the scientific and professional bases for such a conclusion, and (c) identifying options in light of such a conclusion, with sensitivity to the particular source and substance of a request for observation and the specific nature and circumstances of the assessment in question. A secondary purpose is to inform and educate nonpsychologists regarding these issues and the consequences of such observations.

Psychologists need to be aware of relevant ethics code provisions regarding uses of assessment to facilitate valid results (see Section 9 of the APA Ethics Code). Psychologists enhance the validity of evaluation results by adhering to standardized procedures (when the techniques they use outline standardized administration procedures) and by developing and sustaining rapport with the examinee. In most testing manuals, standardized procedures and recommended practices for developing and sustaining rapport specify that only the psychologist and the examinee are present in the assessment setting. However, in some cases, the presence of a third party may help develop and sustain rapport in order to facilitate validity. Examples of such cases include the use of sign or voice language interpreters, an assistant or aide to support physical accessibility, or the inclusion of a caregiver for an examinee

This document is the product of over 7 seven years of American Psychological Association (APA) volunteer and staff effort. The Committee on Psychological Tests and Assessment (CPTA) and the Science Directorate wish to thank current and former members of CPTA for their efforts in conceiving, drafting, and producing this document. In addition, the members of CPTA wish to extend special appreciation to the APA's Committee on Legal Issues for their thoughtful critique and suggestions for improvement of earlier drafts. Correspondence concerning this article should be addressed to the Science Directorate, Office of Testing and Assessment, 750 First St. NE. Washington, DC 20002-4242.

whose ability to perform may be significantly impaired when the examinee is separated from the caregiver. Another example is the case of an immigrant from a substantially different culture who may not feel comfortable with one-on-one testing. In addition, the question of an observer may be introduced by psychologists in an effort to address questions of the validity of the assessment process. Specifically, if the validity of the evaluation may be compromised without a third party observer, the psychologist may want to consider requesting that a third party observer be present (e.g., a parent). In all of these situations, the psychologist may want to take steps (discussed later) to ensure that the presence of the third party facilitates or affects minimally the validity and fairness of the assessment.

## Assessment Issues

The use of uniform, standardized evaluation procedures is one of the fundamental canons upon which psychological assessment and testing is founded (American Educational Research Association, American Psychological Association, & National Council on Measurement in Education [AERA, APA, NCME], 1999). Failure to adhere to requisite data gathering procedures may compromise the validity of inferences made from these observations (cf. Anastasi & Urbina, 1997; Sattler, 2001, 2006). Research in social psychology demonstrates that individuals' behavior frequently changes in the presence of a third party (e.g., Chekroun & Brauer, 2002). Therefore, there is substantial reason to suspect that the inclusion of a third party in an assessment may influence the examinee's behavior.

The effects of observation upon an examinee's test performance may vary as a function of the identity of the observer, the purpose of observation, the manner of observation, the assessment instruments involved, the examinee's sensitivity to observation, and many other factors. Because psychological assessment procedures and tests typically are not standardized using scores obtained in the presence of third party observers, observation or surveillance may violate the conditions of standardization. Moreover, negative effects of observation on test performance may impair the validity of routine test interpretation strategies (e.g., Binder & Johnson-Greene, 1995; Isaacs & Chen, 1990; Kehrer, Sanchez, Habif, Rosenbaum, & Townes, 2000; Lynch, 2005; Lynch & McCaffrey, 2004; McCaffrey, Fisher, Gold, & Lynch, 1996; McSweeny et al., 1998; Masling, 1960; Sattler & Theye, 1967). Recent studies of neuropsychological evaluations indicate that the presence of observers increases performance errors and false positives on the measures used (Constantinou, Ashendorf, & McCaffrey, 2006; Gavett, Lynch, & McCaffrey, 2006; Lynch, 2005). One neuropsychological study suggests that negative effects may occur even in cases where the psychologist requests, and the examinee consents to, observation—such as when a clinical supervisor observes a supervisee conducting an assessment (Yantz & McCaffrey, 2005).

Because some examinees may be less likely to share personal information if they believe that others are observing or could observe their actual statements or behavior (e.g., Sattler, 1998), the validity of nonstandardized or non-test assessment procedures, such as interviews or observations, may also be affected by the perceived or actual presence of a third party. For example, one study suggests that interviews conducted in the presence of a third party may elicit qualitatively or quantitatively different (though not necessarily invalid) responses than those conducted in the absence of a third party (Podmore, Chaney, & Golder, 1975).

Psychologists may also want to consider carefully the issues involved in recording evaluations for observation by third parties not present during the testing. Examinees who are aware that their assessment is being recorded, either in audio only or in combined audio and video, may also alter their assessment behavior (Constantinou, Ashendorf, & McCaffrey, 2005). Although surreptitious observation and recording (in which the examinee is unaware of the observation) may minimize the examinee's reactivity to observation, surreptitious surveillance may also raise ethical (e.g., APA, 2002; AERA, APA, NCME, 1999) and legal issues regarding the psychologist's obligation to disclose to the examinee the fact that the session is being observed or recorded and the identity of individuals who may have access to the observation or recording.

With regard to test security and potential misuse of tests, the cautions that apply in allowing observation


Case 4:04-cv-08005-FJG Document 141-1 Filed 05/10/10 Page 2 of 6

or recording of test administrations by unqualified individuals are essentially the same as those that have been presented in reference to the disclosure of test data (cf. American Academy of Clinical Neuropsychology, 2001; Committee on Legal Issues, 2006; Committee on Psychological Tests and Assessment, 1996a, 1996b; National Academy of Neuropsychology, 2000a, 2000b). These sources indicate that by creating a retrievable record of test items and responses and by making this record available to nonpsychologists, the security of test materials and the copyright may be compromised. Information contained in that record may also be subject to misuse. For example, observers who learn the specific item content of psychological tests could potentially use this information to "coach" or otherwise prepare subsequent clients (Cato, Brewster, Ryan, & Giuliano, 2002; Rosen, 1995; Victor & Abeles, 2004; Youngjohn, 1995).

Given that validity and test security may be compromised when third parties are allowed to observe or otherwise survey the process of test administration, some have proffered specific recommendations against allowing third party observation (e.g., American Academy of Clinical Neuropsychology, 2001; Anastasi & Urbina, 1997, p. 13; Duff & Fisher, in press; National Academy of Neuropsychology Policy and Planning Committee, 2000a; Sattler, 1988, p. 109; Wechsler, 1997a, p. 29; Wechsler, 1997b, p. 30). However, other research also indicates that in some situations failure to include a third party may undermine the validity of assessment results. These situations are guided by the principle of ensuring access to the assessment setting for the examinee. There are important differences between access skills (i.e., skills and capabilities needed to comprehend and respond to the assessment) and target skills (i.e., the skills and capabilities that are the focus of the assessment). Barriers posed when examinees do not have prerequisite access skills (e.g., linguistic comprehension and expression, the physical ability to see or physically access materials, the emotional security needed to engage in cognitive processes) should be either removed or controlled as best as possible, while concurrently retaining the target skills demanded in the assessment. In some cases, access is facilitated through physical changes to the assessment environment (e.g., wheelchair accessible furniture, use of large print materials). In other cases, access is facilitated by a third party (e.g., voice or sign language interpreters, physical assistants, and caregivers to reduce anxiety). Psychologists may initiate a request to include a third party when, in their judgment, such inclusion would reduce barriers posed by access skills without altering the target skills demanded in the assessment.

## Potential Options

In those situations in which psychologists are faced with requests for observation or participation of a third party, they may wish to consider one or more of the following options, when such options are both ethical and practical in the context of the particular assessment in question:

1. Conduct the Evaluation in the Presence of a Third Party Observer

   In some instances, the psychologist may conclude that the assessment can be conducted with an observer in a way that would neither impair the validity or fairness of the evaluation and findings, nor raise ethical or legal problems. When a request for such an assessment is accepted, it may be appropriate to consider ways to minimize the impact of observation on the validity and fairness of the evaluation. Such steps include, but are not limited to, seating the observer behind the examinee and ensuring the observer consents to not speaking or otherwise influencing the examinee during the assessment. In cases in which the psychologist decides that participation of a third party in a role other than observing will facilitate the validity and fairness of the assessment, the psychologist may work with that party to ensure that their participation facilitates and does not undermine or impair the assessment. It may be useful for the psychologist to inform the examinee that the results of the evaluation may be altered by the process when seeking the examinee's consent to be observed and to document this potential limitation in the report.


Case 4:04-cv-08005-FJG Document 141-1 Filed 05/10/10 Page 3 of 6

2. Minimize the Intrusion Afforded by Observation

   If third parties request to observe or record an evaluation session, the psychologist may request that the observation occur in the least intrusive fashion reasonably available (e.g., through a one-way mirror as opposed to the actual presence of the observer in the testing room). For example, if the assessment and/or test administration is to be recorded, an audio recording may be less intrusive than a video recording. When recordings are made, the psychologist may want to take steps to limit the availability of such recordings to individuals not immediately involved with the evaluation. For example, for evaluations that take place in the context of litigation, a protective order from the judge may be obtained, obligating all parties to maintain test security and to destroy the recordings at the conclusion of legal proceedings. In forensic or other legally indicated contexts, psychologists may wish to document and assist in clarifying the reasons for which observation was ultimately permitted.

   Provisions for the safekeeping, maintenance, and proper disposal of such records may be addressed via consultation with existing sources of scientific and professional guidance (e.g., COLI, 2006; Committee on Professional Practice & Standards, 1993; CPTA, 1996). Alternative approaches should take into account measures to avoid compromising the validity or fairness of the assessment.

3. Utilize Assessment Measures Less Affected by Observation

   If observation is to occur, the employment of assessment measures less affected by observation may be appropriate. Observation of these alternative assessment approaches may be less intrusive to examinees. The purpose of choosing alternative instruments and/or methods is to help decrease the potential reduction of reliability and validity of the evaluation. However, there may be no psychometrically equivalent test instrument or procedure that provides the same quality of data, which may obviate these alternatives.

4. Recommend That the Request for Observation be Withdrawn

   Psychologists may decide to inform the requesting party of the potentially deleterious influence of third parties upon a particular evaluation situation. If the request comes from an attorney or a court of law—perhaps even in the form of a court order—psychologists may file an affidavit with the court, or serve as a resource for an attorney seeking to file such an affidavit, to inform the court of the reasons why observation may be inadvisable. Under some circumstances, the request for inserting a third party into the assessment may be withdrawn. In some cases, judges have ruled in favor of following a strict evaluation and test administration protocol, specifying the exclusion of third parties (see McCaffrey et al., 1996).

5. Decline to Perform the Assessment Under Observation

   If psychologists are unable to resolve observation issues to their satisfaction (e.g., a third party observer is requested to be present, but the psychologist has concluded that such presence could affect the validity and fairness of the evaluation), the psychologist may decide to decline to conduct the assessment even if such observations are required by law. They may choose to cite in this regard the possibility that the validity of certain assessment procedures would be compromised by the presence of the third party observer.

## Documenting Observation and Third Party Participation

Psychological assessments where a psychologist permits observation by, or participation of, a third party, need to document the observation by the third party. The provisions of Standard 9.06 of the *APA Ethical Principles and Code of Conduct* may be relevant. Standard 9.06 provides as follows:

> When interpreting assessment results, including automated interpretations, psychologists take into account


Case 4:04-cv-08005-FJG Document 141-1 Filed 05/10/10 Page 4 of 6

the purpose of the assessment as well as the various test factors, test-taking abilities, and other characteristics of the person being assessed such as situational, personal, linguistic, and cultural differences, that might affect psychologists' judgments or reduce the accuracy of their interpretations. They indicate any significant limitations of their interpretations.

## Conclusion

This Statement on Third Party Observers in Psychological Testing and Assessment is intended to be informational, rather than prescriptive. The inclusion of a third party in psychological evaluations raises complex and sometimes paradoxical issues. Inclusion of a third party in the assessment and testing process may affect validity of an evaluation or threaten test security and copyright. However, a third party may facilitate validity and fairness of the evaluation or be required by law. Options to address the request for external observation include, but are not limited to (1) conducting the evaluation in the presence of an observer, (2) minimizing the intrusion afforded by observation, (3) utilizing assessment measures that are less affected by observation, (4) recommending that the request for a third party be withdrawn, and (5) declining to perform the assessment under observation. Psychologists will need to exercise their own professional judgment in choosing the appropriate course of action. Regardless of reasons for such a request (e.g., forensic case, supervision of a trainee, etc.) and/or option(s) chosen, further empirical studies are needed to address the multifaceted situations that psychologists may face with third party participants. The overall goal of any situation surrounding the formal psychological evaluation of an individual is to maximize the assessment conditions to complete the most valid and fair evaluation in order to obtain the best data possible.

## References


American Academy of Clinical Neuropsychology. (2001). Policy statement on the presence of third party observers in neuropsychological assessments. *The Clinical Neuropsychologist, 14,* 433-439.

American Educational Research Association, American Psychological Association, & National Council on Measurement in Education. (1999). *Standards for educational and psychological testing.* Washington, DC: American Educational Research Association.

American Psychological Association. (2002). Ethical principles of psychologists and code of conduct. *American Psychologist, 57,* 1060-1073.

Anastasi, A., & Urbina, S. (1997). *Psychological testing* (7th ed.). Upper Saddle River, NJ: Prentice-Hall.

Binder, L., & Johnson-Greene, D. (1995). Observer effects on neuropsychological performance: A case report. *The Clinical Neuropsychologist, 9,* 74-78.

Cato, M., Brewster, J., Ryan, T., & Giuliano, A. (2002). Coaching and the ability to simulate traumatic brain injury symptoms. *The Clinical Neuropsychologist, 16,* 5224-535.

Chekroun, P., & Brauer, M. (2002). The bystander effect and social control behavior: The effect of the presence of others on people's reactions to norm violations. *European Journal of Social Psychology, 32*(6), 853-866.

Committee on Legal Issues. (2006). Strategies for private practitioners coping with subpoenas or compelled testimony for client records or test data. *Professional Psychology: Research and Practice, 37,* 215-222.

Committee on Psychological Tests and Assessment. (1996a). Statement on the disclosure of test data. *American Psychologist, 51,* 644-648.

Committee on Psychological Tests and Assessment. (1996b). *Statement on the use of secure psychological tests in the education of graduate and undergraduate psychology students.* Retrieved September 4, 1999, from http://www.apa.org/science/securtst.html

Committee on Professional Practice and Standards. (1993). Record keeping guidelines. *American Psychologist, 48,* 984-986.

Constantinou, M., Ashendorf, L., & McCaffrey, R. J. (2006). Effects of third party observer during neuropsychological assessment: When the observer is a video camera. *Journal of Forensic Neuropsychology, 4*(2), 83-95.

Duff, K., & Fisher, J. M. (2005). Ethical dilemmas with third party observers. *Journal of Forensic Neuropsychology, 4*(2), 65-82.





Case 4:04-cv-08005-FJG Document 141-1 Filed 05/10/10 Page 5 of 6

Gavett, B. F., Lynch, J. K., & McCaffrey, R. J. (2006). Third party observers: The effect size is greater than you might think. *Journal of Forensic Neuropsychology, 4*(2), 49-64.

Gutheil, T. G. (2003). Reflections on coaching by attorneys. *Journal of the American Academy of Psychiatry & the Law, 31,* 6-9.

Isaacs, M., & Chen, K. (1990). Presence/absence of an observer in a word association test. *Journal of Personality Assessment, 55*(1), 41-51.

Kehrer, C., Sanchez, P., Habif, J., Rosenbaum, G., & Townes, B. (2000). Effects of a significant-other observer on neuropsychological test performance. *The Clinical Neuropsychologist, 14,* 67-71.

Lees-Haley, P. R. (1997). Attorneys influence expert evidence in forensic psychological and neuropsychological cases. *Assessment, 4,* 321-324.

Lynch, J. (2005). Effect of a third party observer on neuropsychological test performance following closed head injury. *Journal of Forensic Neuropsychology, 4*(2), 17-25.

Lynch, J., & McCaffrey, R. (2004). Neuropsychological assessments in the presence of third parties: Ethical issues and literature review. *NYS Psychologist, 16(*3), 25-29.

McCaffrey, R. J., Fisher, J. M., Gold, B. A., & Lynch, J. K. (1996). Presence of third parties during neuropsychological evaluations: Who is evaluating whom? *The Clinical Neuropsychologist, 10,* 435-449.

McSweeny, A. J., Becker, B. C., Naugle, R. I., Snow, W. G., Binder, L. M., & Thompson, L. (1998). Ethical issues related to the presence of third party observers in clinical neuropsychological evaluations. *The Clinical Neuropsychologist, 12,* 552-559.

Masling, J. M. (1960). The influence of situational and interpersonal variables in projective testing. *Psychological Bulletin, 57,* 65-85.

National Academy of Neuropsychology Policy and Planning Committee (2000a). Presence of third party observers during neuropsychological testing: Official statement of the National Academy of Neuropsychology. *Archives of Clinical Neuropsychology, 15,* 379-380.

National Academy of Neuropsychology Policy and Planning Committee (2000b). Test security: Official statement of the National Academy of Neuropsychology. *Archives of Clinical Neuropsychology, 15,* 383-386.

Podmore, D., Chaney, D., & Golder, P. (1975). Third parties in the interview situation: Evidence from Hong Kong. *Journal of Social Psychology, 95*(2), 227-231.

Rosen, G. M. (1995). The Aleutian Enterprise sinking and posttraumatic stress disorder: Misdiagnosis in clinical and forensic settings. *Professional Psychology: Research and Practice, 26,* 82-47.

Sattler, J. M. (1988). *Assessment of children* (3rd ed.). San Diego, CA: Jerome M. Sattler, Publisher.

Sattler, J. M. (2001). *Assessment of children: Cognitive applications* (4th ed.). San Diego, CA: Jerome M. Sattler, Publisher.

Sattler, J. M., & Hoge, R. D. (2006). *Assessment of children: Behavioral, social, and clinical foundations* (5th ed.). San Diego, CA: Jerome M. Sattler, Publisher.

Sattler, J. M., & Theye, F. (1967). Procedural, situational, and interpersonal variables in individual intelligence testing. *Psychological Bulletin, 68,* 347-360.

Van Krunkelsven, E., Dupain, J., Van Elsacker, L., & Verheyen, R. (1999). Habituation of bonobos (Pan paniscus): First reactions to the presence of observers and the evolution of response over time. *Folia Primatologica, 70*(6), 365-368.

Victor, T. L., & Abeles, N. (2004). Coaching clients to take psychological and neuropsychological tests: A clash of ethical obligations. *Professional Psychology: Research & Practice, 35,* 373-379.

Wechsler, D. (1997a). *WAIS-III: Administration and scoring manual.* San Antonio, TX: The Psychological Corporation.

Wechsler, D. (1997b). *WMS-III: Administration and scoring manual.* San Antonio, TX: The Psychological Corporation.

Yantz, C., & McCaffrey, R. (2005). Effects of a supervisor's observation on memory test performance of the examinee: Third party observer effect confirmed. *Journal of Forensic Neuropsychology, 4*(2), 27-38.

Youngjohn, J. R. (1995). Confirmed attorney coaching prior to neuropsychological evaluation. *Assessment, 2,* 279-283.



Case 4:04-cv-08005-FJG Document 141-1 Filed 05/10/10 Page 6 of 6