IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| KEITH D. NELSON, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | Case No. 04-8005-CV-W-FJG |
| v. | ) | Crim. No. 99-00303-01-CR-W-FJG |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**GOVERNMENT'S REPLY MOTION TO ESTABLISH PROCEDURES BY WHICH A MENTAL HEALTH EXAMINATION OF MOVANT WILL BE CONDUCTED**

Comes now the United States of America, by Beth Phillips, United States Attorney, and Jeffrey Valenti and David Ketchmark, Assistant United States Attorneys, all for the Western District of Missouri, and replies to the Movant's Suggestions in Opposition regarding the procedures that should be established by which a mental health examination will be conducted in this case.

## I. Argument

It remains the government's position that the procedures outlined in its Motion to Establish Procedures by which a Mental Health Evaluation of Movant Will be Conducted are both reasonable and appropriate. (Document # 138). This reply addresses the four arguments advanced by movant in his reply and supplemental pleadings and also serves to re-assert the Procedures previously outlined.

Under Rule 12.2(c)(1)(B) of the Federal Rules of Criminal Procedure, the Court is vested with wide latitude in establishing the procedures by which a mental health

examination of a movant is to be conducted in cases where a defendant/movant has put his mental health in issue. In this case, the movant has given notice that he intends to utilize mental health evidence as it bears on the issue of punishment. Accordingly, defense counsel provided the government with the preliminary mental health report of Xavier Amador, Ph.D., as well as reports by Natalie Novick Brown, Ph.D., Michael M. Gelbort, Ph.D., and Daniel V. Foster, Psy.D.

**A.** ***Reply on the issue of joint examination by a psychiatrist and psychologist***

Movant has provided reports from at least four different expert witnesses and noticed that ". . . expert evidence will be offered relating to a mental disease or defect, or any mental condition, bearing on the issue of punishment." (Document # 133) Despite this notice and the provided reports from four different expert witnesses, movant objects to the government hiring two experts, one a psychiatrist and the other a psychologist, when he was examined by only psychologists.

There is no reasonable basis for objecting to a psychiatric evaluation of the movant simply because the movant chose to employ only psychologists on his behalf. "As a general matter, the government should be able to select its own expert free from what could be unreasonable second-guessing by the defense or the Court." *United States v. Fell*, 372 F.Supp.2d 753, 761 (D.Vt.2005). Additionally, the degree of overlap between the training, skills, and techniques of the forensic sub-specialties of psychiatry and psychology are incredibly high. Nonetheless, each field, in the context of mental health, uses similar methods to evaluate the presence or absence of psychopathology

(the study of mental disease, mental defect, and mental disorder) and the impact of life events on individuals with respect to the issues before the court. Moreover, the two expert witnesses the government proposes to employ are the very same team that this Court approved when movant's underlying criminal case was pending. In fact, this team of evaluators were scheduled to examine the movant prior to his sentencing hearing and the derailment of that evaluation is the basis of the third allegation of ineffective assistance of counsel currently before the Court in this post-conviction proceeding. Movant's current objection is simply another attempt at derailing that evaluation and, as such, is unreasonable.

Movant cites *Fell* for the proposition that under Rule 12.2 the government is entitled to select only one expert witness. *Fell,* at 761. In *Fell*, the government had two expert witnesses, one a psychologist and the other a psychiatrist. These experts were retained in the early part of the prosecution, before Fell was convicted. Later during the prosecution, the government sought to add an additional, third expert witness. It was at that time, the court exercised its discretion and ruled that the third expert was too much. *Id*. As stated previously, Rule 12.2 grants the court with wide latitude in establishing conditions by which a mental health evaluation will be conducted by simply stating that a mental health evaluation may be ordered, ". . . under procedures ordered by the court. . . ." It remains, however, silent as to how many expert witnesses either side may employ. *See also, United States v. Sampson*, 335 F.Supp.2d

166, 247-48 (D.Mass. 2004). Consequently, this court has the discretion to determine if the government can hire none, one, two, three, or more experts in this case.

In *United States v. Kaczynski,* 1997 WL 668395, at 2 (E.D.Cal.1997)*,* the court held, ". . . case authority sheds light on the propriety of having more than one mental health expert examine a defendant." Likewise, in *United States v. Henderson*, 770 F.2d 724, 727 (8th Cir.1985), the government was allowed to utilize two expert witnesses, one a psychiatrist and the other a psychologist. *See also, United States v. Greene*, 497 F.2d 1068, 1072-73 (7th Cir.1974), *cert. denied,* 420 U.S. 909 (1975) (two psychiatrists, hired by the government, were allowed to examine the defendant).

The government is asking for nothing more than was previously granted in this case and consistent with the decisions in *Henderson* and *Fell*. It would like to employ two expert witnesses, one a psychologist and the other a psychiatrist. The government is not attempting to add an additional expert at the eleventh hour as in *Fell*, but is instead attempting to competently organize its rebuttal case regarding the movant's intent to offer evidence "relating to a mental disease or defect, or any mental condition, bearing on the issue of punishment."

**B. *Reply on the issue of recording the examination***

The movant has advocated for, and the government agrees, that the government expert's notes should be retained and ultimately produced in discovery. Those notes, however, are simply not the best record of what will transpire in the mental health examination. Instead, an audio- or video-recording would be the best record of what

transpired. Notes can only capture the note-takers impressions and are inadequate for capturing relevant behavioral data that an expert may witness, but be unable to adequately describe in writing. Additionally, the ultimate decision regarding Movant's mental health will need to be made by this Court, or, in the future, another court of law that does not have the same level of expertise as the hired doctors. Having the ability to review the audio- or video-taped examination will allow the record in this case to be more complete.

Other courts have determined that tape-recording a mental health evaluation would facilitate constitutional protections without impairing the interview process. *United States v. Byars,* 740 F.2d 1104, 1172 (D.C.Cir.1984)(Bazelon, J., dissenting). Even over movant's objection, this court has the discretion to order the evaluation to be either audio- or video-taped (both or neither). *United States v. Kaczynski,* 1997 WL 668395, at 3 (E.D.Cal.1997).

**C. *Reply on the issue of limiting the information obtained during examination***

The movant agrees that if he elects to proceed with mental health evidence at the upcoming post-conviction hearing (as he has provided notice to do), the government may rebut or utilize statements made by the movant. The government has partially objected to not being able to use that information for any other purpose. To clarify, the government agrees that it cannot use the information learned (or fruits therefrom) during the mental health evaluation, unless and until, the movant would place his mental health in issue at some future proceeding. Should such a proceeding transpire,

the government should similarly be able to rebut the movant's claim of mental health impairment with the information learned in this evaluation.

### D. ***<u>Reply on the issue of giving defense counsel advance notice of tests to be administered and an opportunity to object</u>***

The government objects to limiting its experts to testing performed by the defense experts. Repetition of the same tests can affect the reliability and validity of test data because of the "practice effect," a phenomenon whereby subjects test artificially high because of increased skills as a result of practice on a particular type of test. Additionally, if a subject has advance notice of the testing to be employed, they can either be coached, or have thought of their answers in advance. Neither scenario gets the type of accurate information that is at the heart of why an examination is necessary in this case. Finally, without making comment on the tests performed by the defense experts, they may not have chosen the best tests available, or may not have chosen to administer tests that would be necessary to critically assess the reliability and validity of collected test data, such as test effort. To draw these conclusions, the government experts need to be free to exercise their professional judgment, tempered by their knowledge of the prevailing professional norms in their respective fields. "As a general matter, the government should be able to select its own expert free from what could be unreasonable second-guessing by the defense or the Court." *United States v. Fell*, 372 F.Supp.2d 753, 761 (D.Vt.2005). It stands to reason that if the government

is allowed to select its own expert witnesses, those witnesses should be allowed to select the testing methods to be employed.

In his papers, movant advances a lengthy argument against the government's ability to conduct pyschopathology testing. It appears that movant is confusing the term psychopathology with psychopathy. Psychopathology is the study of mental disease, mental defect, and mental disorder, whereas psychopathy is a particular classification of behavior associated with crime, aggression, and antisocial behavior. Movant objects to the use of the PCL-R instrument. Based upon that objection, it appears that movant does not want the government experts to use that well-regarded measure of psychopathy for the controversial purpose of predicting future dangerousness. The government has no intention of going into issues of future dangerousness as a consequence of psychopathy testing using the PCL-R instrument. It does, however, intend to delve into issues of mental disease, mental defect, and/or mental disorder (i.e. psychopathology), based upon its expert witnesses examinations.

## II. Conclusion

The United States respectfully requests that the Court order the movant be examined by its mental health experts under the procedures outlined previously.

Respectfully submitted,

BETH PHILLIPS
United States Attorney

By /s/*Jeffrey Valenti*

JEFFREY VALENTI
Assistant United States Attorney

DAVID KETCHMARK
First Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122

*Attorneys for Respondent*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served this 14th day of May 2010 by electronic notice or by U.S. Mail, postage prepaid, to:

David A. Ruhnke
Ruhnke & Barrett
47 Park Street
Montclair, NJ 07042

Gary E. Brotherton
Legal Writes, LLC
1390 Boone Industrial Drive, Suite 120
Columbia, MO 65202-3381

*/s/Jeffrey Valenti*
Jeffrey Valenti
Assistant United States Attorney