IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| KEITH D. NELSON, | : | |
| Movant, | : | |
| vs. | : | 4:04-CV-8005 (FJG)<br>99-cr-00303-W (FJG) |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

MOVANT'S MOTION FOR RECONSIDERATION OF THIS COURT'S ORDER
REQUIRING TRIAL COUNSEL TO PREPARE AFFIDAVITS
IN RESPONSE TO MOVANT'S ALLEGATIONS OF
INEFFECTIVE ASSISTANCE OF COUNSEL

COMES NOW Keith D. Nelson ("Movant" or "Mr. Nelson"), by his attorneys, David A. Ruhnke and Gary E. Brotherton, and files the following motion requesting that this Court reconsider its Order (Doc. #146) requiring trial counsel to prepare affidavits in response to the claims of ineffective assistance of counsel raised in Mr. Nelson's § 2255 Motion. As is explained in more detail below, there is literally no authority for the proposition that prior counsel can be compelled to provide pre-hearing affidavits. While the cases cited in both the Court's Order and the government's pleading state that a petitioner may impliedly waive the attorney-client privilege by raising a claim of ineffective assistance of counsel, not a single case states that a finding of the waiver *requires* that counsel provide affidavits prior to their testimony at a hearing. To the extent that the government desires pre-hearing discovery, it should be required to comply with established rules of discovery, as codified in the Rules Governing Section 2255 Proceedings and the Federal Rules of Civil Procedure. Regardless, the government will have a full and fair opportunity to examine prior counsel at the already scheduled

evidentiary hearing, so the government can demonstrate no harm from being denied compelled affidavits.

Additionally, the parties are in agreement that alleging ineffective assistance of counsel does not constitute a total waiver of the attorney-client privilege. Rather, the scope of the waiver must be narrowly tailored so as to ensure that only information which is germane to the specific ineffective assistance claims is disclosed. The "narrow waiver" rule, however, is not self-enforcing. For this very reason, courts that have found some waiver of the attorney-client privilege in the habeas context have taken care to ensure that prior counsel's disclosure of privileged information only occurs in a setting where the former client has an opportunity to object to potential testimony that exceeds the scope of the waiver. This is because in the event that prior counsel divulges information that exceeds the scope of the waiver, there would be no way to adequately remedy the harm; once confidential information has been disclosed, there is no way to make that information confidential again. In light of this danger, it is respectfully submitted that this Court reconsider its order compelling prior counsel to submit affidavits, as it would deprive Mr. Nelson of the opportunity to object to any information divulged in the affidavits that exceeds the scope of the waiver before those affidavits are disclosed to the government, and therefore improperly and irremediably rupture the privilege. As matters presently stand, the affidavits must be filed no later than July 18, 2010.

## I. There Is No Authority For The Proposition That Prior Counsel Can Be Compelled to Provide Pre-Hearing Affidavits.

The foundation of the government's argument is that a movant can waive his attorney-client privilege by raising claims of ineffective assistance of counsel. From this

premise, the government argues that since Mr. Nelson's § 2255 Motion includes claims of ineffective assistance, his prior trial counsel (Patrick Berrigan and Susan Hunt) should be *required* to provide the government with affidavits responding to the ineffective assistance claims. Indeed, the government takes the position that counsel should be compelled to provide affidavits, despite the fact that the government will have a full and fair opportunity to cross-examine Attorneys Berrigan and Hunt at the already-scheduled evidentiary hearing on these claims. The government's position – that prior counsel should be forced to provide sworn statements in advance of a court proceeding – is one that has absolutely no support in the law and should be rejected.

The government cannot point to a single case in which a court has stated that the appropriate course of action, once a waiver of the attorney-client privilege has been found, is to compel prior counsel to provide affidavits. Indeed, in every case cited in the government's pleading on this issue, as well as in this Court's order, a finding of waiver of the privilege resulted in the same "remedy": the government was permitted to inquire into relevant privileged communications *at an evidentiary hearing*. None of the cases cited by the government or the Court hold that prior counsel can be compelled to provide affidavits prior to the hearing.

For example, both the government and the Court cite to the Eighth Circuit's decision in Tasby v. United States, 504 F.2d 332 (8th Cir. 1974), where the Court held that a habeas petitioner may impliedly or expressly waive the attorney-client privilege by raising claims regarding counsel's ineffectiveness. However, the question of *whether* a claim of ineffective assistance waives the attorney-client privilege is distinct from the

issue of *how* those privileged communications should be disclosed once a waiver is found. Indeed, in Tasby, *the district court did not order prior counsel to provide a pre-hearing affidavit.* Rather, the district court held an evidentiary hearing on the ineffectiveness claims, at which trial counsel testified. 504 F.3d at 336-37. As the Eighth Circuit noted, the fact that a limited waiver of the privilege was found meant that the government could properly examine trial counsel regarding privileged communications at the hearing. 504 F.3d at 335. In other words, the only legal consequence of the waiver was that the petitioner could not make a valid objection to trial counsel's testimony on the basis of the attorney-client privilege. Thus, the only right that the finding of a waiver conferred on the government was the ability to inquire into relevant privileged communications at the evidentiary hearing. One simply cannot extract from Tasby any authority for the proposition that a finding of any waiver confers on the government a pre-hearing right to take sworn affidavits from prior counsel.

Indeed, if one looks at the authority upon which the Tasby court relied to reach its decision, the same pattern emerges – that is, none of the cases cited in Tasby holds that waiver of the privilege requires prior counsel to provide the government with affidavits addressing the ineffective assistance claims. Rather, in each of these cases, evidence from prior counsel *was received at the time of the evidentiary hearing, with an opportunity for the petitioner to object to the scope of counsel's testimony*. See Laughner v. United States, 373 F.2d 326, 327 (5th Cir. 1967) (objection raised in context of trial counsel's testimony at the evidentiary hearing); Sherman v. United States, 261 F. Supp. 522, 531 (D. Hawaii 1966) (same); Pruitt v. Peyton, 243 F. Supp. 907, 908-09 (E.D. Va.

1965) (ruling on admissibility of correspondence between petition and trial counsel in context of evidentiary hearing); United States v. Butler, 167 F. Supp. 102, 103-4 (E.D. Va. 1957) (same).

This is also true of the cases cited in the government's pleading. For example, in Johnson v. Alabama, 256 F.3d 1156 (11th Cir. 2001), a petitioner alleged that his trial counsel was ineffective for failing to pursue a particular defense theory at trial.[1] The district court originally attempted to hold an evidentiary hearing regarding "what petitioner told counsel about the crime and his role in it in order to assess whether their strategic and tactical choices were reasonable in the light of the information known to them." Id. at 1168 n.4. The Eleventh Circuit, however, stayed the district court's order and directed the court to conduct an *in camera* hearing "to determine whether and to what extent appellant's communication presumptively protected by the attorney-client privilege is relevant to the specific ineffective assistance of counsel claims raised by appellant in his habeas petition." Id. Thereafter, the district court conducted an *in camera* hearing regarding communications between the petitioner and his lawyers, and subsequently directed trial counsel to file materials that contained these communications *under seal*. Id. at 1168. The district court then held an evidentiary hearing at which the trial attorneys

---

[1] The petitioner alleged that trial counsel were ineffective for failing to pursue a "third-man" theory -- i.e., that he was the "third robber" present at the scene of a robbery and murder, but that he did not intend that the victim be killed -- rather than the "flimsy" alibi defense they presented at trial. Johnson, 256 F.3d at 1177. The issue before the Eleventh Circuit was whether specific communications between trial counsel and the petitioner client that pertained to the factual basis of this claim were waived by the allegation of ineffective assistance.

testified regarding some of their privileged communications with the petitioner. Id. at 1178 n. 11.

Nowhere in the Johnson decision is there any language that supports the notion that a finding that the attorney-client privilege has been waived entitles the government to obtain affidavits from prior counsel. To the contrary, the Johnson decision demonstrates the circuit court's extraordinary concern that the district court not inadvertently disclose privileged communications that were beyond the scope of the waiver. Indeed, the Eleventh Circuit stayed the district court's order to hold a hearing in open court where trial counsel would broadly testify regarding privileged communications, and instead ordered the district court to conduct its review of any potentially relevant communications *in camera*, and furthermore ordered that materials containing privileged communications be filed *under seal*. In other words, the Eleventh Circuit ordered that the district court adopt prophylactic measures to identify the relevancy of any privileged communications *before* any such communications were disclosed to the prosecution. It was only after those communications had been reviewed by the district court that trial counsel were allowed to disclose those communications – and even then, that disclosure occurred in the context of an evidentiary hearing, not in the form of compelled affidavits.[2]

[2] The government also cites to Bittaker v. Woodford, 331 F.3d 715 (9th Cir. 2003), and In re Lott, 424 F.3d 446 (6th Cir. 2005). Neither of these cases is apposite. In Bittaker, there was no issue regarding compelled affidavits. Rather, in that case, the Ninth Circuit affirmed a district court protective order which precluded the prosecution from using attorney-client privileged materials for any other purpose than litigating the habeas corpus petition. In In re Lott, the Sixth Circuit held that there was no waiver of the privilege because the petitioner did not allege ineffective assistance of counsel. 424 F.3d 446, 454. Moreover, the state in that case never sought to compel affidavits from trial counsel; rather, the state asked to

Similarly, neither Stobaugh v. United States, No. 06-3317-CV-S-RED, 2007 U.S. Dist. LEXIS 13331, 2007 WL 628420 (W.D. Mo. Feb. 27, 2007), nor Purkey v. United States, No. 06-8001-CV-W-FJG, 2009 U.S. Dist. LEXIS 89664, 2009 WL 3160774 (W.D. Mo. Sept. 29, 2009), supports the government's position. In Stobaugh, a review of the docket sheet indicates that the issue of compelled affidavits was never litigated by the parties; rather, it appears that trial counsel *voluntarily* provided the government with a declaration regarding counsel's representation of his former client, which the government attached to its responsive pleading. See Stobaugh, No. 06-3317-CV-S-RED (Doc. # 5). The issue in Stobaugh, therefore, was not whether trial counsel was *required* to provide an affidavit, but whether trial counsel's *voluntary* affidavit constituted a violation of the attorney-client privilege. Stobaugh, 2007 U.S. Dist. LEXIS 13331 at *2 n.1. Here, Attorneys Berrigan and Hunt have declined the government's request for affidavits. There is no language is Stobaugh that in any way *requires* them to do otherwise. Simply put, Stobaugh does not stand for the proposition that prior counsel *must* provide responsive affidavits upon a finding that the attorney-client privilege was waived, and any reliance on that decision for such authority is erroneous.

In the Purkey decision, this Court relied on two cases – Tasby and Stobaugh – to hold that trial counsel "did not act improperly in filing the Affidavit nor did he violate his duty or loyalty or his duty of confidentiality, as the attorney-client privilege had been

---

depose trial counsel. Id. at 448. In other words, the state sought to inquire into privileged communications in a forum where petitioner's counsel would be present and could make objections and assert the privilege on a question-by-question basis.

waived." Purkey, 2009 U.S. Dist. LEXIS 89664 at *8. However, as discussed above, neither Tasby nor Stobaugh provides authority for the relevant question here – that is, whether a finding that the attorney-client privilege was waived *requires* prior counsel to provide affidavits. Moreover, it should be noted that in both Purkey and Stobaugh, the district court did not order an evidentiary hearing on the ineffective assistance of counsel claims. Here, however, the government is guaranteed an opportunity to examine prior counsel, under oath, regarding the claims of ineffective assistance of counsel; therefore, the government will have a full and fair opportunity to elicit any relevant testimony from prior counsel that is within the scope of the waiver of the attorney-client privilege. The government can demonstrate no harm from having to develop evidence by way of live testimony rather than through written affidavits.

As the above discussion demonstrates, there is genuinely no authority that supports the proposition that prior counsel *must* provide affidavits upon a finding of waiver of the attorney-client privilege. At best, the cases cited by both the government and the Court merely hold that once a waiver has been found, the government ought to have some manner in which to inquire into prior counsel's legal representation of the client in order to challenge the assertions of ineffectiveness in the § 2255 motion. Given that an evidentiary hearing has already been scheduled in this case at which prior counsel will testify under oath and be examined by the government, the government is already receiving exactly that which the extant caselaw says it is entitled to have. Accordingly, it is respectfully submitted that this Court reconsider its Order granting the government's

motion to compel prior counsel to provide affidavits, as that "remedy" has no support in the law.

## II. The Court's Order Is Impermissibly Broad And Risks The Disclosure of Privileged Information Beyond The Scope Of The Waiver, Thereby Creating A Harm For Which There Is No Adequate Remedy.

As the government itself conceded in its motion to compel attorney affidavits, an allegation of ineffective assistance of counsel does not constitute an absolute waiver of the attorney-client privilege. See USA Mot. (Doc. # 118) at 4 (stating that the government "seeks a narrow waiver of the attorney client privilege"). Notably, there is unanimous agreement in the extant authority that the waiver must be narrowly tailored so that only those *specific* communications that are relevant to assessing the *specific* allegations of ineffectiveness are disclosed. See, e.g., Bittaker v. Woodford, 331 F.3d 715, 720 (9th Cir. 2003) ("[T]he court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it. Because a waiver is required so as to be fair to the opposing side, the rationale only supports a waiver broad enough to serve that purpose. Courts . . . that have imposed waivers under the fairness principle have therefore closely tailored the scope of the waiver to the needs of the opposing party in litigating the claim in question."); In re Lott, 424 F.3d 446, 453 (6th Cir. 2005) ("Implied waivers are consistently construed narrowly. Courts must impose a waiver no broader than needed to ensure the fairness of the proceedings before it. A broad waiver rule would no doubt inhibit the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote.") (internal quotation marks and citations omitted); Johnson, 256

F.3d at 1179 ("[T]he precise boundaries of the waiver will vary from case to case, and in many instances will require careful evaluation by the district court.").

Despite the undisputed fact that the scope of any waiver must be narrowly tailored so as to avoid the disclosure of privileged communications that go beyond the scope of the waiver, the Court's order requiring prior counsel to submit "responsive" affidavits has no mechanism in place to ensure that the affidavits comply with this legal rule. Prior counsel have simply been directed "to prepare affidavits in response to the petitioner's allegations." Order at 3. Such an order is impermissibly broad and vague and puts too much discretion in the hands of prior counsel to determine the scope of the waiver. Indeed, as the Bittaker court noted:

> As is evident, *the narrow waiver rule . . . is not self-enforcing*. That is to say, unlike the usual situation where those given access to confidential materials have an independent ethical, and perhaps legal, obligation to maintain that confidence (such as the ethical constraints on lawyers, doctors and the clergy), those who are given access to confidential attorney-client materials under our limited waiver rule have no such obligation or incentive. Given this absence of external constraints (external to the case), district courts have the obligation, whenever they permit discovery of attorney-client materials as relevant to the defense of ineffective assistance of counsel claims in habeas cases, to ensure that the party given such access does not disclose these materials, except to the extent necessary in the habeas proceeding, i.e., to ensure that such a party's actions do not result in a rupture of the privilege.

Bittaker, 331 F.3d at 727-728 (emphasis added).

The fact that the narrow waiver rule is not self-enforcing is precisely the reason why the government's request for compelled affidavits should be rejected in favor of simply allowing the government to examine prior counsel at the already scheduled evidentiary hearing. Indeed, in every case where a waiver of the attorney-client privilege

has been found, prior counsel's disclosure of confidential communications always occurred in a forum where the client was given the opportunity to object to the nature and scope of the information to be disclosed in order to ensure compliance with the narrow waiver rule. See, e.g., Tasby, 504 F.3d at 335-337 (prior counsel examined regarding privileged communications at evidentiary hearing); Laughner, 373 F.2d at 327 (5th Cir. 1967) (same); Sherman, 261 F. Supp. at 531 (same); Johnson, 256 F.3d 1156, 1168 & n.4, 1178 (privileged communications filed under seal and reviewed *in camera*, then prior counsel examined regarding privileged communications at evidentiary hearing); Pruitt, 243 F. Supp. at 908-09 (ruling on admissibility of correspondence between petition and trial counsel in context of evidentiary hearing); Butler, 167 F. Supp. at 103-4 (same).

Indeed, under prevailing rules of professional conduct, prior counsel cannot simply volunteer privileged information, even where a waiver has been found. Rather, as explained by leading legal ethicist Lawrence J. Fox, prior counsel is obligated to provide present counsel with an opportunity to raise all appropriate objections, including those addressing the scope of the waiver of the attorney-client privilege:

> If counsel is permitted to testify, this means that the former client has either voluntarily or been found to have waived the privilege. However, this does not mean counsel is free to tell all in the deposition conference room or from the witness stand. First, the client may have waived the privilege in a way that is circumscribed and therefore only some of the privileged information possessed by predecessor counsel is subject to proper inquiry. Second, even if the waiver is total, this only means that former counsel is permitted to testify in response to proper questions and no more. The waiver of the privilege does not permit former counsel to meet with the other side, nor does it permit former counsel to talk to the press or to volunteer any information when testifying. Moreover, counsel must conduct him or herself in a way that provides present counsel with the

> opportunity to raise all appropriate objections, including those addressing the scope of the waiver.
>
> Too many lawyers fail to appreciate the critical difference between what is protected by the attorney-client privilege and what is confidential: they confuse the fact that the former only applies when the lawyer is called to testify, and the latter governs how the lawyer conducts herself off the witness stand. As a result, when the privilege has been waived, too many lawyers are too quick to respond to informal inquiries - from the prosecution (of all people), the press, or others - failing to recognize that such uncompelled responses are only permissible when the former client has given his permission.
>
> Indeed, it is impermissible under our rules for the prosecution to seek privileged or confidential information from the former counsel. Rules 1.6 and 3.4 [of the ABA Model Rules of Professional Conduct] make it quite clear that this may not be done. And the case law is to the same effect. *The rule governing the confidentiality that must be maintained by former counsel can be simply stated: even under oath, predecessor counsel may volunteer no information without the express consent of the former client or former client's present counsel.*

Lawrence J. Fox, Making the Last Chance Meaningful: Predecessor Counsel's Ethical Duty to the Capital Defendant, 31 Hofstra L. Rev. 1181, 1187-88 (2003) (footnotes omitted) (emphasis added).[3]

Under the present Court order, Mr. Nelson will have no way to enforce the narrow waiver rule. There is no check on what prior counsel might disclose in their written

[3] It should also be noted that under the American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases ("ABA Guidelines"), prior counsel have a duty to facilitate the work of successor counsel. See ABA Guidelines 10.13 (The Duty to Facilitate the Work of Successor Counsel) and 10.14 (Duties of Trial Counsel After Conviction), 31 Hofstra L. Rev. 913, 1074-78 (2003). As the Commentary to ABA Guideline 10.13 notes: "Even after team members have been formally replaced, they must continue to safeguard the interests of the client. Specifically, they must cooperate with the professionally appropriate strategies of successor counsel (Subsection D). And this is true even when (as is commonly the case) successor counsel are investigating or asserting a claim that prior counsel was ineffective."

affidavits, and – more importantly – there will be no remedy if the disclosures are improper and exceed the scope of the waiver. Simply put, confidential information cannot ever be made confidential again once it has been revealed.[4] See In re Ford Motor Co., 110 F.3d 954, 963 (3d Cir. 1997) ("once putatively protected material is disclosed, the very right sought to be protected has been destroyed") (internal quotation marks and citation omitted); id. (noting that once privileged information has been disclosed "there is no way to unscramble the egg scrambled by the disclosure"). Mr. Nelson will irretrievably lose the protections afforded by the attorney-client privilege, and the government will have enjoyed the opportunity to review and consider the privileged communications and the legal impressions of its adversary trial counsel. Indeed, for any litigant, there could hardly be any worse recipient of attorney-client privileged information than his or her adversary. This information could not be effectively recovered on appeal from a final judgment, since there is no way to force the government to forget what it learned from the privileged communications. See In re Ford Motor Co., 110 F.3d at 963 ("Attorneys cannot unlearn what has been disclosed to them in discovery; they are likely to use such material for evidentiary leads, strategy decisions, or the like.") (internal quotation marks omitted).

---

[4] The Court could, of course, adopt certain procedures that might mitigate the harm. For example, the court could require that any affidavits prepared by prior counsel be initially disclosed only to the undersigned, and afford the undersigned with a meaningful opportunity to raise objections to any statements contained in the declarations that go beyond the scope of the waiver. Any improper statements could then be redacted prior to disclosing the affidavits to the government.

A post-judgment appeal resulting in a reversal of this Court's order would be manifestly useless in vindicating the right against disclosure that Mr. Nelson seeks to protect, since by that point, "the cat is already out of the bag." Id. The attorney-client privilege is not simply an evidentiary privilege that prohibits the use of protected information at trial. Rather, when properly invoked, the privilege provides an absolute right against disclosure of the privileged information in the first place. While privileged communications often contain facts -- facts the government has alternative avenues to discover -- attorney-client communications also contain prior counsel's impressions about a range of matters related to the representation of Mr. Nelson that go beyond any of the claims raised in his § 2255 Motion. These mental impressions cannot be recovered on appeal after disclosure and final judgment, nor can the harm occasioned by their improper disclosure be undone. For these reasons, it is respectfully submitted that this Court reconsider its Order compelling prior counsel to submit affidavits.[5]

## III. The Government's Request Is An Improper Attempt To Circumvent Established Rules of Discovery.

As noted by the Honorable Charles A. Shaw in Redd v. United States, No. 4:08-CV-1459, 2010 U. S. Dist. LEXIS 4027, 2010 WL 319477 (E. D. Mo. Jan. 20, 2010), a

[5] Absent such reconsideration, the undersigned might want to seek an interlocutory appeal pursuant to 28 U.S.C. § 1292 (b), and/or petition the Court of Appeals for a writ of mandamus precisely because there is no post-judgment remedy that could adequately redress the harm that would occur once privileged information is disclosed. See In re Lott, 424 F.3d 446 (6th Cir. 2005) (granting habeas petitioner's writ of mandamus and setting aside those portions of the district court's discovery order directing discovery of material on the basis of an implied waiver of the attorney-client privilege).

government's motion for an order compelling prior counsel to provide an affidavit is, in actuality, a request for discovery, and such requests are governed by Rules 6 and 7 of the Rules Governing Section 2255 Proceedings for the United States District Courts ("2255 Rules"). Redd, 2010 U.S. Dist. LEXIS 4027 at *1. Indeed, in denying a similar motion, Judge Shaw noted that the "government has not cited any authority for the proposition that a non-party to this action can or should be compelled to provide a pre-answer affidavit." Id. at *1-*2. See also, Fischer v. United States, No. 4:09-CV-1763-CAS, 2009 U.S. Dist. LEXIS 114555, 2009 WL 4730638 (E.D. Mo. Dec. 9, 2009) (similarly holding that Rules 6 and 7 of the 2255 Rules governed the government's request for compelled pre-answer affidavits from trial counsel, and observing that the government failed to cite any authority in support of its motion).

This Court distinguished Redd and Fischer based on the procedural posture of those cases – that is, in those cases, the government requested affidavits prior to filing an answer to the § 2255 motion, whereas in Mr. Nelson's case, the government has requested affidavits after filing its answer. Order at 2. Respectfully, this is a distinction without a difference. The crux of Judge Shaw's legal reasoning in Redd and Fischer is the same as that advanced here: there is simply no legal authority for the proposition that a non-party to an action can or should be compelled to provide an affidavit. Whether the government requests affidavits "pre-answer" or "pre-hearing" is irrelevant. Either way, the government has failed to cite any authority to support its request.

Indeed, the fact that an evidentiary hearing has already been scheduled in Mr. Nelson's case makes the government's request for affidavits even less compelling than in

Redd and Fischer. In those cases, the government asserted that it could not respond to the § 2255 motion without affidavits from trial counsel. Here, however, not only has the government already filed its answer to Mr. Nelson's § 2255 motion -- thereby disproving any need for the affidavits to respond to the ineffective assistance claims – but it will also have a full and fair opportunity to examine prior counsel, under oath, about any relevant privileged communications bearing on the ineffective assistance claims that are within the scope of the waiver. The government will suffer no harm from having to wait until the hearing to inquire into prior counsel's privileged communications and legal impressions about the case in lieu of affidavits.

It appears that what the government seeks here is the opportunity to obtain pre-hearing discovery, but without having to comply with any of the established rules of discovery. For example, under Rule 6 of the 2255 Rules, a party cannot obtain discovery absent a showing of "good cause." Rule 6(a), 2255 Rules; Bracy v. Gramley, 520 U.S. 899, 904 (1997). Here, the government has not even attempted to make a showing of good cause for its request. Indeed, it would be particularly difficult for the government to make such a showing considering there is no authority to support its request. In effect, what the government is asking for is the right to compel witnesses to provide it with sworn statements prior to a court proceeding. Such a request is without authority, and risks setting a dangerous precedent. While the government can compel a witness to be present at a court proceeding, it has no right (be it constitutional, statutory or otherwise) to compel witnesses to provide statements to its agents prior to a court proceeding.

Witnesses are free to decide whether or not they want to speak with the government, and the government has no legal authority to coerce a witness to provide it with a sworn affidavit. Indeed, there is literally no other context in which the government is allowed to force a witness to provide it with a sworn statement outside of a tribunal setting.[6]

Alternately, the government's request should be construed as an attempt to *depose* witnesses in anticipation of the hearing, but without allowing Mr. Nelson to benefit from any of the procedural safeguards that come with a formal deposition – namely, undersigned counsel's ability to be present and to object to any questions that might elicit privileged communications beyond the scope of the waiver. Indeed, in a deposition, the undersigned would have the ability to make objections *before* any privileged communications are disclosed, and thereby maintain the confidentiality of any communications that are beyond the scope of the waiver until the Court could formally rule on the matter. The government has not established "good cause" for why it should be allowed to circumvent the ordinary manner in which depositions are conducted, particularly when the 2255 Rules themselves state that parties must conduct discovery – including depositions – pursuant to the Federal Rules of Civil Procedure. See Rule 6(a) & (c), 2255 Rules.

---

[6] Here, the mere fact that a claim of ineffective assistance of counsel can operate as a narrow waiver of the attorney-client privilege does not supply the government with the legal authority to force Attorneys Berrigan and Hunt to provide it with sworn declarations. To the extent a waiver is found, it simply means that the defendant cannot invoke the privilege to prevent trial counsel from offering testimony at the evidentiary hearing which discloses relevant attorney-client communications. It does not confer on the government an affirmative right to get a pre-hearing written statement from the witnesses.

## CONCLUSION

To the extent that the government is entitled to inquire into privileged attorney-client communications in order to rebut specific claims of ineffective assistance of counsel, it will have a full and fair opportunity to do so at the already-scheduled evidentiary hearing, at which Attorneys Berrigan and Hunt will testify. If the government wishes to obtain pre-hearing discovery from these witnesses, it ought to do so under the established rules of discovery codified in the Rules Governing Section 2255 Proceedings. The notion that the government can coerce witnesses to provide sworn affidavits in advance of a court proceeding is one that has no foundation in the law, and would create a dangerous precedent. Accordingly, the undersigned respectfully request that this Court reconsider its Order directing Attorneys Berrigan and Hunt to prepare affidavits and provide them to counsel on or before July 18, 2010, and deny the government's motion.

WHEREFORE, Movant seeks an order vacating the Court's May 18, 2010 Order (Doc. #146) granting the government's motion to compel affidavits from prior counsel.

Respectfully submitted,

/s/ David A. Ruhnke
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
(973)744-1000
(973)746-1490
davidruhnke@ruhnkeandbarrett.com

/s/ Gary E. Brotherton
Legal Writes, LLC
601 W. Nifong Blvd.
Building 1, Suite C
Columbia, MO 65202-3381
(573)875-1571
(573)875-1572 (fax)
gebrotherton@legalwritesllc.com
Co-counsel to Movant, Keith Nelson

Filed via ECF: Kansas City, Missouri
July 7, 2010

CERTIFICATE OF SERVICE

This will certify that, on today's date, this motion was served upon the United States by filing via ECF.

/s/ David A. Ruhnke
DAVID A. RUHNKE

Dated: May ___, 2010